UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV15-01601 JAK (ASx) | Date | June 9, 2015 |
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | |

Present: The Honorable **JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE**

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION FOR REMAND (DKT. 13)**

I. **Introduction**

Big Lots Stores, Inc. and PNS Stores, Inc. ("Defendants") operate a chain of closeout retail stores under the name "Big Lots." First Amended Complaint ("FAC"), Dkt. 1-1, ¶ 25. There are 1,400 Big Lots retail stores in 48 states, including 173 in California. *Id.* ¶ 26. From July 2010 to August 2013, Viola Hubbs ("Plaintiff") was employed as a non-exempt, hourly employee at a Big Lots store in Los Angeles. *Id.* ¶ 27.

On February 7, 2014, Plaintiff brought this putative class action against Defendants in the Los Angeles Superior Court. Complaint ("Compl."), Dkt. 1-1 at 7. On March 13, 2014, Plaintiff filed the FAC, which is also the operative complaint in this action. Dkt. 1, ¶¶ 4-5; Dkt. 1-1 at 38. Plaintiff brought 10 causes of action under the California Labor Code and California Business & Professions Code for alleged wage-and-hour violations. *Id.* at 38-39. As to these claims, Plaintiff sought to represent a proposed class of "[a]ll individuals who worked for Defendants in a California 'Big Lots' retail store in a non-exempt, hourly[]paid position, at any time during the period from four years prior to the filing of this Complaint until the date of certification." *Id.* ¶ 19.

In a declaration dated March 4, 2015, Michael Schlonsky, who is a Senior Vice President of Human Resources for Big Lots Stores, Inc., stated that he has reviewed relevant personnel records and determined that "Defendants employed approximately 19,268 employees in California between February 7, 2010 and February 20, 2015. These employees worked a total of approximately 1,722,410 work weeks during that period." Schlonsky Decl., Dkt. 1-1 at 102-03.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01601 JAK (ASx) | Date | June 9, 2015 |
|---|---|---|---|
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | |

On March 5, 2015, which was more than a year after it was filed, Defendants removed this action. Dkt. 1. They asserted jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) *et seq. Id.* at 2.[1] Thus, they claimed that the proposed class included at least 100 members, minimal diversity was present and the amount in controversy exceeded $5 million. *Id.* at 5-9. Defendants contended removal was timely, for two reasons: first, they had not been properly served with the FAC; second, the FAC was "indeterminate" and did not give them notice as to the amount in controversy, which is necessary for the removal under CAFA. *Id.* at 4-5.[2] Defendants have abandoned the claim that service was improper, and now rely solely on the "indeterminacy" of jurisdiction based on the allegations of the FAC, to support the timeliness of removal. Opp'n, Dkt. 15 at 5-6 & n.1.

On April 6, 2015, Plaintiff filed a motion to remand this action to the Los Angeles Superior Court ("Motion"). Dkt. 13. Plaintiff does not dispute that the jurisdictional requirements of class size, minimal diversity, and amount in controversy are present. *Id.* at 5. However, she contends the FAC provided sufficient notice to Defendants that CAFA jurisdiction was available, but that they did not remove within the 30-day period set forth in 28 U.S.C. § 1446(b). Consequently, she claims that remand is appropriate. *Id.*

A hearing on the Motion was held on June 8, 2015, and the matter was taken under submission. Dkt. 23. For the reasons stated in this Order, the Motion is **DENIED**.

## II.   The Allegations of the First Amended Complaint

The FAC alleges that Defendants willfully violated wage-and-hour laws and deprived Plaintiff and other putative class members of required wages and working accommodations in order to increase their profits. FAC, Dkt. 1-1, ¶ 39. Defendants' alleged violations include:

- Defendants required Plaintiff and putative class members to clock out and then wait for a manager to unlock the door and release them at the end of closing shifts. Defendants did not compensate Plaintiff and others for the time they spent waiting. *Id.* ¶¶ 52, 57.

---

[1] The one-year limit that generally applies to removal based on diversity of citizenship does not apply under CAFA. 28 U.S.C. § 1453(b).

[2] The declaration of Schlonsky appears to be the "other paper from which it may first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3). The Ninth Circuit has suggested that a similar declaration as to the amount in controversy may support removal on this basis. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-01601 JAK (ASx) | Date | June 9, 2015 |
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | |

- Defendants did not staff the stores with a sufficient number of employees, and required Plaintiff and putative class members to work through some or all meal periods or have their meal periods interrupted to return to work. *Id.*
    - Defendants required Plaintiff to continue working past her fifth hour of work before being permitted to take her 30-minute meal period because the store was busy and there was inadequate break coverage. *Id.* ¶ 66.
    - Defendants "maintained a uniform unlawful meal break policy insofar as it failed to provide for the timing of first meal breaks." *Id.* ¶ 67.
    - Defendants did not pay the meal period premiums required where compliant meal periods were not provided. *Id.* ¶ 67.
    - These acts and omissions violated Cal. Lab. Code §§ 226.7, 512(a).
- Defendants did not pay overtime premium pay for shifts in excess of eight hours per day or 40 hours per week, in violation of Cal. Lab. Code §§ 510, 1198. *Id.* ¶¶ 47-54.
- Defendants did not pay minimum wage for off-the-clock hours worked by Plaintiff and putative class members, in violation of Cal. Lab. Code §§ 1194, 1197, 1197.1. *Id.* ¶¶ 55-59.
- Defendants did not provide Plaintiff and putative class members with the mandated rest period of 10 minutes net rest time per four hours or major fraction thereof, nor did Defendants pay them the rest period premiums to which they were entitled for working during this time. *Id.* ¶¶ 73-77. This conduct violated Cal. Lab. Code § 226.7. *Id.*
- Defendants did not provide Plaintiff and putative class members with accurate itemized wage statements as required by Cal. Lab. Code § 226(a). *Id.* ¶¶ 78-83.
- Defendants did not timely pay Plaintiff and putative class members the earned and unpaid wages allegedly owed to them at the time of their discharge from employment or within 72 hours of their doing so. *Id.* ¶¶ 84-89. This violated Cal. Lab. Code §§ 201, 202. *Id.*
- Defendants did not timely pay Plaintiff and putative class members the aforementioned overtime wages, minimum wages, and meal and rest period premium wages, in violation of Cal. Lab. Code § 204. *Id.* ¶¶ 90-96.
- Defendants required Plaintiff and putative class members to work "split shifts," or "work schedule[s] interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods." *Id.* ¶¶ 99, 101. However, when these split shifts were ordered Defendants failed to pay Plaintiff and putative class members for an additional hour of work as required by Cal. Lab. Code §§ 1197-98. *Id.* ¶¶ 97-103.

Plaintiff and the putative class members seek damages for lost wages at the applicable rates; pre-judgment interest on unpaid overtime compensation; statutory wage and waiting time penalties; civil penalties pursuant to the Private Attorney General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*; the disgorgement of any profits wrongfully acquired by Defendants; injunctive relief; and reasonable attorney's fees. *Id.* at 63-69.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01601 JAK (ASx) | Date | June 9, 2015 |
|---|---|---|---|
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | |

**III.   Analysis**

    A.   Legal Standard

28 U.S.C. § 1446(b) provides that the notice of removal of a civil action shall be filed within 30 days of the receipt of the initial pleading or summons by the defendant. This requirement is qualified where "the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b)(3). Under those circumstances, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* The 30-day statutory time limit for removal is a procedural, not jurisdictional, requirement. *Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014). However, "the time limit is mandatory and a timely objection to a late petition will defeat removal." *Id.* "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

Where a pleading is "indeterminate with respect to removability," a defendant "does not lose the right to remove because it did not conduct . . . an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). Thus, the 30-day time limit for removal under § 1446 is not triggered when a defendant is served with an indeterminate pleading, although it may be triggered if the defendant "independently knows or learns [the relevant jurisdictional] information." *Id.* Pleadings are "indeterminate" where "the face of the complaint does not make clear whether the required jurisdictional elements are present." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013). "[D]efendants need not make extrapolations or engage in guesswork; yet the statute requires a defendant to apply a reasonable amount of intelligence in ascertaining removability. Multiplying figures clearly stated in a complaint is an aspect of that duty." *Id.* at 1140 (citation and internal quotation marks omitted).

    B.   Application

This Motion turns on a single issue: Whether the FAC put Defendants on notice that the amount in controversy exceeded $5 Million. If it did, then removal was untimely and the action must be remanded. *Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014). If it did not, the Motion must be denied. Plaintiff does not contend that Defendants were put on notice by any "other paper," for purposes of 28 U.S.C. § 1446(b)(3), but rely exclusively on the allegations in the FAC as the basis for Defendants' ability to know the amount in controversy. Dkt. 13 at 5.

Plaintiff contends that, applying the "reasonable amount of intelligence" required of Defendants under *Kuxhausen*, they should have engaged in "simple multiplication" and determined that the FAC alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01601 JAK (ASx) | | Date | June 9, 2015 |
|---|---|---|---|---|
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | | |

"exposure exceeding $5,000,000." *Id.* at 14-15. The FAC alleges that Defendants "owned and operated 173 'Big Lots' stores in California," and purports to assert claims on behalf of all non-exempt, hourly paid employees who worked in a Big Lots store from four years prior to the filing of the Complaint. FAC, Dkt. 1-1, ¶¶ 19, 26. Thus, Plaintiff argues that, at a minimum, Defendants must have known that each store employed "at least one full-time non-exempt hourly employee every day of the year (except possibly Christmas day)," which put Defendants on notice that there were at least 173 members of the putative class. Mot., Dkt. 13 at 7-8.

Plaintiff notes that the FAC used language that implied that the alleged violations by Defendants were frequent. For example, the FAC alleges that Defendants "regularly" required Plaintiff and putative class members to work during meal periods, and that Defendants "maintained a uniform unlawful meal break policy." *Id.* at 8-9 (citing FAC, Dkt. 1-1, ¶¶ 63, 67). Defendants "required" Plaintiff and putative class members to work through rest periods, and implemented a "systematic, company-wide policy" not to pay rest period premiums. *Id.* at 10 (citing FAC, Dkt. 1-1, ¶ 75). Defendants "willfully required Plaintiff and class members to work split shifts." *Id.* at 12-13 (citing FAC, Dkt. 1-1, ¶ 101. It is also alleged that Defendants "willfully" did not give complete and accurate wage statements, *Id.* at 11-12 (citing FAC, Dkt. 1-1, ¶¶ 80, 86).

Plaintiff contends that, based on these allegations, a reasonably intelligent reader of the FAC would have concluded that, at minimum, it alleged that there was one violation per employee, per day during the relevant time period. *Id.* at 8. She adds that the SAC also leads to the necessary and reasonable conclusion that these employees were paid at least the minimum wage of $8 per hour. *Id.*   Plaintiff also contends the FAC put Defendants on notice that, under PAGA, they were subject to penalties of $50 per employee per pay period for each initial violation, and penalties of $100 per employee per pay period for each subsequent violation. *Id.* at 9 (citing FAC, Dkt. 1-1, ¶ 111).

Based on these assumptions, Plaintiff argues that "taking the most conservative numbers from the explicit allegations in the FAC, and adding up only the premiums and penalties for conduct described as 'regular,' 'required,' and 'systematic,' the damages alleged in the complaint total $7,846,572, exclusive of attorney fees authorized by the statute." *Id.* at 13. Plaintiff calculates this amount by applying the figures set forth in the following table:
//
//
//
//
//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01601 JAK (ASx) | | Date | June 9, 2015 |
|---|---|---|---|---|
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | | |

| Alleged Violation | Minimum Penalty or Premium | Resulting Calculation of Amount Claimed |
|---|---|---|
| Meal Period Premiums | $2,015,104 | 173 employees x 364 days x 4 years x $8 per hour at minimum wage |
| PAGA Meal Period Penalties | $388,550 | (173 employees x 50 = $8,650 [penalties for first pay period]) + (173 employees x 23 [balance of pay periods for the year] x 100 = $379,900); $8,650 + $379,900 = $388,550[3] |
| Rest Period Premiums | $2,015,104 | 173 employees x 364 days x 4 years x $8 per hour at minimum wage |
| PAGA Rest Period Penalties | $388,550 | (173 employees x 50 = $8,650 [penalties for first pay period]) + (173 employees x 23 [balance of pay periods for the year] x 100 = $379,900) |
| Non-Compliant Wage Statement Penalties | $692,000 | 173 employees x $4000 (maximum penalty per employee under Cal. Lab. Code § 226(a)) |
| Termination Wages | $332,160 | 173 employees x $64 (8 hours at minimum wage) x 30 days[4] |
| Split Shift Premiums | $2,015,104 | 173 employees x 364 days x 4 years x $8 per hour at minimum wage |
| **Total** | **$7,846,572** | |

Plaintiff argues that these calculations are very conservative. Each assumes one employee whose rights

---

[3] Plaintiff concedes that a one-year statute of limitations applies to these claims. Mot., Dkt. 13 at 9 (citing Cal. Civ. Code § 340(a)).

[4] *See* FAC, Dkt. 1-1, ¶ 88; Cal. Lab. Code § 203 ("If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."). Plaintiff calculates this figure on the assumption that "over the entire four year period covered by the FAC at least one employee would leave employment in each of the 173 large retail stores," though it is "far more probable that at least one employee terminated employment with each store at least one time per year." Mot., Dkt. 13 at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01601 JAK (ASx) | | Date | June 9, 2015 |
|---|---|---|---|---|
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | | |

were violated would work in each store each day. They do not include actual wages lost or attorney's fees. Nor do they include the damages alleged in the first, second, or seventh causes of action. *Id.* at 13. Plaintiff claims "[a]pplication of common knowledge would dictate that a big box retailer of the type described in the FAC would be open 12-16 hours per day would necessarily employ at a bare minimum 20+ non-exempt hourly employees per store per day." *Id.*

Defendants argue that these calculations are flawed because the FAC is indeterminate as to the rate of the alleged Labor Code violations. Opp'n, Dkt. 15 at 11-13.[5] Thus, it does not necessarily follow from the allegations that class members were subject to alleged meal period, rest period and split shift violations that this occurred every day. In support of this position, Defendants rely on *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193 (9th Cir. 2015). There, the Ninth Circuit reviewed the remand of a putative wage-and-hour class action following its removal by an employer. In calculating the amount in controversy, the employer assumed that, where the complaint alleged a "pattern and practice" of rest and meal break violations, damages were based on a "100% violation rate calculation, i.e., assuming that violations occurred in every identified shift for each class member." *Id.* at 1198-99 & n.3. The Ninth Circuit agreed with the district court that this was not a reasonable assumption:

> Because the complaint does not allege that [defendant] universally, on each and every shift, violates labor laws by not giving rest and meal breaks, [defendant] bears the burden to show that its estimated amount in controversy relied on reasonable assumptions. While it is true that the complaint alleges that [defendant] maintains "an institutionalized unwritten policy that mandates" the employment violations alleged in the complaint, including the denial of meal and rest periods, this does not mean that such violations occurred in each and every shift.

*Id.* at 1199.

Defendants also point out several similarities between the allegations in the FAC and those made in the complaint in *Roth*, which the Ninth Circuit described as "at best 'indeterminate,'" and which did not by

---

[5] Defendants also contend that they were not put on notice that the putative class had more than 101 members, because the FAC alleges that the membership of the entire class is "unknown" but "estimated to be greater than one hundred (100) individuals." Opp'n, Dkt. 15 at 16-17. Although Defendants concede that at least one employee would be needed to operate each store, they contend that "without further information as to the exempt or non-exempt status of these individuals . . . it is unclear whether they would be putative class members." Opp'n, Dkt. 15 at 17. Plaintiff's position as to the pleading of the class size is more persuasive. However, even if an intelligent review of the FAC would lead to the conclusion that the class size was at least 173, the indeterminate pleading about the rate of violation would still be present.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-01601 JAK (ASx) | Date | June 9, 2015 |
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | |

themselves show "that there was sufficient amount in controversy to support jurisdiction under CAFA." Opp'n, Dkt. 15 at 14-15 (citing *Roth* Compl., Dkt. 15-2); *see Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).[6]

Plaintiff responds that "[b]ased on the language in Plaintiff's FAC, a 100% violation rate is proper in calculating the amount in controversy. In fact, it is guesswork and speculation to assign any lower rate." Reply, Dkt. 16 at 4. Plaintiff contends *Ibarra* is distinguishable, for two reasons. First, *Ibarra* concerned an action that was removed despite the plaintiff's allegation that the amount in controversy did not exceed $5 Million. Under those circumstances, the defendant there had an evidentiary burden to rebut this allegation. There is no such allegation here. *Id.* at 5. Second, the complaint in *Ibarra* used the language "pattern and practice" and "multiple occasions" to describe the defendant's alleged violations, where the FAC uses the language "regular," "required," and "uniform." *Id.* Plaintiff also argues that any other similarities between the FAC and the complaint in *Roth* are not material. *Id.* at 6-8. Plaintiff next claims that *Roth* addressed the question whether a defendant may remove an action based on its own investigation if the time period defined in 28 U.S.C. § 1446(b)(3) has not commenced. By contrast, she claims that in this action, that time period "did in fact commence at the time of service of the FAC, and Defendants' challenge to this contention is the core issue this Court must address." *Id.* at 6. Finally, Plaintiff argues that, if the *Roth* complaint is analyzed using this approach, the amount in controversy there was less than $5 Million, which would lead to an "indeterminate conclusion on the amount in controversy." *Id.* at 7-8.

Plaintiff's arguments fail. *Ibarra* and *Roth* concerned somewhat different legal issues and procedural settings than those presented in this action. However, each bears on what amount a defendant should reasonably conclude is in controversy based on the language in the complaint. Even if these decisions are not binding authority as to that issue, they are highly persuasive. *Ibarra* held that the removing defendant did not carry the evidentiary burden to show that an alleged "pattern and practice" of Labor Code violations on "multiple occasions during [the plaintiff's] employment" necessarily meant that these violations occurred "on each and every shift." 775 F.3d at 1199. Although the defendant's failure to show removal jurisdiction was based on a lack of evidence, *Ibarra* supports the conclusion that similar allegations are indeterminate, i.e., that "the face of the complaint does not make clear whether the required jurisdictional elements are present." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013). If these allegations were determinate, the defendant would likely have been able to prevail on the preponderance-of-the-evidence standard simply by calculating the number of putative class members and multiplying that figure by the number of meal breaks. *Id.* at 1195, 1198. The

---

[6] Defendants' request for judicial notice of the *Roth* complaint, Dkt. 15-1, which is a public record, is **GRANTED**. Fed. R. Evid. 201.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01601 JAK (ASx) | Date | June 9, 2015 |
|---|---|---|---|
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | |

difference in language between the complaint in *Ibarra* and the FAC, e.g., "pattern and practice" as opposed to "uniform," is not a material one for purposes of the standard for determining jurisdiction. For that reason, a different result is not warranted here.

A consideration of *Roth* leads to the same conclusion. The similarities between the *Roth* complaint and the FAC, are striking. *Compare* FAC, Dkt. 1-1, ¶¶ 65, 74, 83, 88-89, 111, *with Roth* Compl., Dkt. 15-2, ¶¶ 20, 26, 29, 32; *see also* Opp'n, Dkt. 15 at 14-15 (summary table comparing relevant language of each complaint). Although the text of the complaint was not quoted at length in that decision, and its holding may not bind courts that interpret similar language, the conclusion in *Roth* that it was "indeterminate" language that "did not reveal on its face that there was . . . sufficient amount in controversy" does illustrate what a defendant with the application of reasonable intelligence could conclude on review of the FAC.

Plaintiff's application of her own method of analysis of the *Roth* complaint, and her conclusion that it may have alleged an amount in controversy of less than $5 Million, is inconsistent with the analysis in *Roth*. There, it was not found that the complaint was indeterminate after using similar calculations as to the amount in controversy. Instead, that conclusion was based on the "face" of the operative complaint. *Id.* at 1125. In this regard, the court observed that class-action plaintiffs are in a "position to protect themselves" against untimely removal, because if they "think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." *Id.* at 1126.

After receiving the FAC, Defendants were required to "apply a reasonable amount of intelligence in ascertaining removability," and their duty included "[m]ultiplying figures clearly stated in a complaint." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (internal quotation marks omitted). However, they were not obligated to "make extrapolations or engage in guesswork." *Id.* Nor were they required to undertake an investigation.

The FAC put Defendants on notice that certain wage-and-hour violations were alleged; that statutory damages could arise from such violations; and that a putative class of at least 100 members -- comprised of employees and former employees -- alleged they had been injured by these alleged violations. However, the FAC did not provide notice to Defendants about the frequency of these alleged violations. Plaintiff claims that Defendant could reasonably have inferred a 100% violation rate, i.e., at least one violation per day as to at least one class member. But the text of the FAC does not support this contention. Therefore, a defendant who applied a reasonable amount of intelligence would not conclude that this was alleged. Because a violation rate is not clearly alleged, the FAC was "indeterminate," and the 30-day deadline of 28 U.S.C. § 1446(b) did not begin to run when Defendants were served with the FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-01601 JAK (ASx) | Date | June 9, 2015 |
| Title | Viola Hubbs v. Big Lots Stores, Inc., et al. | | |

Based on the declaration of Schlonsky, which is the only evidence presented in connection with the Notice of Removal, the earliest time that Defendants were put on notice that the amount in controversy exceeded $5 Million, was on March 4, 2015, when the declaration is dated. Schlonsky Decl., Dkt. 1-1 at 102-03. Consequently, the removal of this action one day later on March 5, 2015, was timely.

**IV.     Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

|  |  : |
|---|---|
| Initials of Preparer | ak |