Yvette Davis, State Bar No. 165777
Haight, Brown & Bonesteel
2050 Main Street, Suite 600
Irvine, CA  92614
Phone:  714-426-4607
Fax:  714-754-0826
Email:  *ydavis@hbblaw.com*

Mark A. Knueve (*pro hac vice*)
Daniel J. Clark (*pro hac vice*)
Adam J. Rocco (*pro hac vice*)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 E. Gay Street, P.O. Box 1008
Columbus, OH  43216-1008
Phone:  614-464-6436
Fax:  614-719-5054
Email: *maknueve@vorys.com*
        *djclark@vorys.com*
        *ajrocco@vorys.com*

*Attorneys for Defendants Big Lots Stores, Inc. and PNS Stores, Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| Viola Hubbs, individually, and on behalf of other members of the general public similarly situated, | CASE NO. 2:15-cv-01601-JAK-AS |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO CERTIFIED CLASS** |
| vs. | |
| Big Lots Stores, Inc., an Ohio corporation; PNS Stores, Inc., an Ohio corporation; and Does 1 through 10, inclusive, | [Filed concurrently with Defendants' Memorandum of Points and Authorities, Defendants' Statement of Uncontroverted Facts, Declaration of Mark Knueve, Declaration of Keith Mendes, Declaration of Brendan Burke, Declaration of Letty Jeric, Employee Declarations, and [Proposed] Order] |
| Defendants. | Date:  April 16, 2018 |
| | Time: |
| | **Judge:  Hon. John A. Kronstadt** |
| | Trial Date:  July 3, 2018 |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 16, 2018 or as soon thereafter as the matter may be heard, in the Courtroom or the Honorable John A. Kronstadt, United States District Court for the Central District of California, Defendants Big Lots Stores, Inc. and PNS Stores, Inc. will and do hereby move for Summary Judgment on Plaintiffs' certified closing shift claims and derivative claims.

This motion is made pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no triable issue of material fact and Defendants are entitled to Summary Judgment as a matter of law on each of the following issues:

1)      Plaintiffs' claim that they were not paid overtime or minimum wages due to an alleged "gap" between clocking out and the alarm being set during the closing shift because such time was *de minimis*.

2)      Plaintiffs' claim pursuant to California Labor Code Section 203 because it is derivative of Plaintiffs' wage claim and because there is at least a good faith dispute as to whether the *de minimis* doctrine applies to the wage claim of the class.

3)      Plaintiffs' claim pursuant to California Labor Code Section 204 because it is derivative of Plaintiffs' wage claim and because there is no private right of action under Section 204.

4)      Plaintiffs' claim pursuant to California Labor Code Section 226 because it is derivative of Plaintiffs' wage claim and because there is at least a good faith dispute as to whether the *de minimis* doctrine applies to the wage claim of the class.

5)      Plaintiffs' claim for liquidated damages pursuant to California Labor Code Section 1194.2 because it is derivative of Plaintiffs' wage claim and because there is at least a good faith dispute as to whether the *de minimis* doctrine applies to the wage claim of the class.

6)      Any PAGA claim based on the Closing Shift claim because it is

1  derivative of Plaintiffs' wage claim.

2      This motion is made following the conference of counsel pursuant to Local

3  Rule 7-3 which took place on January 5, 2018.

4

5  Dated:  January 24, 2018

6

7                              */s/ Mark A. Knueve*
                               Mark A. Knueve (*pro hac vice*)
8                              Daniel J. Clark (*pro hac vice*)
                               Adam J. Rocco (*pro hac vice*)
9                              VORYS, SATER, SEYMOUR AND PEASE LLP
10                             52 E. Gay Street, P.O. Box 1008
                               Columbus, Ohio  43216-1008
11                             Phone:  614-464-6436
12                             Fax:  614-719-5054
                               Email: *maknueve@vorys.com*
13                                     *djclark@vorys.com*
14                                     *ajrocco@vorys.com*

15                             Yvette Davis, State Bar No. 165777
16                             Haight, Brown & Bonesteel
                               2050 Main Street, Suite 600
17                             Irvine,  CA  92614
18                             Phone:  714-426-4607
                               Fax:  714-754-0826
19                             Email:  *ydavis@hbblaw.com*

20
21                             *Attorneys for Defendants Big Lots Stores,
                               Inc. and PNS Stores, Inc.*
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................... vi

I.     INTRODUCTION ......................................................................... 1

II.    PROCEDURAL BACKGROUND ................................................ 2

III.   STATEMENT OF UNDISPUTED FACTS ................................. 3

    A.   Big Lots, Its Stores, And The Named Plaintiffs ................................. 3

    B.   Big Lots Prohibits Off-The-Clock Work ................................. 3

    C.   Big Lots's Lawful Closing Policy and Procedures ............................ 4

    D.   Testimony And Expert Analysis Confirm That Any "Gap" Is Minimal And Not Routine ................................. 5

        1.   Class Representative Testimony ................................. 5

        2.   Testimony of Class Members ................................. 6

        3.   Plaintiffs' Expert Report ................................. 8

        4.   Post-Certification Report of Expert Brendan Burke ................. 8

            a.   The Median "Gap" was 2 Minutes and 21 Seconds ......... 8

            b.   The Typical Employee Rarely Experienced A "Gap" ................................. 9

            c.   The Aggregate Median "Gap" was 6 Minutes ................ 9

IV.   LAW AND ARGUMENT ............................................................. 9

    A.   Applicable Legal Standard ................................. 9

    B.   A Scientific Statistical Sample May Be Used To Deny Class-Wide Liability On A Motion For Summary Judgment ................... 10

    C.   Plaintiffs' Closing Shift Claim Fails Under The *De Minimis* Doctrine ................................. 12

        1.   The *De Minimis* Doctrine Applies to Plaintiffs' California Labor Code Claims ................................. 12

        2.   Summary Judgment For The Class Is Supported By Court's Summary Judgment On Class Representative Coleman's Claim ................................. 13

        3.   The *De Minimis* Doctrine ................................. 14

|  |  | a. | Daily Time was *De Minimis* ............................................ 14 |
|  |  | b. | It Is Not Administratively Feasible To Capture The Time .................................................................................... 16 |
|  |  | c. | The Data Shows No Regularity In Gap Time For The Class .......................................................................... 17 |
|  |  | d. | The Aggregate Amount Of Gap Time Is Minimal ......... 18 |
|  | D. | Plaintiffs' Penalty Claims Also Fail .................................................... 20 |
|  |  | 1. | Plaintiffs Are Not Entitled To Penalties Under Sections 203 and 226 .................................................................... 21 |
|  |  | a. | Legal Standard .................................................................. 21 |
|  |  | b. | Big Lots Has A Good Faith Belief That The Wages In Dispute Are *De Minimis* ................................ 23 |
|  |  | 2. | No Private Right of Action Exists Under Section 204 ............. 25 |
|  |  | 3. | Plaintiffs Are Not Entitled To Liquidated Damages Under 1194.2 ......................................................................... 26 |
|  | E. | Plaintiffs' PAGA Closing Shift Claim Fails ...................................... 27 |
| V. | CONCLUSION ........................................................................................... 28 |
| CERTIFICATE OF SERVICE ................................................................................ 29 |

**TABLE OF AUTHORITIES**

**PAGE**

<u>**CASES**</u>

*Abbe v. City of San Diego,* No. 05cv1629 DMS (JMA), 2007 U.S. Dist. LEXIS 87501 (S.D. Cal. Nov. 9, 2007) ..............................................................15

*Alvarado v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 48935 (N.D. Cal. 2005) ................................................................................................passim

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008)....................21, 22, 26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................10

*Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005) .........................................22

*Barnhill*, 177 Cal. Rptr. at 807 .......................................................22, 24, 25

*Bratt v. Cty. of L.A.*, 912 F.2d 1066 (9th Cir. 1990)...................................................26

*Busk v. Integrity Staffing Solutions, Inc.,* 713 F.3d 525 (9th Cir. 2013) .......15, 17, 24

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)..........................................................10

*Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208 (C.D. Cal. 2009)....................12

*Cf. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, (2007)...........................................22

*Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300 (N.D. Ala. 2008) .......................19

*Chavez v. Converse, Inc.*, Case No. 15-cv-03746 –NC, 2017 U.S. Dist. LEXIS 169167 (N.D. Cal. October 11, 2017)................................................13, 16

*Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069 (9th Cir. 2016) ...........................................................................................12, 24

*Cornn v. United Parcel Service, Inc.*, 2005 U.S. Dist. LEXIS 30419 (N.D. Cal. 2005) .................................................................................................12

*Dalton v. Lee Publ'ns, Inc.*, No. 08-cv-1072 (S.D. Cal. Mar. 22, 2011) .................23

*Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1 (2014) ..............................................11

*Farris v. Cnty. of Riverside*, 667 F. Supp. 2d 1151 (C.D. Cal. 2009)......................15

*Gillings v. Time Warner Cable LLC*, 583 Fed. App'x 712 (9th Cir. 2014) ........12, 24

*Gomez v. Lincare, Inc,* 173 Cal. App. 4th 508, 93 Cal. Rptr. 3d 388 (Cal. Ct. App. 2009)................................................................................................12

*Gonzalez v. Downtown LA Motors,* No. BC350769 (Los Angeles Ct. Super. Ct. June 20, 2011)........................................................................................26, 27

*Green v. Lawrence Serv. Co.*, 2013 U.S. Dist. LEXIS 109270 (C.D. Cal. July 23, 2013) ................................................................................ 12

*Harris v. Vector Mktg. Corp.*, 656 F. Supp, 2d 1128 (N.D. Cal 2009) .................... 23

*Hinojos v. Home Depot, Inc.*, Case No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434 (D. Nev. Dec. 1, 2006) ........................................ 19, 22, 23

*Jeske v. Maxim Healthcare Servs., Inc.*, No. CV F 11-1838 LJO JLT, 2012 U.S. Dist. LEXIS 2963 (E.D. Cal. Jan. 10, 2012) ................................... 25

*Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114 (N.D. Cal. 2011) ............. 25

*Lewis v. Wendy's Int'l*, No. 09-07193, 2009 U.S. Dist. LEXIS 132013 (C.D. Cal. Dec. 29, 2009) ...................................................................... 21

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) ................................ passim

*LoJack Corp. v. Superior Court*, No. B219647, 2010 Cal. App. Unpub. LEXIS 2188 (Cal. Ct. App. Mar. 26, 2010) (unpublished) ................................. 12

*Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976 (1992) ................................... 26

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015) ................................................................................... 12

*Oppenheimer v. Sunkist Growers, Inc.*, 315 P.2d 116 (Cal. App. Dep't Super. Ct. 1957) ........................................................................... 25

*Pedroza v. PetSmart, Inc.*, No. ED CV 11-298 GHK DTB, 2012 U.S. Dist. LEXIS 189530 (C.D. Cal. June 14, 2012) ......................................... 21, 22

*Pena v. Taylor Farms Pac., Inc.*,  2015 U.S. Dist. LEXIS 15450 (E.D. Cal. Feb. 4, 2015) ........................................................................ 12

*People v. Stevey*, 209 Cal. App. 4th 1400 (2012) ........................................ 11

*Perez v. Wells Fargo & Co.*, 2015 U.S. Dist. LEXIS 54100 ......................... 18, 19

*Reber v. AIMCO/Bethesda Holdings, Inc.*, No. SA CV07-0607 DOC (RZx) (C.D. Cal. Aug. 25, 2008) ............................................................... 22

*Reed v. County of Orange*, 266 F.R.D. 446 (C.D. Cal. 2008) ............................ 19

*Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-cv-05221-SI, 2017 U.S. Dist. LEXIS 10510 (N.D. Cal. Jan. 25, 2017) .............................................. 26

*Rodriguez v. Nike Retail Services, Inc.*, Case No. 14-cv-01508-BLF, 2017 U.S. Dist. LEXIS 1477629 (N.D. Cal. Sept. 12, 2017) ......................... passim

*Rope v. Auto-Chlor System of Washington, Inc.*, 220 Cal.App.4th 635 (Cal App. 2 Dist. 2013) .................................................................... 27

*Rutti v. Locjack Corp., Inc.*, 569 F.3d 1046  (9th Cir. 2010) ........................... 14

*Silva v. See's Candy Shops, Inc.*, 7 Cal. App. 5th 235 (Cal App. 4 Dist. 2016) .................................................................................................. 27

*Smith v. T-Mobile USA, Inc.*, No. 05-cv-5274, 2007 U.S. Dist. LEXIS 60729 (C.D. Cal. Aug. 15, 2007) .................................................................. 19

*Troester v. Starbucks Corp.*, 680 Fed. App'x. 511 (9th Cir. 2016) ..................passim

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................ 10

*Unger v. Fannie Mae*, No. SACV 15-00951-CJC(JCx), 2015 U.S. Dist. LEXIS 93491 (C.D. Cal. July 16, 2015) ................................................ 25

*Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150 (9th Cir. 2016) ....................... 10

*Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, 2013 U.S. Dist. LEXIS 43899 (S.D. Cal. Mar. 27, 2013) ........................... 12, 27

*Weigele v. FedEx Ground Package System, Inc.,* 267 F.R.D. 614 (S.D. Cal. 2010) ................................................................................................. 11

*Woods v. Vector Mktg. Corp.*, 2015 U.S. Dist. LEXIS 67303 ................................. 22

*Yates v. Health Servs. Advisory Grp.*, 2017 U.S. Dist. LEXIS 118178 (C.D. Cal. July 24, 2017) ................................................................... 12, 18

**STATUTES**

Cal. Code Regs. tit. 8, § 13520 (1988) ............................................................... 21, 25

Cal. Lab. Code § 1174 ............................................................................................... 23

Cal. Lab. Code § 1194.2 ............................................................................... 20, 26, 27

Cal. Lab. Code § 1194.2(b) ....................................................................................... 26

Cal. Lab. Code § 203 ................................................................................. 20, 21, 23, 25

Cal. Lab. Code § 204 ........................................................................................... 20, 25

Cal. Lab. Code § 226 .........................................................................................passim

Cal. Lab. Code § 226(e) ............................................................................................. 22

**RULES**

Fed. R. Civ. P. 56(a) ................................................................................................. 10

Fed. R. Civ. P. 56(e) ................................................................................................. 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Vorys, Sater, Seymour and Pease LLP
52 E. Gay St.
Columbus, OH 43215

# I.     INTRODUCTION

After nearly a decade of litigation spanning three different lawsuits and an ever-changing array of legal theories and allegations, Plaintiffs are left with one certified claim – the Closing Shift claim. Plaintiffs obtained certification on that claim by alleging that through the ordinary operation of Defendants' policy, there is a one- to two-minute "gap" between the time that closing employees clock out and the time that the store alarm is set and employees leave the store. Plaintiffs further argued that this "gap" could be shown through common evidence: employee time records and store alarm records. The Court granted certification of a narrow class covering those associates who worked a closing shift "where Big Lots's recordkeeping system reflects a gap between the … [associate's] end of shift time and the time the store's alarm was set." (ECF 123 at 5, 9).

The Court previously granted Defendants' motion for summary judgment on the Closing Shift claim of Plaintiff and Class Representative Coleman because the undisputed evidence demonstrated that any "gap" between the time that Coleman clocked out and the time that the alarm was set was *de minimis*. (ECF 118 at 10). For the same reason the Court granted Defendants' motion on Class Representative Coleman's Closing Shift claim, it must grant Defendants' motion as to the Closing Shift class. All of the evidence in the case (declarations, depositions, polices, and both experts' data analysis) confirms that the time between clocking out and setting the alarm is between one to five minutes or less, the same amount of time that the Court found to be *de minimis* with respect to Class Representative Coleman's claim. Additionally, data analysis shows that the typical class member only worked a closing shift once every twenty shifts. Finally, the Court already determined that it is not administratively feasible for Defendants to record any "gap" because employees have less than a minute to leave before setting the alarm. (ECF 118 at 10). The facts

1    are undisputed and summary judgment should be granted.[1]

2         Plaintiffs' penalty claims are derivative of the wage claim and they fail as a

3    matter of law for the same reasons that the wage claim fails. The derivative claims

4    also fail because Plaintiffs cannot show that any violation was willful. Where there

5    is a "good faith dispute" as to whether there is an actual violation, the conduct is not

6    willful or intentional. Given that this Court previously granted summary judgment

7    on Class Representative Coleman's Closing Shift claim, and that other courts within

8    the Ninth Circuit have held that the *de minimis* doctrine applies in circumstances

9    similar to this case, there is more than a good faith dispute as to whether the

10   *de minimis* doctrine applies here.

11   **II.    PROCEDURAL BACKGROUND**

12        On May 12, 2017, this Court granted Defendants' motion for summary

13   judgment on Class Representative Coleman's Closing Shift claim. (ECF 116). The

14   Court held that the one to five minutes Coleman allegedly spent at the store after

15   clocking out when working a closing shift was *de minimis* and that it was not

16   administratively feasible to capture this time. (ECF 116 at 10.)

17        On May 23, 2017, the Court certified the Closing Shift class, which was

18   defined as follows:

19        All non-exempt employees of [Defendants] …who worked one or
20        more closing shift at any Big Lots store in California between
          February 7, 2010 and date of class certification and where Big Lots's
21        recordkeeping systems reflect a gap between the Closing Shift Class
          Members' end of shift time and the time the store's alarm was set.

22

23   (ECF 123). At that time, the Court hinted that the class claims were susceptible to

24   adjudication on summary judgment based on common proof. (ECF 123 at 8-9)

25   ("Furthermore, the analysis provided by Mendes may facilitate the determination on

26   _____
     [1] In the event that the Court denies summary judgment, then it must decertify the
27   class.  Given the prior Order of this Court granting summary judgment on the
     Closing Shift claim of Class Representative Coleman, denial of summary judgment
28   as to the class members would necessarily be recognition that the claims are not
     "common" but rather are individualized.

a classwide basis whether the time was de minimis…. Elements of the *Lindow* test can be presented and determined on a classwide basis. This includes evidence as to the practical and administrative difficulty of recording additional time as well as the regularity of the work.")

### III.   STATEMENT OF UNDISPUTED FACTS

#### A.   <u>Big Lots, Its Stores, And The Named Plaintiffs</u>

Big Lots operates 156 stores in California. (Jeric Dec. at 3). Each store is usually managed by a Store Team Leader and one or more Assistant Team Leaders.  Store associates, mostly part-time, report to the management team. (*Id.* at 4).

Defendants employed Viola Hubbs as a part-time associate from July 2010 to August 2013 in Los Angeles. (Hubbs Dep. 25:7-21, 62:17-21, 122:6-8). Defendants employed Brandon Coleman from 2005 to 2015, and Tamika Williams from 2010 to 2015 in San Bernardino. (Coleman Dep. 26:14-25, 31:6-33:13; Williams Dep. 32:1-4). During the relevant period, Coleman worked as a Furniture Manager/Furniture Lead and Williams worked as an associate and Associate Manager.[2] (Williams Dep. 34:19-36:5; Coleman Dep. 33:12-34:11).

#### B.   <u>Big Lots Prohibits Off-The-Clock Work</u>

Upon hire, employees receive and review an Associate Handbook. (Boas Dep. 252:9-12, 261:8-15; Jeric Decl. 7). Employees sign an acknowledgment verifying that they received and understand the policies in the Handbook. (Williams Dep. 47:22-48:22, Ex. 06; Hubbs Dep. 31:5-18; Coleman Dep. 42:17-43:19; Ex. 03). The Handbook prohibits off-the-clock work, states that it is each employee's responsibility to accurately record time worked, and cautions that a failure to record time accurately is a severe violation of Company policy. (Jeric Dep. 99:5-22, Ex. 9). An online policy also states that "off-the-clock" work is

---

[2] As managers, Williams and Coleman were responsible for enforcing Company policy. (Williams Dep. 48:3-8, 165:22-25; Coleman Dep. 47:21-48:8, 69:9-13).

prohibited and that employees must be paid for all hours worked. (Boas Dep. 25:5-26:7, Ex. 2). Associates can make a complaint through a manager, Human Resources, or the Get Real line. (Jeric Dep. 33:3-12, 102:25-103:5, 146:13-17).

Plaintiffs knew that Big Lots's policy prohibited off-the-clock work. (Williams Dep. 51:4-8, 156:8; Hubbs Dep. 32:19-33:7; Coleman Dep. 65:17-66:1). Coleman enforced this policy with respect to the associates he supervised. (Coleman Dep. 69:3-13). Employees throughout California also declared that they were aware of the policy prohibiting work off the clock, that they were instructed to never work off the clock, and that they never worked off the clock.[3]

## C. Big Lots's Lawful Closing Policy and Procedures

After close, a manager and one or two associates complete closing procedures. (Milner Decl. 20; Coleman Dep. 156:12-157:14, 163:7-164:5; Boas Dep. 93:6-17, 95:14-22, Ex. 9). All duties are to be done on the clock. (Boas Dep. 44:1-4; 88:9-21; Jeric Dep. 193:2-4). Letty Jeric, the Human Resources manager for California, was not aware of complaints of off-the-clock work at closing. (Jeric Dep. 115:8-23). When all duties are completed, the manager and associate(s) walk to a time clock in the front of the store, clock out, and walk about six to ten feet to the alarm. (Coleman Dep. 164:19-23; Boas Dep. 88:3-6, 89:4-24; Williams Dep. 118:5-119:3). There is a primary alarm keypad located by the entrance of each store that is used to set the alarm at closing. (Zuccala Dep. 42:19-24, 43:6-44:5).

The manager sets the alarm by punching a four-digit code and pushing an "arm" button. (Boas Dep. 87:13-89:24, 97:1-5; Coleman Dep. 164:19-23; Zuccala

---

[3] *See* Aguilar Decl. 15; Albanez Decl. 15, 16; Aquilina Decl. 18, 19; Bictoria Decl. 15, 16; Bun Decl. 16; Camacho Decl. 15, 16; Camarena Decl. 16; Casillas Decl. 15, 16; Cesena Decl. 15, 16; Delgado Decl. 11; Der Decl. 20, 21; Diaz Decl. 17, 18; Doornbos Decl. 15, 16; Duran Decl. 17, 18; Fleck Decl. 19, 20; Garcia, M. Decl. 19, 20; Garcia, S. Decl. 15, 16; Garcia, Y. Decl. 13; Ghanem Decl. 15, 16; Harris Decl. 17; Kennedy Decl. 16, 17; Lara Decl. 13; Lopez Decl. 18, 19; Mercado Decl. 17, 18; Milner Decl. 21, 22; Mitchell Decl. 19, 20; Oldehaver Decl. 14, 15; Oliva Decl. 14; Rael Decl. 18, 19; Saldivar Decl. 15; Salmeron Decl. 14; Straub Decl. 18, 19; Torres Decl. 14, 15; Valdez Decl. 13; Valerio Decl. 15, 16; Vasquez Decl. 15, 16; Villanueva Decl. 18, 19; Yi Decl. 15, 16; Zavala Decl. 16, 17.

Dep. 40:10-13,41:14-42:24, 45:1-18). Associates must leave the store within 45 seconds of setting the alarm. (Boas Dep. 87:13-16; Zuccala Dep. 46:5-13).

The alarm system is operated by third parties and "alarm records" are maintained by them. (Zuccala Dep. 26:6-27:10, 50:10-22; Jeric Dec. 11). Big Lots's time clock is not synchronized with the alarms' clocks. (Zuccala Dep. 96:23-97:16; McClain Dep. 71:18-21; Stockwell Dep. 135:9-15; Estes Dep. 153:22-154:2). As such, the time on the alarm and the time on the time clock may not be the same.[4]

### D.  Testimony And Expert Analysis Confirm That Any "Gap" Is Minimal And Not Routine

The evidence in this case is uniform and undisputed. Class Representatives, declarant class members, and the experts all agree that any "gap" between the time a closing shift associate clocks out and the time the alarm is set is no more than a few minutes and typically only a minute or two. Expert testimony also demonstrates that the typical associate rarely works a closing shift with a "gap" (approximately once every twenty shifts worked), and that the median aggregate "gap" per employee is minimal (six minutes over 467 calendar days).

#### 1.  Class Representative Testimony

Williams testified that closers clock out at the register in the front of the store, that the alarm is six to ten feet from the store exit, and that it took "a couple seconds" to set it. (Williams Dep. 118:5-119:3).[5]

Coleman testified that once he finished cleaning, he clocked out and left the store. (Coleman Dep. 164:6-23). He claimed that it took "about a minute" to set the alarm. (Id. at 164:24-25). If someone had a bag, Coleman checked it before setting

---

[4] By way of example, if a person has two non-synchronized clocks in the same room, frequently they will display two different times that are close but not exactly the same. Thus it is with Big Lots's employee time clock and the entirely separate clocks used on alarm systems provided by third party companies.

[5] Williams and Coleman worked at the same store in San Bernardino, California. (Coleman Depo. 26:14-25).

the alarm.[6] (*Id.* at 165:1-18). However, there often was not a bag check to perform because neither Coleman nor the other person working the closing shift would bring a bag. (Coleman Dep. 164:9-14). Depending on the number of people who had bags, this all could take one to five minutes. (*Id.* at 165:13-166:2). Since there were typically only two employees at closing, it was generally the lower end of that range. (*Id.* at 166:3-7). Coleman also testified that most of the time he did not work the closing shift. (*Id.* at 136:16-22).

Hubbs testified that ordinarily she clocked out after finishing her duties, the manager did bag checks (which she claimed took five minutes at most), the alarm was set (which took a couple of seconds), and everyone left. (Hubbs Dep. 69:6-70:3; 72:23-73:3; 76:20-77:2).

In short, the Class Representatives testified that customarily the time between clocking out and setting the alarm ranged from less than a minute to five minutes.

### 2.    Testimony of Class Members

Class Members declared that alarms were at the front of the store close to the registers and the exit. *See* Camacho Decl. 14 ("the alarm is right next to the front door"); Duran Decl. 16 ("The associate … goes to the front of the store while the manager sets the alarm."); Kennedy Decl. 15 ("Then we go clock out, set the alarm by the door, and leave the store"); Aquilina Decl. 17; Bictoria Decl. 14; Der Decl. 19; Harris Decl. 16; Lara Decl. 12; Villanueva Decl. 17.

Class Members also confirmed that they left the store within a minute (or less) to two minutes of clocking out. Bictoria Decl. 14 ("The entire time between when we clock out and when we leave takes only seconds."); Bun Decl. 15 ("The entire process from when I clocked out to when I left the store took less than a minute."); Der Decl. 18 (same); Harris Decl. 16 (same); Diaz Decl. 16 (same); Doornbos Decl. 14 ("It only takes about 30 seconds between us clocking out and us actually leaving the store."); Fleck Decl. 18 (same); Lopez, A. Decl. 16-17 ("During

---

[6] This violated corporate policy that bag checks should be done on the clock.

closing shift, bag checks are performed before we clock out….The entire process between when I clock out to when I leave the store takes no more than three seconds."); Milner Decl. 20 ("I would be surprised if the entire process between when we clock out when we leave takes more than 15 seconds, but I know it does not take more than 45 seconds because that is how long we have to get out before we trigger the alarm."). *See also* Aquilina Decl. 17; Oldehaver Decl. 13; Villanueva Decl. 17; Casillas Decl. 14; Diaz Decl. 16; Kennedy Decl. 15 ("The entire process from when we clock out to when we are out of the store takes at most two minutes, probably less."); Camacho Decl. 14 ("The entire process takes about two minutes from when we clock out to when we leave the store."). *See also* Garcia, S. Decl. 14; Valdez Decl. 12; Zavala Decl. 15.

With regard to the "regularity" of closing shifts, some employees never work closing shifts. Escobar Decl. 12 ("I only work mornings. I have never worked a closing shift."); Salmeron Decl. 13 ("I do not work closing shifts."); Yi Decl. 14 ("I do not work the closing shift at the store."). S*ee also* Aguilar Decl. 14; Albanez Decl. 14; Garcia, Y Decl. 12. Others rarely work closing shifts. Bun Decl. 15 ("I have only worked the closing shift once or twice and not anytime recently."); Casillas Decl. 14 ("One time, I worked the closing shift with a manager."); Cesena Decl. 14 ("Once in a great while, I work the closing shift."); Lara Decl. 12 ("I have worked the closing shift twice since I have been working at Big Lots."). *See also* Duran Decl. 16; Garcia, S Decl. 14. Others sporadically work closing shifts. Diaz Decl. 16 ("I occasionally work the closing shift at the store."); Vasquez Decl. 14 ("I sometimes work the closing shift."); Villanueva Decl. 17 ("Occasionally, I work the closing shift."). Others work the closing shift once or twice a week. Aquilina Decl. 17 ("I worked the closing shifts a couple of times a week in December and now I work the closing shift once a week."); Garcia, M Decl. 18 ("I usually work the closing shift about 1 day a week, but some weeks I do not work the closing shift and other weeks I work it as many as 3 times.").

### 3. Plaintiffs' Expert Report

Plaintiffs' expert analyzed the time records for employees at 21 stores in California during the relevant period and compared those records with available alarm records for that period of time. (Declaration of Keith Mendes (ECF 87-40) at ¶¶ 11, 20-21, 27). Mr. Mendes measured the alleged "gap" between clocking out and arming of the alarm. (*Id.* at ¶¶ 27-28). According to Mr. Mendes, "the sample [set] is of sufficient size such that [he] can apply the results of [his] analyses to the entire class." (*Id.* at n. 15). Mr. Mendes found that the <u>most common time</u> between the last clock out and the alarm set was "approximately one minute," with a median "gap" of two minutes.[7] (*Id.* at ¶ 29 and n. 21).

### 4. Post-Certification Report of Expert Brendan Burke

Defendants' expert Brendan Burke reviewed time records for 22,378 employees and alarm records for 160 stores and used materially the same analysis protocol employed by Plaintiffs' expert Mr. Mendes. (Declaration of Brendan Burke ("Burke Decl.") ¶¶ 5(b)(c)), 19-21; ECF 87-40 at ¶ ¶ 27-29).

### a. <u>The Median "Gap" was 2 Minutes and 21 Seconds</u>

There were 11,435 individuals who worked a closing shift with a "gap" between their clock out time and the time the closing alarm was set. (Burke Decl. ¶ 5(c)). Dr. Burke found that the overall median "gap" between closing punch outs and the closing alarm was 2 minutes and 21 seconds.[8] (*Id.* at ¶¶ 5(e), 24). The most common "gap" was 2 minutes and 7 seconds. (*Id.* ¶ 25).

---

[7] Mr. Mendes did another analysis (assuming a manager was not present at closing) and found that the most common time between the last clock out and the arming of the alarm was "approximately two minutes," with a median "gap" of three minutes. (*Id.* at ¶ 29 and n. 23).

[8] The average "is simply the sum of all observations divided by the number of observations." (Burke Dec. ¶ 8). In some situations, averages can be impacted by outliers and as a result become less representative of the actual distribution of observances. (*Id.*). "A different method of calculating a 'typical' value is to look at the value with the same number of observations above and below it." (*Id.* at 9). This is the median, which in percentile terms represents the 50th percentile. "[W]hen we have data (as in this case) with some outliers, the median is generally a better indication of the typical value." (*Id.*).

These findings are likely inflated due to the LRM timekeeping system Defendants used from 2010 to 2014. The LRM punch data is precise to the minute, while the Empower system is precise to the second. (*Id.* ¶¶ 5(d), 28). When looking at the LRM data and Empower data separately, the median "gap" for the Empower data was only 1 minute and 24 seconds, whereas it was 2 minutes and 36 seconds for the LRM data. (*Id.*).

Dr. Burke concluded that the average time between closing punch outs and the alarm being set is 95% certain to be less than 2.93 minutes. (*Id.* ¶¶ 5(g), 30.)

### b.   The Typical Employee Rarely Experienced A "Gap"

Additionally, Dr. Burke confirmed that employees did not frequently work closing shifts with a "gap." The typical employee experienced a "gap" in about 5 percent of their shifts, or about one in twenty shifts. (*Id.* ¶ 31).

Another way to look at how often an employee experienced a "gap" is to determine how many calendar days elapsed between days with a "gap." (*Id.* ¶ 33). Dr. Burke concluded that the typical employee worked one closing shift with a "gap" every 70 calendar days. (*Id.* ¶ 34).

### c.   The Aggregate Median "Gap" was 6 Minutes

Lastly, Dr. Burke found that the aggregate "gap" per employee – the total amount of "gap" across all Closing Shifts in an employee's entire employment – was minimal. The average employee worked 160 shifts over 467 calendar days. (*Id.* ¶¶ 36, 42.) The median aggregate "gap" across all employees whose data was available to be analyzed was a little over ***6 minutes*** across their entire employment. (*Id.* ¶ 38). Seventy-five percent of employees whose data was available to be analyzed had an aggregate "gap" of less than 45.6 minutes across their entire employment. (*Id.* ¶¶ 41-42).

## IV.   LAW AND ARGUMENT

### A.   Applicable Legal Standard

Summary judgment is properly granted where no genuine issue exists as to

any material fact, and where the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party need not negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Instead, summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

A party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 321 n.3 (citing Fed. R. Civ. P. 56(e)). The non-moving party must come forward with evidence to support his or her claims. *Id*. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986) (admissible evidence, not mere allegations, required to defeat summary judgment).

After a class has been certified, a defendant may use summary judgment to defend against liability on a class-wide basis. *See Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1156 (9th Cir. 2016) (defendants can "still challenge the sufficiency of the evidence, notwithstanding class certification."). "When … the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity … courts should engage that question as a matter of summary judgment…." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, -- U.S. ---, 136 S. Ct. 1036, 1046 (2016)).

## B.   A Scientific Statistical Sample May Be Used To Deny Class-Wide Liability On A Motion For Summary Judgment

In *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016), the United States Supreme Court held that statistical sampling may be used to prove or disprove liability in class action case:  "A representative or statistical sample, like all evidence, is a means to establish or defend against liability.  Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the

degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action."

Here, Dr. Burke's report is more than a statistical sampling; it is an analysis of **all** of the available time and alarm records. These are the same records that would be available at trial. Closing alarm records were compared with closing time punch records in materially the same method used by Plaintiffs' expert. (*See* Burke Dec. ¶¶ 5(c),19-21; ECF 87-40 at ¶¶ 27-29).

Dr. Burke determined that the average time between closing punch outs and the alarm being set is 95% certain to be less than 2 minutes and 56 seconds.[9] (*See* Burke Dec. ¶5(g), ¶ 30). A 95% confidence level is standard for scientific literature, (*Id.* at ¶ 11), and courts routinely accept a 95% confidence level as the standard of proof for statistical evidence. *See, e.g., Weigele v. FedEx Ground Package System, Inc.,* 267 F.R.D. 614, 624 (S.D. Cal. 2010) ("Certainly there is no rule requiring Plaintiff to prove its case with a 95% level of confidence;" "However, as the level of confidence decreases, it becomes increasingly problematic to rely on the results of sampling to extrapolate out to the whole class."); *Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 46 (2014) ("Statisticians typically calculate margin of error using a 95 percent confidence interval, which is the interval of values above and below the estimate within which one can be 95% certain of capturing the 'true' result."); *People v. Stevey*, 209 Cal. App. 4th 1400, 1415 (2012) ("no judicial error in allowing the jury to determine the weight of the probability calculations" based, in part, on 95 percent confidence interval, which is "generally accepted as reliable in the scientific community").

Dr. Burke's conclusion is consistent with Mr. Mendes's conclusion at class certification. Mr. Mendes found that the median gap was 2 minutes under one analysis and 3 minutes under another. (ECF 87-40 at ¶ 29). The most common gap

---

[9] A 95% confidence level means that if you performed the same study 100 times, the expected results would be the same in 95 of the 100 studies, within an acceptable margin of error.

1    was 1 minute and 2 minutes respectively. (*Id.* at n. 21 and n. 23).

2          C.    **Plaintiffs' Closing Shift Claim Fails Under The *De Minimis***

3               **Doctrine.**

4        Big Lots is entitled to judgment as a matter of law on Plaintiffs' closing shift

5    claim because the few minutes the typical class member spent once every 20 shifts

6    between clocking out and setting the alarm is *de minimis*.

7          1.    **The *De Minimis* Doctrine Applies to Plaintiffs' California**

8               **Labor Code Claims**

9        In both the Summary Judgment Order and the Certification Order, this Court

10   held that the *de minimis* doctrine is a valid defense to wage claims under California

11   law.[10] (ECF 118 at 9-10; ECF 123 at 8-9). This Court's holding is consistent with

12   the great weight of authority. *See, e.g., Corbin v. Time Warner Entm't-*

13   *Advance/Newhouse P'ship*, 821 F.3d 1069, 1083 (9th Cir. 2016) (citations omitted)

14   ("[I]n light of the realities of the industrial world, a 'few seconds or minutes of work

15   beyond the scheduled working hours ... may be disregarded.'"); *Gillings v. Time*

16   *Warner Cable LLC*, 583 Fed. App'x 712 (9th Cir. 2014).[11] California Courts of

17   Appeal and the California Division of Labor Standards and Enforcement have also

18   held that the *de minimis* doctrine is applicable under California law. *See Gomez v.*

19   *Lincare, Inc.,* 173 Cal. App. 4th 508, 527, 93 Cal. Rptr. 3d 388 (Cal. Ct. App. 2009);

20   *LoJack Corp. v. Superior Court,* No. B219647, 2010 Cal. App. Unpub. LEXIS

21   2188, at *8 (Cal. Ct. App. Mar. 26, 2010) (unpublished); *see also* DLSE, February

---

22
23   [10] This Court also stated that whether time is *de minimis* is a common issue that may be determined on a class-wide basis. (ECF 123 at 8-9).

24   [11] *See also Yates v. Health Servs. Advisory Grp.*, 2017 U.S. Dist. LEXIS 118178, *36 (C.D. Cal. July 24, 2017); *Pena v. Taylor Farms Pac., Inc.*, 2015 U.S. Dist.

25   LEXIS 15450, at *9 (E.D. Cal. Feb. 4, 2015); *Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, 2013 U.S. Dist. LEXIS 43899, at *18 (S.D. Cal.

26   Mar. 27, 2013); *Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208, 1217 (C.D. Cal. 2009); *Cornn v. United Parcel Service, Inc.*, 2005 U.S. Dist. LEXIS 30419

27   (N.D. Cal. 2005), *Green v. Lawrence Serv. Co.*, 2013 U.S. Dist. LEXIS 109270, at *17 (C.D. Cal. July 23, 2013); *Alvarado v. Costco Wholesale Corp.*, 2008 U.S. Dist.

28   LEXIS 48935, at *7-*8 (N.D. Cal. 2005); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 617 (C.D. Cal. 2015).

3, 1994 Opinion Letter; DLSE Enforcement and Interpretations Manual 46.6.4, 47.2.1, 48.19. Indeed, there are *no* cases where a California court wholly rejected the *de minimis* doctrine.

As Plaintiffs pointed out at the summary judgment stage, the California Supreme Court has agreed to review whether the *de minimis* defense applies to the California Labor Code at the Ninth Circuit's request. *See Troester v. Starbucks Corp.*, Case No. S234969; *Troester v. Starbucks Corp.*, 680 Fed. App'x. 511, 512 (9th Cir. 2016). Although briefing in *Troester* is complete, oral argument has not been scheduled and the matter remains pending before the California Supreme Court. *Troester* was pending at the time this Court granted summary judgment on Class Representative Coleman's claim, and thus its pendency should not bar or delay this Court's ruling on the instant motion.

Indeed, despite the pendency of *Troester*, the United States District Court for the Northern District of California recently reaffirmed the applicability of the *de minimis* defense to certified class claims under the California labor code in two different cases. *See Rodriguez v. Nike Retail Services, Inc.*, Case No. 14-cv-01508-BLF, 2017 U.S. Dist. LEXIS 1477629 (N.D. Cal. Sept. 12, 2017) ("the Court finds that it is appropriate to apply the *de minimis* doctrine to California Labor claims given the current state of the law."); *See Chavez v. Converse, Inc.*, Case No. 15-cv-03746 –NC, 2017 U.S. Dist. LEXIS 169167, *11 (N.D. Cal. October 11, 2017) ("The *de minimis* doctrine applies to all claims in this case.").

**2.    Summary Judgment For The Class Is Supported By Court's Summary Judgment On Class Representative Coleman's Claim**

This Court has already rejected the precise theory brought by Plaintiffs, granting summary judgment on Class Representative Coleman's closing shift claim:

> Coleman testified that time spent at the store after clocking out generally took one to five minutes per day. However, Coleman testified that most of the time he did not work the

> closing shift. Therefore, any extra time worked at closing was both brief and intermittent…. This time was *de minimis*.

(ECF 118 at 10) (internal citations omitted). The Court also noted that if it were to consider the analysis by Plaintiffs' counsel, which allegedly shows ten "off-the-clock" occasions over a 14-month period totaling 43 minutes, it would confirm its *de minimis* holding. (*Id.* at 10, n. 2).

The data shows that just like Coleman, any "gap" between the time that Class Members clock out and the time that the store alarm is set is "brief and intermittent." The median "gap" for a class member working a closing shift is 2 minutes and 21 seconds and the most common gap is 2 minutes and 7 seconds. The typical employee only worked a closing shift with a "gap" once every twenty shifts, or once every 70 calendar days. The median aggregate "gap" for employees whose data was analyzed is six minutes per employee across their entire employment, and the average employment tenure is 467 calendar days.

Indeed, the data establishes that the typical "gap" was shorter than that alleged by Coleman, the typical employee experienced "gaps" less often than Coleman, and the typical employee's total "gap" was less than that asserted by Coleman. There is no reason for this Court not to apply its prior ruling to the class.

### 3. The *De Minimis* Doctrine

To determine whether time is *de minimis,* courts consider: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984); *see also Rutti v. Locjack Corp., Inc.*, 569 F.3d 1046, 1057-58 (9th Cir. 2010). This test "reflects a balance between requiring the employer to pay for activities that it requires of its employees and the need to avoid 'split-second absurdities' that 'are not justified by the actuality of the working conditions.'" *Rutti*, 569 F.3d at 1057 (citations omitted).

### a. Daily Time was *De Minimis*

"An important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work." 738 F.2d at 1062. Courts regularly hold that <u>daily</u> periods of approximately 10 minutes are *de minimis*. *Lindow,* 738 F.2d at 1062 (collecting cases); *see also*; *Farris v. Cnty. of Riverside*, 667 F. Supp. 2d 1151, 1165 (C.D. Cal. 2009) (calling ten minutes the "standard threshold" for determining whether something is *de minimis*); *Abbe v. City of San Diego,* No. 05cv1629 DMS (JMA), 2007 U.S. Dist. LEXIS 87501, at *7 (S.D. Cal. Nov. 9, 2007) ("Here, it is undisputed that donning and doffing protective gear . . . takes less than 10 minutes. . . . Therefore, time spent donning and doffing safety gear is *de minimis* and non-compensable as a matter of law.").

Indeed, in its summary judgment decision in this case, the Court noted that "[p]eriods of approximately ten minutes per day may be properly treated as *de minimis*, when there is a practical administrative difficulty recording the time, and/or the amount of time varies from day to day." (ECF No. 118 at 9).

Recently, the Northern District came to the same conclusion. *Rodriguez*, 2015 U.S. Dist. LEXIS 56377, *36 ("The Court notes that even several minutes of daily time may be properly considered *de minimis* and not compensable."). In *Rodriguez*, plaintiff alleged that employees had to wait for and undergo a security inspection after clocking out for the day. Defendant maintained this took mere seconds, but plaintiff claimed it took several minutes. Considering the evidence most favorable to the plaintiff, the Court still found that the daily time was *de minimis* and granted summary judgment against a certified class. *Rodriguez*, 2015 U.S. Dist. LEXIS 56377, at *33-36; *see also Alvarado v. Costco Wholesale Corporation* No. C 06-04015 JSW, 2008 U.S. Dist. LEXIS 48935, at *3-4 (N.D. Cal. June 18, 2008) (plaintiff not entitled to compensation for time spent waiting for security checks at end of closing shifts, because "several minutes" plaintiff often had to wait was *de minimis*); *Busk v. Integrity Staffing Solutions, Inc.,* 713 F.3d 525, 532 (9th Cir. 2013) (five minutes daily spent passing through security clearance on way to lunch

1   break was *de minimis*); *Chavez v. Converse, Inc.*, 2017 U.S. Dist. LEXIS 169167,
2   *30-32 (granting summary judgment against certified class because alleged daily
3   exit inspection time of under 10 minutes was *de minimis*).

4   Here, all the evidence (deposition testimony, declarations, policies, and both
5   experts' data analysis) uniformly demonstrates that the time between clocking out
6   and setting the alarm was at most a few minutes. *See supra*, Section III(D). There
7   is no issue of fact, and this time is *de minimis*.

8                    **b.    It Is Not Administratively Feasible To Capture The**
9                          **Time**

10  At its heart, "[t]he *de minimis* rule is concerned with the practical
11  administrative difficulty of recording small amounts of time for payroll purposes."
12  *Lindow*, 738 F.2d at 1062. When an employer's timekeeping system cannot be
13  practically configured to capture the alleged compensable time, a small amount of
14  time spent off the clock performing a task is likely to be *de minimis*. *Id.* Employers
15  are not required to move their timekeeping systems in attempt to capture mere
16  seconds or minutes. *See Alvarado v. Costco Wholesale Corp.*, No. C 06-04015 JSW,
17  2008 U.S. Dist. LEXIS 48935, at *3 (N.D. Cal. June 18, 2008) (rejecting plaintiff's
18  suggestion that repositioning time clock closer to door would more accurately
19  measure time because workers could and did participate in noncompensable
20  activities before leaving store like shopping, the restroom, and socializing);
21  *Rodriguez*, 2017 U.S. Dist. LEXIS 147762, at *42-43 (holding that Nike was not
22  required to place additional time clocks in front of the store and noting that "Nike
23  need not prove it is 'technically infeasible' to record the additional time; only that it
24  would be administratively difficult to do so given its timekeeping system.").[12]

25  _____

26  [12] The Court in *Troester* also held that it was not administratively feasible for
27  defendant to "capture the tasks that Plaintiff performed after completing the close
    store procedure. He could not set the alarm prior to clocking out because the alarm
28  activated within one minute and would be triggered if the employees did not
    immediately exit the store." *Troester v. Starbucks Corp.*, No. CV 12-7677 GAF

Vorys, Sater, Seymour and Pease LLP
52 E. Gay St.
Columbus, OH 43215

Here, this Court has already held that it is not administratively feasible to capture the time between clocking out and setting the alarm. (ECF No. 118 at 10); (*see also* ECF 123 at 5) ("It would not have been possible to turn on the alarm and then clock out, because the alarm system activated within a minute. Thus, attempting to remain in the store to clock out after setting the alarm would very likely have caused the alarm to sound.").  Indeed, employees need to leave the store within 45 seconds of setting the alarm and thus must clock out before the alarm is set to ensure that there is sufficient time to exit the store. (Boas Dep. 87:13-16; Zuccala Dep. 46:5-13; Milner Decl. 20). Employees clock out at the registers or customer service station at the front of the store, which are close to the main alarm keypad and the store exit. (Williams Dep. 111:13-18, 118:5-119:3; Hubbs Dep. 42: 1-3, 45:2-8; Coleman Dep. 141:23-142:10; Kennedy Decl. 15; Cesena Decl. 14; Der Decl. 18, 19). There is no indication that any practical modification would better capture the handful of seconds at issue here.

There is no evidence, nor any development in the case law, which would require this Court to alter its prior holding that it is not administratively feasible to capture the time.  It should be applied to the class.

### c.      The Data Shows No Regularity In Gap Time For The Class

The third factor of the *de minimis* defense is the regularity of the additional work. *Lindow*, 738 F.2d at 1062. Courts examine whether the off-the-clock work was "a daily occurrence" or "happened with a fair amount of regularity." *Id*. at 1063 (citations omitted).[13] Courts routinely find that even weekly occurrences are not

PJWX, 2014 U.S. Dist. LEXIS 37728, *12 (C.D. Cal. Mar. 7, 2014). Although the California Supreme Court has agreed to review the decision in *Troester* at the Ninth Circuit's request, the District Court's decision is still illustrative.

[13] Where, as here, if the other factors are satisfied, the *de minimis* defense applies even if the time off the clock occurs every day. *See Busk*, 713 F.3d at 532 (holding that time employees spent "passing through the security clearance on the way to lunch" was *de minimis*, even though they did so on a daily basis); *Alvarado*, 2008

evidence of regularity. *Yates v. Health Servs. Advisory Grp.*, 2017 U.S. Dist. LEXIS 118178, \*36 (C.D. Cal. July 24, 2017) (finding that uncompensated activities were not regular where plaintiff claimed they occurred "once or twice per week" and "in a month, maybe three times" and stating that "When Courts have found that uncompensated time was not *de minimis*, plaintiffs typically performed substantial off-the-clock work on a daily basis."); *Perez v. Wells Fargo & Co.*, 2015 U.S. Dist. LEXIS 54100, \*23 (failure to pay employee for breaks was not regular because it did not occur "on a daily or perhaps even a weekly basis"); *Rodriguez*, 2017 U.S. Dist. LEXIS 147762, \*54 (finding that "10 workdays for a class member to experience a workday with one minute or more of uncredited time … is not evidence of regularity").

Here, the evidence demonstrates that working a closing shift was not a regular occurrence. (Coleman Dep. at 136:16-22) (did not work closing shift often); Bun Decl. 15 ("I have only worked the closing shift once or twice and not anytime recently."); Casillas Decl. 14 ("One time, I worked the closing shift with a manager."); Cesena Decl. 14 ("Once in a great while, I work the closing shift."); Lara Decl. 12 ("I have worked the closing shift twice since I have been working at Big Lots."); Diaz Decl. 16 ("I occasionally work the closing shift at the store."); Vasquez Decl. 14 ("I sometimes work the closing shift."); Villanueva Decl. 17 ("Occasionally, I work the closing shift.").

The data analysis confirms the testimonial evidence, and shows that the typical employee worked a closing shift with a "gap" only once every *20* shifts (or once every 70 calendar days). (Burke Dec. ¶¶31, 33-34).  As a matter of law, this sporadic occurrence is *de minimis*.

### d. <u>The Aggregate Amount Of Gap Time Is Minimal</u>

U.S. Dist. LEXIS 48935, at \*3-4 (granting summary judgment even though "security checks were a regular occurrence" and plaintiff regularly waited in security line for "a couple of minutes").

When evaluating the *de minimis* defense, some courts consider the aggregate amount of time per person across employment. *Lindow*, 738 F.2d at 1063; *Rodriguez*, 2017 U.S. Dist. LEXIS 147762, *31-32.[14]  It is well established that the "aggregate amount" prong of the *de minimis* test must be addressed on an employee-by-employee basis. *See, e.g., Perez v. Wells Fargo & Co.*, 2015 U.S. Dist. LEXIS 54100, *20 (N.D. Cal. April 24, 2015) ("Contrary to plaintiffs' suggestion, *Lindow* does not hold that the court should consider the "aggregate size of the entire class claim" in the absence of other, relevant, factual allegations.").[15]  If the rule were otherwise, plaintiffs could avoid the defense simply by alleging the existence of a class or collective.  *See Chao*, 568 F. Supp. 2d at 1320 (rejecting aggregating across entire class because it would allow "any claim for any amount of time, no matter how insubstantial to any particular employee on a daily basis [to be] compensable just because many employees are involved") (emphasis in original).[16]

Here, the aggregate "gap" per employee is unquestionably minimal. The median aggregate "gap" across all employees whose data was available to be

---

[14] "However, even if an aggregate claim is substantial, the time may still be *de minimis* because of the administrative difficulty of recording the time and irregularity of the additional work."  *Rodriguez*, 2017 U.S. Dist. LEXIS 147762, *45; *Lindow*, 738 F.2d at 1064.

[15] *Reed v. County of Orange*, 266 F.R.D. 446, 462 (C.D. Cal. 2008) (in addressing *de minimis* defense, "determining whether and when a particular Plaintiff regularly engaged in additional work and calculating the aggregate amount of time worked is an inherently individualized inquiry"); *Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1320 (N.D. Ala. 2008) ("[T]he number of employees or the length of time covered by the Complaint has no bearing on whether the *de minimis* defense may be raised.").

[16] Indeed, a number of courts in this Circuit have denied certification or have decertified collective actions precisely because this defense must be analyzed on an individualized basis.  *See Reed*, 266 F.R.D. at 462 (decertifying collective because *de minimis* defense would "necessarily result in individualized inquiry"); *Smith v. T-Mobile USA, Inc.*, No. 05-cv-5274, 2007 U.S. Dist. LEXIS 60729 (C.D. Cal. Aug. 15, 2007) (denying certification because defendants' defenses, "such as . . . the *de minimis* exception to the FLSA, must, by their nature, be individualized"); *Hinojos v. Home Depot, Inc.*, Case No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434 (D. Nev. Dec. 1, 2006) ("[D]efendant might well offer evidence . . . that any alleged off-the-clock work or time shaving falls within the *de minimis* exception to the FLSA. . . . . As a result, there would be a need for individualized determinations about each plaintiff['s] claims.").

analyzed was a little over 6 minutes per employee across their entire employment, which averaged 467 days. (Burke Decl. ¶ 38). Obviously, six minutes is less than the ***daily amount of time*** (10 minutes) that most courts find is *de minimis*, and this was spread out over 467 days.

Seventy-five percent of all employees whose data was available to be analyzed had a total "gap" of less than 45.6 minutes across their employment, and the average employment tenure was 467 calendar days. (*Id.* ¶ 41). The Court already determined that a similar amount of time (43 minutes over a 14-month period – approximately 426 days) was *de minimis.* (ECF 118 at 10, n. 2). There is no reason for the Court to change its prior decision.

### D.      Plaintiffs' Penalty Claims Also Fail.

Plaintiffs allege claims for penalties under Labor Code sections 203, 204, and 226, and liquidated damages under Section 1194.2. These claims fail because they are derivative of the underlying Closing Shift wage claim, and thus they fail for the same reasons the wage claim fails, discussed above.

Moreover, claims for penalties, such as wage statement and waiting time penalties, are not simply add ons that automatically attach to Plaintiffs' other claims. To recover under these theories, Plaintiffs must show that any violation was intentional or willful.  Where there is a "good faith dispute" in law, the conduct is not willful or intentional, regardless of whether or not there is an actual violation. Since this Court has already held that the *de minimis* doctrine applies to the claims of Class Representative Coleman, and numerous courts in the Ninth Circuit have held that the *de minimis* defense applies in facts similar to this case, there is more than a good faith dispute as to whether the *de minimis* doctrine applies here.[17] Defendants' conduct can in no way be determined to be "willful" or "intentional" when numerous courts – including this Court – have held that Defendants' conduct

---

[17] Additionally, Plaintiffs' claim under Section 204 fails because there is no private right of action under this Section.

Vorys, Sater, Seymour and Pease LLP
52 E. Gay St.
Columbus, OH 43215

1  is *lawful*.

2      At times there may be a tendency for courts to give short shrift to derivative

3  claims as they can be regarded simply as "add ons." Defendants respectfully request

4  that this Court seriously consider Defendants' Motion for Summary Judgment as to

5  the derivative penalties here, even if the Court is inclined to find a genuine issue of

6  fact as to the wage claim. Potential exposure on the substantive Closing Shift wage

7  claim is estimated at less than $200,000. However, exposure on the derivative

8  penalties could exceed tens of millions of dollars. This Motion is thus extremely

9  important for practical reasons.

10      **1.**    **Plaintiffs Are Not Entitled To Penalties Under Sections 203**

11          **and 226**

12        **a.**    **Legal Standard**

13      Section 203 provides for penalties only when an employer "willfully" fails to

14  pay wages at the time an employee is terminated. Cal. Lab. Code § 203; *see also*

15  *Lewis v. Wendy's Int'l*, No. 09-07193, 2009 U.S. Dist. LEXIS 132013, at *3, *18

16  (C.D. Cal. Dec. 29, 2009). "The settled meaning of 'willful' as used in section 203,

17  is that an employer has intentionally failed or refused to perform an act which was

18  required to be done." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201

19  (2008) (citation omitted). Section 203 penalties are precluded when there is a "good

20  faith dispute" as to whether any wages are owed to plaintiffs. *See* Cal. Code Regs.

21  tit. 8, § 13520 (1988); *Amaral v. Cintas Corp. No. 2*, 78 Cal. Rptr. 3d 572, 584-85,

22  621 (Cal. Ct. App. 2008); *Pedroza v. PetSmart, Inc.*, No. ED CV 11-298 GHK

23  DTB, 2012 U.S. Dist. LEXIS 189530 (C.D. Cal. June 14, 2012). "A 'good faith

24  dispute' that any wages are due occurs when an employer presents a defense, based

25  in law or in fact which, if successful, would preclude any recovery on the part of the

26  employee. The fact that a defense is ultimately unsuccessful will not preclude a

27  finding that a good faith dispute did exist." *Amaral*, 163 Cal. App. 4th at 1201.

28      Similarly, Section 226 provides for penalties only when a plaintiff can

establish a "knowing and intentional" failure to provide accurate wage statements. See Cal. Lab. Code § 226(e). "The 'good faith dispute' rule has been extended by courts to apply to California Labor Code Section 226 wage statement penalties, even though Section 226 contains a 'knowing and intentional' standard rather than the 'willful' standard of Section 203." *Woods v. Vector Mktg. Corp.*, 2015 U.S. Dist. LEXIS 67303, *7-8 (citing *Pedroza v. PetSmart, Inc.*, No. ED CV 11-298 GHK DTB, 2012 U.S. Dist. LEXIS 189530 (C.D. Cal. June 14, 2012); *Amaral*, 163 Cal. App. 4th at 1201-04 (applying section 203 good faith dispute defense to section 226); *Woods*, 2015 U.S. Dist. LEXIS 67303 (N.D. Cal. May 22, 2015) (same).

Legal uncertainty as to the merits of a claim provides an employer with a presumption of a good faith dispute. *Amaral*, 163 Cal. App. 4th at 1202 (citing *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005)); *Barnhill*, 177 Cal. Rptr. at 807 (holding that "appellant should not be penalized [under § 203] for [inaccurately] believing that setoff was proper and payment of wages not required" where the law pertaining to "setoff" was unclear); *Cf. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (penalties improper where there are multiple, reasonable interpretations of law). Additionally, factual disputes regarding the underlying claim can give rise to a good faith dispute precluding penalties. *See Home Depot*, 2017 U.S. Dist. LEXIS 145120, at *6 (holding that "factual disputes and proffered evidence regarding the [underlying] claim [were] sufficient" for finding a good faith dispute).

Where a good faith dispute exists as to the underlying wage claim, summary judgment is proper as to derivative claims under both sections 203 and 226. *See Pedroza v. PetSmart, Inc.*, 2012 U.S. Dist. LEXIS 189530 (C.D. Cal. June 14, 2012) (granting summary judgment on claims for penalties under sections 203 and 226 where good faith dispute existed); *Reber v. AIMCO/Bethesda Holdings, Inc.*, No. SA CV07-0607 DOC (RZx) (C.D. Cal. Aug. 25, 2008) (granting summary judgment on section 203 and 226 claims where good faith dispute existed as to whether

employees were properly classified); *Home Depot*, 2017 U.S. Dist. LEXIS 145120, *10 (granting summary judgment on section 203 and 226 claims where good faith dispute existed as to whether workday designation was improper); *Dalton v. Lee Publ'ns, Inc.*, No. 08-cv-1072 (S.D. Cal. Mar. 22, 2011) (granting summary judgment on section 203, 226, 1174 claims where there was good faith dispute as to whether workers were properly classified as independent contractors); *Harris v. Vector Mktg. Corp.*, 656 F. Supp, 2d 1128, 1146-47 (N.D. Cal 2009) (same).

b.   **Big Lots Has A Good Faith Belief That The Wages In Dispute Are _De Minimis_**

Plaintiffs' §§ 203 and 226 claims are derivative of their Closing Shift wage claim. Big Lots contends that the Closing Shift wage claim fails because any "gap" between the time an employee clocks out and the time the alarm is set is *de minimis*. As discussed above, numerous California federal district courts, including this Court in this case, and the DLSE have applied the *de minimis* doctrine to claims under the California Labor Code. *See supra*, Section IV(C)(1); (ECF 118 at 9) ("Notwithstanding that there may be further development of the law in this area, there are substantial similarities between the FLSA and the requirements of the California Labor Code.  In light of these similarities, the existing Ninth Circuit decisions are sufficient to permit the required analysis in this case."). Plaintiffs have not identified any cases in which courts have squarely held that the *de minimis* doctrine does not apply.

Defendants reasonably believe that their closing shift process complies with the law. This Court agreed with Defendants in its Order on Class Representative Coleman's closing shift claim, and other courts have held that the *de minimis* doctrine applies under circumstances similar to those here. *See supra*, Section III (*citing, e.g.*, *Troester v. Starbucks,* 2014 U.S. Dist. LEXIS 37728 at *13-14 (C.D. Cal. 2014); *Alvarado v. Costco Wholesale Corporation*, No. C 06-04015 JSW, 2008 U.S. Dist. LEXIS 48935, at *3-4 (N.D. Cal. June 18, 2008); *Busk v. Integrity*

*Staffing Solutions, Inc.*, 713 F.3d 525, 532 (9th Cir. 2013).  As discussed above, all of the evidence for the class is consistent with, or even more favorable than, the evidence relating to Class Representative Coleman, and all of it is consistent with the *de minimis* defense.

Thus, even if this Court were to find a genuine issue of fact as to whether the *de minimis* defense applies, or even if the Court were to find that the defense does not apply in this case, there would still exist a good faith dispute as to whether or not the time spent in the store after clocking out was *de minimis*.

The fact that the *de minimis* doctrine is currently pending before the California Supreme Court does not change this conclusion. *See Troester v. Starbucks Corp.*, 2016 Cal. LEXIS 6801 *1 (Cal. 2016). Regardless of the California Supreme Court's conclusion on the issue, Big Lots has a good faith belief that the *de minimis* doctrine applies to the wages in dispute in this case. Indeed, when certifying the question in *Troester*, the Ninth Circuit stated that two of its panels had previously applied the *de minimis* doctrine to California wage claims in the absence of a determination on the issue by the California Supreme Court. 680 Fed. App'x at 513 (citing *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1083 (9th Cir. 2016); *Gillings v. Time Warner Cable LLC*, 583 Fed. App'x 712 (9th Cir. 2014)).

The California Court of Appeals' decision in *Barnhill* is instructive. In *Barnhill*, an employee owed its employer a debt, and had not paid off that debt upon that employee's discharge. *Barnhill*, 177 Cal. Rptr. at 804. At issue was whether an employer had the right to "set off an employee's debt against wages due … upon the employee's discharge." *Id.* At that time, California courts were divided as to what situations an employer had the right to "set off" an employee's debt. *See Id.* at 805-07. Although *Barnhill* held that the employer in this case did not have the right of setoff, *Barnhill* also held "that given th[e] uncertainty [in the law], appellant should not be penalized [under § 203] for believing that setoff was proper and payment of

wages not required." *Id.* at 807.

Here, if the California Supreme Court holds that *de minimis* does not apply to claims under the California Labor Code, it will reverse years of precedent that applied at the time Big Lots developed and enforced its closing shift policies. As in *Barnhill*, penalties under §§ 203 and 226 would be inappropriate.

Applying penalties in this case would also not serve the purpose of penalties under the California Labor Code. "The purpose of [§ 203] … is to compel the prompt payment of earned wages." *Oppenheimer v. Sunkist Growers, Inc.*, 315 P.2d 116, 117 (Cal. App. Dep't Super. Ct. 1957). It exists to dissuade employers from willfully deciding not to pay former employees owed wages. *See id.*; Cal. Code Regs. tit. 8, § 13520 (1988); Cal. Lab. Code § 203. Section 226 is similarly designed to incentivize employers to provide accurate wage statements. The purpose of §§ 203 and 226 is not to punish employers for misunderstanding a complicated and uncertain area of law. *See Barnhill*, 177 Cal. Rptr. at 807. Where, as here, an alleged failure to pay any disputed unpaid wages was not a result willful dereliction of duty, but due to an employer's adherence to an established understanding of the law, penalties are inappropriate.

Because there is a good faith dispute as to whether the *de minimis* doctrine applies, penalties under §§ 203 and 226 are inappropriate and summary judgment should be granted.

### 2.     No Private Right of Action Exists Under Section 204

Plaintiffs also bring a claim under Cal. Lab. Code § 204 (Seventh Cause of Action). Courts, however, have routinely held that no private right of action exists under Section 204 *See, e.g.*, *Unger v. Fannie Mae*, No. SACV 15-00951-CJC(JCx), 2015 U.S. Dist. LEXIS 93491, at *6 (C.D. Cal. July 16, 2015); *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011); *Jeske v. Maxim Healthcare Servs., Inc.*, No. CV F 11-1838 LJO JLT, 2012 U.S. Dist. LEXIS 2963 (E.D. Cal. Jan. 10, 2012). Therefore, this claim fails as a matter of law.

### 3. Plaintiffs Are Not Entitled To Liquidated Damages Under 1194.2

Plaintiffs also seek liquidated damages under Section 1194.2 (Second Cause of Action) for failure to pay Plaintiffs the minimum wage. A court may decline to impose liquidated damages, if an employer shows that (1) it had "reasonable grounds for believing the act or omission" giving rise to the penalties did not violate California law, and (2) the act or omission was in good faith..." Cal. Lab. Code § 1194.2(b); *Bratt v. Cty. of L.A.*, 912 F.2d 1066, 1071 (9th Cir. 1990).

As discussed above, Big Lots has a reasonable belief that its closing shift procedures comply with California law. Where there is such a reasonable belief, penalties are inappropriate. *See*; *Lusardi Constr. Co. v. Aubry*, 1 Cal. 4th 976, 996-97 (1992) ("[C]ourts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions."); *Amaral*, 163 Cal. App. 4th at 1202 (legal defenses to minimum wage claims were not unreasonable when no California appellate decision had ever addressed interpretation or constitutionality of ordinance); *Gonzalez v. Downtown LA Motors*, No. BC350769, at 17 (Los Angeles Ct. Super. Ct. June 20, 2011) (under section 1194.2, employer had reasonable basis for payment decision where there was no published California opinion interpreting law in situation presented) (attached as Knueve Decl. Ex. J). Where, as here, the governing law (*de minimis*) was consistent with the employer's belief, or at best unsettled, a presumption of good faith in favor of the employer should apply. *See, e.g.*, *Amaral*, 163 Cal. App. 4th at 1202.

In *Ridgeway v. Wal-Mart Stores, Inc.*, the court held that liquidated damages under section 1194.2 were inappropriate even after a jury found that the defendant had intentionally failed to pay the minimum wage to class members. *See* No. 08-cv-05221-SI, 2017 U.S. Dist. LEXIS 10510, at *16 (N.D. Cal. Jan. 25, 2017). In that case, Wal-Mart met both the "good faith" and "reasonableness" prongs under section 1194 even though it had not properly compensated drivers under a piece-rate

system. The court stated that the "good faith inquiry … focuses on whether the employer acted with dishonest or wrongful motive." *Id.* at \*16-\*17. The Court found that Wal-Mart acted in good faith in part because its policies were designed to ensure that employees were paid the minimum wage and that it changed its policy after the California legislature resolved "unsettled controversies" affecting how the plaintiffs were paid. *Id.* \*17-\*18. Additionally, the court found that Wal-Mart satisfied the "reasonableness" prong because the law on piece-rate compensation was uncertain when Wal-Mart developed its policy.  *Id.* at \*20. Wal-Mart, thus, "had reasonable grounds for believing their piece-rate compensation scheme complied with California minimum wage law." *Id.* Accordingly, liquidated damages under section 1194.2 were not awarded.  *See also Downtown LA Motors*, Case No. BC350769, at 17 (*See* Knueve Decl. Ex. J).

Accordingly, the Court should grant summary judgment on Plaintiffs' Second Cause of Action claiming liquidated damages under Section 1194.2.

### E.      Plaintiffs' PAGA Closing Shift Claim Fails.

Plaintiffs' PAGA claim fails for the same reasons that the Closing Shift class claim fail.  *See supra* Section IV(C).  Accordingly, summary judgment should be granted on Plaintiffs' PAGA closing shift claims.  *See Silva v. See's Candy Shops, Inc.*, 7 Cal. App. 5th 235, 258 (Cal App. 4 Dist. 2016) ("The first portion of Silva's PAGA claim was based on the same substantive allegations …  adjudicated in the summary judgment motion.  Thus, this portion of the PAGA claim necessarily fails."); *Rope v. Auto-Chlor System of Washington, Inc.*, 220 Cal.App.4th 635, 650 (Cal App. 2 Dist. 2013) (recovery of civil penalties under PAGA "requires proof of a Labor Code violation"); *Waine-Golston*, 2013 U.S. Dist. LEXIS 43899 at \*38 ("As the Court is granting Defendant's motion for summary judgment as to all stated causes of action, the Court also GRANTS Defendant's motion for summary judgment as to PAGA as it is based on the same allegations.").

1  **V.    <u>CONCLUSION</u>**

2          For the foregoing reasons, Defendants Big Lots Stores, Inc. and PNS Stores,

3  Inc. respectfully request that summary be judgment be granted in their favor.

4

5  Dated: January 24, 2018            Respectfully submitted,

6                                     VORYS, SATER, SEYMOUR AND PEASE LLP

7                                     Mark A. Knueve
                                      Daniel J. Clark

8                                     Adam J. Rocco

9                                     HAIGHT, BROWN & BONESTEEL LLP

10                                    Yvette Davis

11                                    By: */s/ Mark A. Knueve*

12                                    Mark A. Knueve
                                      Big Lots Stores, Inc. and PNS Stores, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 24, 2018, the foregoing was filed with the Clerk of the Court for the United States District Court for Central District of California via the Court's CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

*/s/ Mark A. Knueve*
Mark A. Knueve