## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.     We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.     We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.     The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.     As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.     You have no obligation to speak with us and may decline to be interviewed.

6.     Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.     You will not benefit by speaking with us.

8.     If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.     If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:    Robert Aguilar           Date 1/19/16

Signed:

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF ROBERT AGUILAR** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Robert Aguilar, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate in the furniture department. I work in Store # 4246 in Whittier, California. I have worked in this store for three years and three months.

2.      I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. They informed me that I was not required to speak with them and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions they asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots</u>

1

Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.　　It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.　　At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of work. I usually work seven or eight hours shifts and take my meal break at the four and one-half hour mark.

5.　　I was trained on the meal period policy when I began working at Big Lots. Managers at my store frequently remind us to take our meal breaks before the fifth hour and really emphasize the importance of taking meal breaks on time.

6.　　My meal break is written into my store's daily schedule which is available at the front of the store for everyone to look at. Sometimes managers will remind associates to take their meal breaks, but associates often remember to take their meal breaks on their own.

7.　　Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

8.　　It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay. In my three years here, I took a meal break late once because I was helping a customer and I received premium pay.

2

9.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take another rest break. At my store, the managers regularly remind associates of the rest break policy.

10.     Like meal breaks, my rest breaks are written into the store's daily schedule that is available at the front of the store. I know when to take my rest breaks, but managers will remind me and other associates of when to take rest breaks

11.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

12.     Associates who bring bags or make purchases are required to have their bags checked before they leave. Not everyone brings a bag. In fact, only two or three people a day bring bags at this store. I never bring a bad and never have to have a bag check at the end of my shift.

13.     I will perform bag checks if I am at the front of the store. The bag checks are very quick. I look into the bag and do not touch the bag or anything in it. If I can't see something in the bag, the person whose bag is being checked will move things around so I can see.

14.     I have never worked a shift at the store where I am the last associate with the manager before closing.

15.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

3

16.    During my employment with Big Lots, I have never been scheduled for or worked a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Robert Aguilar

Executed this 19th day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1. We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2. We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3. The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4. As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5. You have no obligation to speak with us and may decline to be interviewed.

6. Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7. You will not benefit by speaking with us.

8. If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9. If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10. If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11. You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _____Silvia Albanez_____   Date ___1/20/16___

Signed: _____Silvia Albanez_____

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF SILVIA ALBANEZ** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Silvia Albanez, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") at Store # 1466 in Culver City, California.  I have worked for Big Lots since 2000.  I originally worked in West LA, but have been in this store for around seven years.  I work in stock and do recovery in the morning.  I typically work around 20 hours a week.  My shifts are generally 4 to 4.5 hours.

2.      I voluntarily spoke with Adam Rocco, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him/her and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions s/he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case

1

of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      I understand that Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. Associates generally take them at around the 4 hour mark. I almost never work long enough get a meal break. I generally only work around 4 hours.

5.      If I do work long enough to get a meal break, I take it at around 4 hours of work. I typically take my break in the break room. Some people leave the store or go to their car. When I am on a break, I am on a break –I am not permitted to be working. I have never worked during the time I am supposed to be taking my meal break.

6.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early.

7.      My meal and rest breaks are written into my store's daily schedule. It is also on the electronic schedule, which you can check. A print out of the schedule is made available at Customer Service so I can see and determine when my meal and rest periods should be taken. I also just know when I am supposed to take my meal and rest breaks.

8.      Throughout my employment with Big Lots, I have never missed or been denied a meal break.

9.      It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay.  This has only happened to me one time.  I took my lunch break a little late and I got one hour penalty pay.  It was an emergency situation.  It has never happened again.

10.      I understand that I am supposed to take a 15 minute rest break for every 4 hours of work or major fraction thereof.  I typically take my 15 minute break at around my second hour of work.  I generally take rest breaks in the break room.  I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.      During my employment at Big Lots, I have never been unable to take a full rest break and have never been denied a rest break.

12.      I bring a bag to work.  I keep my bag in a locker in the back.  I get the bag and then I show it to whoever is at customer service or a cashier if no one is at customer service.  The bag check does not take long.  Sometimes, I will shop after work.  When I do that, I will clock-out, then shop, then get both bags checked as I leave.

13.      Some people think they do not have to do bag checks.   Also, some people don't have bags, so they don't have to get bag checks.

14.      I always work morning shifts.  I do not work at night and have never worked a closing shift at this store.

15.      Big Lots' policy additionally prohibits associates from working off-the-clock.  I understand this policy and have been reminded of the policy during my employment.  I have never worked off-the-clock, nor have I ever been asked to work off-the-clock by a manager.

16.      During my employment with Big Lots, I have never been scheduled for or worked a split shift.

3

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Silvia Albanez

Executed this 20th day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*SA*    1.    We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*SA*    2.    We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*SA*    3.    The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*SA*    4.    As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*SA*    5.    You have no obligation to speak with us and may decline to be interviewed.

*SA*    6.    Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*SA*    7.    You will not benefit by speaking with us.

*SA*    8.    If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*SA*    9.    If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*SA*    10.    If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*SA*    11.    You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

        I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Sarah Aquilina_          Date _Feb 22, 2016_

Signed: _Sarah Aquil_

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF SARAH AQUILINA** |

I, Sarah Aquilina, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as associate and my responsibilities are being a cashier and doing recovery. I have worked for Big Lots for about three months. I work in Store # 4271 in Campbell, California.

2.     I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of
California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so.
All statements below are provided upon careful reflection and consideration. The statements
made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period
policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid
meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of
work (generally after the 3rd hour of work, but before the 5th hour of work). I typically only
work 4 or 4.5 hour shifts because I am in school. But in December I had longer shifts and would
take a meal break.

5.      In addition, we are required to clock out during meal periods and cannot clock in
early from meal periods. The computer prevents us from clocking in early. I know this because I
tried to clock in once and the computer stopped me. Additionally, my meal periods have never
been interrupted and I do not perform work during my meal breaks. I am able to leave the store if
I choose to do so, or I can eat lunch in the back. I usually go into the break room, but know that I
am allowed to leave if I want to. There are plenty of seats available in the break room for use
during meal and rest breaks.

6.      One time, when I first started working, I did not clock out for my meal break, but
I still took the break at the right time. I spoke to the manager, and the manager corrected my time
entry.

2

7.      I was trained on the meal period policy when I began working at Big Lots. The employees training me asked if I had any questions on the meal period policy, and I didn't have any. I felt very informed about the policy.

8.      My meal break is written into my store's daily schedule. A print out of the schedule is made available to associates so I can see and determine when my meal period should be taken. Additionally, the employee working at the customer service station will remind everyone when it is their time to take a meal break.

9.      Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

10.     I am aware that it is against Big Lot's policy for employees to take late meal periods and everyone at my store takes their meal periods on time. The managers remind us that it is important to take our meal periods on time.

11.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

12.     I was trained on the rest break policy when I began working at Big Lots. I am frequently reminded of the rest break policy by the managers at my store. Mangers spoke to me

3

about policies when I was trained and employees remind each other about the rest break policy regularly.

13.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken. The employee working the customer service station will remind associates when to take their rest breaks.

14.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break. I have never heard another associate complain about not being able to take a full rest break.

15.     At my store, employees who bring bags are required to have them checked. The bag check can be performed by a manger or whoever is at the front of the store if the manager is busy. I usually bring a bag, but not everyone does. I bring a backpack and that takes longer to check than some other people's bags because it is bigger and has more things inside. But even my backpack only takes between 10 and 30 seconds to check.

16.     When the bag is being checked, the person checking the bag quickly looks inside as the person whose bag is being checked goes to leave the store. The person checking the bag does not touch the abg or anything inside of it. If anything needs to be moved they will ask the person whose bag is being checked to move things inside the bag so they can see.

17.     I worked the closing shifts a couple of times a week in December and now I work the closing shift once a week.  There is usually one manager and three or four associates working the closing shift. When all the closing work is completed and it is time to leave the store, the associates will go to the front of the store around 9:55 p.m. If they do not Associates usually go to the front by 9:55 on their own. If they are not the manger will make announcement that it is

4

time to go tot the front. We do not clock out until the manger is at the front of the store. Associates are expected to stay on the clock until closing work has been completed and it's time for us to leave. After we clock out, the manager sets the alarm and we all walk out together. It takes a minute or less between when we clock out and when we walk out of the store.

18.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

19.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

20.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


Sarah Aquilina


Executed this 22nd day of February 2016,


5.

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

EZ  1. We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "Hubbs case").

EZ  2. We are the attorneys who represent Big Lots in the Hubbs case.

EZ  3. The Hubbs case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

EZ  4. As an employee of Big Lots you are a potential class member in the Hubbs case.

EZ  5. You have no obligation to speak with us and may decline to be interviewed.

EZ  6. Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

EZ  7. You will not benefit by speaking with us.

EZ  8. If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

EZ  9. If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the Hubbs case.

EZ  10. If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

EZ  11. You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the Hubbs case for purposes of gathering evidence to support Big Lots defense.

Name: Elvina Victoria   Date 02-22-16

Signed: EZVictoria

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>  Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br><br>**DECLARATION OF**<br>**ELVIRA BICTORIA** |

I, Elvira Bictoria, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate, and my responsibilities include being a cashier, stocker, recovery, and customer service.  I have worked at Big Lots for 16 years.  I have worked in Store # 4271 in Campbell, California for all of those years.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of
California.

      3.      It is my decision to submit this Declaration and I am under no obligation to do so.
All statements below are provided upon careful reflection and consideration. The statements
made in this Declaration are truthful, accurate and voluntary.

      4.      At all times during my employment, Big Lots has had and enforced a meal period
policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid
meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of
work (generally after the 3rd hour of work, but before the 5th hour of work). I usually only work
a four hour shift and do not take a meal break. But I have worked shifts longer than 5 hours take
meal breaks when I do.

      5.      We are required to clock out during meal periods and cannot clock in early from
meal periods. Additionally, my meal periods are uninterrupted and free from work. I am able to
leave the store if I choose to do so, or I can eat lunch in the back. I always eat in the break room
because I bring my lunch, but I know that I could leave if I wanted to. There are plenty of seats
available in the break room for use during meal and rest breaks. I have never worked during the
time I am supposed to be taking my meal break.

      6.      I was trained on the meal period policy at Big Lots, and managers remind us of
the policy regularly. My meal break is written into my store's daily schedule. A print out of the
schedule is made available to associates so I can see and determine when my meal period should
be taken. The person working at the customer service desk will remind everyone of when to take
their lunch by making announcement over the P.A. system.

7.      Throughout my employment with Big Lots, I have never been unable to take a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break. Managers stress the importance of taking meal breaks. No matter how busy the store is, they tell us we have to take our meal breaks.

8.      It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay.  Big Lots' payroll system automatically provides a premium payment (one hour of pay) to any associate any time the time records do not show that a required meal break was taken, if the required meal break was less than 30 minutes, or if the required meal break was taken late.  One time, I clocked out for lunch after five hours. When this happened I received the premium pay and got written up. The mangers also spoke to me about the incident.

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

10.     I was trained on the rest break policy at Big Lots and managers frequently remind us of the rest break policy. Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when

my rest break(s) should be taken. The person working at the customer service desk will also announce rest breaks over the P.A. so everyone knows when to take their rest breaks.

11.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

12.     At my store, employees who bring bags are required to have them checked when the leave. Not everyone at the store brings a bag, and I never bring a bag that needs checked because my lunch bag is disposable. Therefore, I do not have anything to be checked.

13.     Bag checks are usually performed by managers, but if manager is not around an associate can perform a bag check. I perform bag checks on other employees when needed. I only look in the bag quickly as the employee opens it on the way out of the store. A bag check normally takes about 5 seconds, but if they have purchased a lot of things in the store the bag check takes about ten seconds.

14.     I often work the closing shift at my store. During the closing shift there is usually one manager and two associates. If it is very busy, there might be two managers and three associates. When it is almost time to leave the store, managers will announce over the P.A. system that is time to go in five minutes.  The managers are already at the front of the store when we clock out. Then the manager will perform back checks before we leave and set the alarm. We will all then walk out together. The entire time between when we clock out and when we leave takes only seconds.

15.     Big Lots' policy additionally prohibits associates from working off-the-clock.  . Managers regularly tell associates not to work off-the-clock.

4

16.    ==During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.==

17.    During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

*Elvira Victoria*    02-22-16
Elvira Bictoria

Executed this 22nd day of February 2016.

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u>" case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Cathy Brewer_          Date _2-26-16_

Signed: _Cathy Brewer_

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br>**DECLARATION OF<br>Cathy Brewer** |

I, Cathy Brewer, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier, floor associate, and in stocking.  I have worked for Big Lots for 6 months. I work in Store # 4311 in Concord, California.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.     It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration.  The statements made in this Declaration are truthful, accurate and voluntary.

4.     At all times during my employment, Big Lots has had and enforced a meal period policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours.  The meal period must be taken <u>before</u>  I complete 5 hours of work. My shifts are usually between 4 and 7 hours. I usually take my meal break around the 3 hour mark.

5.     In addition, we are required to clock out during meal periods and cannot clock in early from meal periods.  The computer prevents us from clocking in early.  Additionally, my meal periods are uninterrupted and free from work. I have been told that if I am called during my break not to go and to remain on break. I am able to leave the store if I choose to do so, or I can eat lunch in the back.  Sometimes I stay in the break room for my meal breaks and sometimes I leave. When I choose to stay, there are plenty of seats available in the break room.

6.     I was trained on the meal period policy when I began working at Big Lots. The managers talked to me about the meal policy and showed me a video that included material on the meal break policy.

7.     My meal break is written into my store's daily schedule on a clipboard at the front register and is available on the Empower schedule. Managers check to make sure that people take their meal breaks.

2

8.      Throughout my employment with Big Lots, I have never missed a meal break. I
have also never heard of or observed a manager deny any other associate a meal break or
witnessed a manager pressure an associate to work through or shorten a meal break.

9.      I have been told that associates can be disciplined for failing to take their meal
break on time.

10.     At all times during my employment, Big Lots has also had and enforced a rest
break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15
minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I
am scheduled to take breaks at around the 2 hour mark.

11.     I was trained on the rest break policy when I began working at Big Lots. The
managers spoke to me about the rest break policy and showed me video that included material on
the rest break policy. Managers will also check with people to make sure they are taking their
rest breaks.

12.     During my employment at Big Lots, I have never been unable to take a full rest
break. I have never seen or heard of another associate being unable to take a full rest break. I do
not always take a second rest break when I am working 7 hours. That rest break is not written on
the schedule at the front of the store, but I have never asked to take the second rest break. A
manager has not told me that I could not take the second rest break.

13.     We do bag checks at the store for employees who bring bags. Any one who is up
front can perform a bag check. I do not usually bring a bag, but some people at my store do and I
have seen them get their bags checked. I have not seen anyone wait to get a bag checked. Even if
there is a line of customers, they just walk up to cashier who checks the bag. The bag checks are
extremely brief and take only seconds to complete.

3

14.     Employees will have their bag checked after they clock out, but I have never heard a manager say that employees have to clock out first.

15.     I work the closing shift two or three times a week.  When it is almost time to leave, a manager will tell us to go to the front of the store. We do bag checks before we clock out and then we all clock out together. It only takes a minute or two between when we clock out and when we step foot outside the store.

16.     Big Lots' policy additionally prohibits associates from working off-the-clock. Managers remind us not to work off-the-clock.

17.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.  In fact, managers will tell people to go home if anyone every says they will perform any work after they have clocked out.

18.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


_Cathy Breyer_
Cathy Breyer


Executed this 26th day of February, 2016.


4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*C.B*      1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*C.B*      2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*C.B*      3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*C.B*      4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*C.B*      5.      You have no obligation to speak with us and may decline to be interviewed.

*C.B*      6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*C-B*      7.      You will not benefit by speaking with us.

*C.B*      8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*C.B*      9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*C.B*      10.      If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*C.B*      11.      You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:  _Chamrern Bun_      Date _1/20/16_

Signed:  _C. L_

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge:  Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF CHAMRERN BUN** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Chamrern Bun, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a stocker,I work inStore # 4365 in La Verne, California. I have been working for Big Lots in this store for1 year and 4 months.

2.     I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration.  The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours.  The meal period must be taken <u>before</u> Icomplete 5 hours of work. Sometimes my shifts are long enough for me to get a meal break and, when they are, I usually take my break around the four hour mark.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods.  Additionally, my meal periods are uninterrupted and free from work. I do not perform any work on my meal period.

6.      I was trained on the meal period policy when I began working at Big Lots.There was a video on the meal period during my training and I was able to ask any questions I had. At my store, the managers frequently remind us of the meal period policy.

7.      My meal break is written into my store's daily schedulewhich I can access on my online through my phone or at the front of the store. I know when to take my meal breaks, and managers also remind associates when meal breaks should be taken.

8.      Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      I have never taken a late meal break and am not aware of any other associate at my store who has taken a late meal break. The managers always remind associates to take their meal breaks on time.

10.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work a longer shift, I am able to take a second rest break. Sometimes I choose not to take a second rest break, but I know that I am able and not taking the second break is entirely my own choice.

11.      I was trained on the rest break policy when I began working at Big Lots. Managers frequently remind associates of the rest break policy.

12.      My rest breaks are written into the store's daily schedule at the front of the store. They are easily accessible and everyone knows when to take their rest breaks. Managers will also remind associates to take their rest breaks.

13.      During my employment at Big Lots, I have never been denied a full rest break, and I have never seen or heard of another associate being unable to take a full rest break.

14.      I do not bring a bag to work and therefore have never had my bag check. I have not noticed anyone else having a bag checked either.

15.      I have only worked the closing shift once or twice and not anytime recently. When I worked the closing shift, I remained on the clock until all my work was finished. After I clocked out, the manager set the alarm and then we left the store. The entire process from when I clocked out to when I left the store took less than a minute.

16.     Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment. During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

17.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift. I was once asked to work a split shift, but it was entirely voluntary. After I worked a shorter shift earlier in the day, I received a call to see if I was able to come back in. I was not able to do so because of obligations at my other job and I declined. There were no repercussions for me declining to work the split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


_____
Chamrern Bun


Executed this 20th day of January, 2016.


4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u>" case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: Rachel Camacho          Date 1/20/16

Signed: _____

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF RACHEL CAMACHO** |

I, Rachel Camacho, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

    1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a DTS Lead. I work in Store # 4025 in Arcadia, California. I have been working in this store for Big Lots for 10 years.

    2.    I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I usually take my meal break at the four or four and one-half-hour mark. We are also required to take a second 30-minute meal period for shifts of more than 10 hours in a day, though shifts are rarely, if ever, scheduled long enough that two meal periods are required. I typically work seven and one-half hour shifts. I have never worked long enough to take a second meal break.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. I have tried to clock in and the computer prevented me from doing so. Additionally, my meal periods are uninterrupted and free from work. I have never worked during the time I am supposed to be taking my meal break. I am able to leave the store if I choose to do so, or I can eat lunch in the back. Sometimes I leave the store for my meal break. There are plenty of seats available in the break room for use during meal and rest breaks if I choose to stay here.

6.      New hires are trained on the meal policy when they begin working here. Managers at my store also regularly remind associates of the meal break policy.

2

7.      When I work the openings my meal periods are always at the same time so I know when to take them. Associates can look at the schedule that is written at the front of the store to determine when their meal period should be taken. Sometimes managers will remind associates to take your meal period and sometimes they remember on their on their own. In my ten years here, I have only taken a late meal period two or three times. I was written up and received the one hour premium pay when this happened.

8.      Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  If I work a longer shift, I will take a second rest break in the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

10.     New hires are trained on the rest break policy at my store and managers frequently remind associates of the rest break policy.

11.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken.

12.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break. I have never heard another associate complain about not being able to take a full rest break.

3

13.     Employees who bring bags at my store are required to have them checked. How long the bag check takes varies depending on how many bags the person brings or the type of bag the person has. They take on average only 30 seconds per person. Sometimes it takes only seconds. It never takes longer than two minutes. Maybe of half of the people at the store bring the bags.

14.     I work the closing shift maybe once or twice a week. The associate and the manager clock out together and I check the associates bags, set the alarm and walk out together. The entire process takes about two minutes from when we clock out to when we leave the store. The alarm is right next to the front door.

15.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

16.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

17.     During my employment with Big Lots, I have never been scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Rachel Camacho


Executed this 20th day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*IC*      1.     We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*IC*      2.     We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*IC*      3.     The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*IC*      4.     As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*IC*      5.     You have no obligation to speak with us and may decline to be interviewed.

*IC*      6.     Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*IC*      7.     You will not benefit by speaking with us.

*IC*      8.     If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*IC*      9.     If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*IC*      10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*IC*      11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Ismael Camarena_      Date _1, 20, 16_

Signed: _Ismael_

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF ISMAEL CAMARENA** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Ismael Camarena, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate. I work in Store # 4025 in Arcadia, California. I have worked for Big Lots in this store for 27 years.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration.  The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours.  The meal period must be taken <u>before</u>  I complete 5 hours of work. I usually take it shortly after four hours. Sometimes I work shifts under five hours and do not take a meal break. Sometimes I work shifts over five hours and do take a meal break.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods.  The computer prevents us from clocking in early.  Additionally, my meal periods are uninterrupted and free from work. I never perform work during my meal break. I know I can leave the store during my meal break if I want to, but I usually choose to stay in the break room. There are plenty of seats available in the break room for use during meal and rest breaks.

6.      I got trained on the meal break policy when it was implemented. Managers at my store frequently remind associates of the meal break policy and stress the importance of taking our meal breaks before five hours worked.

7.      My meal break is written into my store's daily schedule that is kept at the front desk so everyone can see it.  Most of the time people know the time people know when to take their meal breaks without being reminded, but managers will check with people to make sure they take their meal breaks if they need to. Over my twenty seven years working here, I have

2

only taken a meal break late once. This occurred years ago, but I do not remember exactly when. I was reprimanded and received the extra hour of premium pay.

8.      Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked. Generally, I am scheduled to take breaks at around the 2 hour mark, but when I take it varies by a few minutes depending on when other associates take their breaks. Further, if I work more than 6 hours in a day, I will take a second rest break in the second half of the shift.

10.      During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break. I always take my rest breaks. If I work a long enough shift I take my second rest break.

11.      I was trained on the rest break policy when it was implemented and managers also regularly remind everyone of the rest break policy.

12.      Like meal breaks, my rest breaks are written into the store's daily schedule that is available at the front of the store.

13.      During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

14.      At my store, employees who bring bags are required to have them checked before they leave. I bring a lunch bag and get it checked when I leave. The bag checks only take three

or four seconds. I simply show the open bag to someone at the front of the store on my way out.

The person checking the bag does not touch the bag or anything in it.

15.     I clock out after the bag check before I leave the store.

16.     Big Lots' policy prohibits associates from working off-the-clock. Associates at

my store are frequently reminded by managers not to work off the clock. I have never worked off

the clock and am not aware of any associate who has worked off the clock.

17.     During my employment with Big Lots, I have never been scheduled for a split

shift.

I declare under penalty of perjury under the laws of the State of California and the United

States of America that the foregoing is true and correct.


Ismael Camarena


Executed this 20th day of January, 2016.


4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.    We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.    We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.    The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.    As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.    You have no obligation to speak with us and may decline to be interviewed.

6.    Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.    You will not benefit by speaking with us.

8.    If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.    If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.    If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.    You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:    *Carla Casillas*    Date *1-19-2016*

Signed:    *Carla Casillas*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF**<br>**CARLA CASILLAS** |

I, Carla Casillas, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate. I work in Store # 4246 in Whittier, California. I started working at Big Lots in the middle of November 2015.

2.    I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. They informed me that I was not required to speak with them and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions they asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots</u>

1

<u>Stores, Inc. et al.,</u> Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District

Court for the Central District of California.

      3.     It is my decision to submit this Declaration and I am under no obligation to do so.

All statements below are provided upon careful reflection and consideration.  The statements

made in this Declaration are truthful, accurate and voluntary.

      4.     At all times during my employment, Big Lots has had and enforced a meal period

policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid

meal period for shifts over 5 hours.  The meal period must be taken <u>before</u> I complete 5 hours of

work. I usually take it around the 4th hour.  Sometimes I work shifts long enough to get a meal

break and sometimes I do not. I never work shifts long enough to get a second meal break.

      5.     In addition, we are required to clock out during meal periods and cannot clock in

early from meal periods.  I have tried to clock in early from meal breaks and the computer has

prevented me from doing so.  I take my meal breaks outside the store and do not do any work

when I am on my meal break.

      6.     I was trained on the meal period policy when I began working at Big Lots.

Managers also remind me of them break policy regularly. At my store, managers stress the

importance of taking meal breaks on time.

      7.     My meal break is written into my store's daily schedule that is available at the

front of the store. I use the written schedule to know when my break is, managers will come up

to me to remind me to take my meal break if I ever do not remember.

      8.     Throughout my employment with Big Lots, I have never been denied a meal

break. I once took a meal break late when I first started working and received one hour of

premium pay. I was also reminded by the manager not to take late meal breaks.

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. I always take my rest breaks and remain on the clock. I go outside for my rest breaks and do not do any work during my rest break. My rest breaks are also uninterrupted.

10.     I was trained on the rest break policy when I began working at Big Lots. Managers at my store stress the importance of taking our rest breaks and regularly remind us of the policy.

11.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest breaks should be taken. I generally know when to take my rest break, but managers will also remind me to take my rest breaks.

12.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

13.     When associates bring a bag to work, they are required to have them checked. Not everyone brings a bag to work. I do not bring a bag to work. I leave my bag in my car, so I do not have bag check.

14.     One time, I worked the closing shift with the manager. At closing, both the manager and I clocked out, the manager set the alarm, and then we walked out. The entire process took about a minute.

3

15.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

16.     During my time at Big Lots, I have never worked off-the-clock and I have never been asked to work off-the-clock by a manager.

17.     During my employment with Big Lots, I have never been scheduled for or worked a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Carla Casillas

Executed this 19th day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*IC*        1.        We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*Ie*        2.        We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*Ie*        3.        The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*Ie*        4.        As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*IC*        5.        You have no obligation to speak with us and may decline to be interviewed.

*Ie*        6.        Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*Ie*        7.        You will not benefit by speaking with us.

*Ie*        8.        If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*Ie*        9.        If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*Ie*        10.        If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*Ie*        11.        You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   _Irene Cesena_        Date _2/22/16_

Signed:   _Irene Cesen_

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>         Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br><br>**DECLARATION OF**<br>**IRENE CESENA** |

I, Irene Cesena, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier. I work in Store # 4340 in San Francisco, California and have for almost five years.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

1

3.      It is my decision to submit this Declaration and I am under no obligation to do so.
All statements below are provided upon careful reflection and consideration.  The statements
made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period
policy.  I was trained on the meal period policy when I began working at Big Lots. A manger
discussed the policy with me when I started working.

5.      Big Lots' meal period policy requires associates, such as me, to take a 30-minute
unpaid meal period for shifts over 5 hours.  The meal period must be taken <u>before</u>  I complete 5
hours of work (generally after the 3rd hour of work, but before the 5th hour of work). It varies
how often I work shifts five or more hours long, but sometimes I do. When I work long enough
to take a lunch break, I take after working about 4 hours.

6.      In addition, we are required to clock out during meal periods and cannot clock in
early from meal periods. The computer prevents us from clocking in early from meal breaks.
This has happened to me a few times.    We are able to leave the store during our meal breaks. I
usually go upstairs to the break room but sometimes I will leave. When I take a break in the
store, there are plenty of seats in the break room. Additionally, my meal periods are
uninterrupted and free from work.  I have never worked during the time I am supposed to be
taking my meal break and am not aware of anyone who has.

7.      Our meal periods are written on a schedule at the front of the store that is
available for everyone to see. The person working the customer service desk will remind
everyone when it is time to take a meal break. When we go on our meal break, we will cross out
the time on the schedule.

2

8.     Throughout my employment with Big Lots, I have never been unable to take a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.     I have never taken a meal break late and am not aware of anyone who has. I am aware that it is a violation of company policy to take a meal break after 5 hours.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy.  I was trained on the rest break policy when I started working at Big Lots. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2-hour mark. I do not typically work shifts longer than 6 hours. When I do work a shift long enough to get a second rest break, sometimes I choose to skip it. That is my choice, however, and I could take it if I wanted to.

11.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest breaks should be taken. The person working the customer service desk will also remind everyone when to take their rest breaks.

12.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being denied a full rest break.

13.     We do not do bag checks at this store. We stopped doing bag checks three and a half years ago.

14.     Once in great while, I work the closing shift. It's usually one associate and a manager.  When it's time to leave, the manager will announce that it's time to go and we will go to the front of the store and clock out. By the time we clock out, the manager is already at the

3

front of the store and will let us out. We leave the store before the manager sets the alarm and leaves.

15.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

16.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

17.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Irene Cesena

Executed this 22nd day of February 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.     We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.     We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.     The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.     As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.     You have no obligation to speak with us and may decline to be interviewed.

6.     Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.     You will not benefit by speaking with us.

8.     If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.     If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:    *Linda Delgado*          Date    *1-20-16*

Signed:    *Linda Delgado*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br>**DECLARATION OF**<br>**LINDA DELGADO** |

I, Linda Delgado, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a floor associate and a stocker. I work in Store # 4042 in Upland, California. Prior to this, I have been working for Big Lots for 22 years. I have been in the Upland store 8 years. Prior to this, I was in the Pomona for store for 11 years and the Rancho store for 2 and one-half years.

2.    I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him/her and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions s/he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      Big Lots has and enforces a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of work. I usually work six hour shifts or longer so I take meal periods.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. I have accidentally tried to clock in early, but the computer has stopped me. I usually eat in the store, but I know I could leave if I wanted to. Managers at my store frequently remind associates of the meal period policy.

6.      Additionally, my meal periods are uninterrupted and free from work. I do not work when I am supposed to be on my meal period. I do not know of anyone who works during their meal period.

7.      Throughout my employment with Big Lots, I have never missed a meal break or taken one late. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break. I have also not heard of an associate taking a meal period late.

8.      Big Lots also enforces a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. I typically take the first rest break after working about 2 hours.

2

If I work longer shifts, I get a second rest break. Managers remind associates of the rest break policy.

9.      During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break. During my rest breaks, I remain on the clock and do not perform any work. My rest breaks are uninterrupted.

10.      At my store, employees who bring bags are required to have them checked before they leave. Bag checks are very quick and are performed at the front of the store. The person conducting the bag check just looks in the bag as the person is leaving.

11.      Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment. During my time at Big Lots, I have never worked off-the-clock, and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


_Linda Delgado_
Linda Delgado


Executed this 20th day of January, 2016.


3

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "Hubbs case").

2.      We are the attorneys who represent Big Lots in the Hubbs case.

3.      The Hubbs case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the Hubbs case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the Hubbs case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the Hubbs case for purposes of gathering evidence to support Big Lots defense.

Name:   _William Dix_____          Date _2/24/16_____

Signed: _____

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF**<br>**WILLIAM DER** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, William Der, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.　　I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an Assistant Team Lead Merchandiser. I work in Store # 4281 in Dublin, California. I have been working here for five years.

2.　　I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.       It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.       At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires employees to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I usually take my meal period after working about 4 hours.

5.       In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are uninterrupted and free from work, and I do not interrupt associates' meal periods. Associates are able to leave the store if they choose to do so, or they can eat lunch in the back. Many associates leave the store during their meal period. There are plenty of seats available in the break room for those that stay during meal and rest breaks.

6.       As manager, there are occasions where I cannot leave the store during my meal period. This happens when there is not another manager or lead available to supervise. When this happens, I am paid the meal period violation premium of one hour of pay. Associates are always able to leave the store during their meal periods.

7.       I was trained on the meal period policy when I began working at Big Lots. I was given a handbook that contained the meal period policy and was able to review it. In addition, I tell associates about the meal period policy and remain familiar with it.

8.      At my store, associates generally know to take their meal breaks around the fourth hour without us reminding them. However, other mangers and I will also remind people to go on their meal break if we need to. I keep track of the schedule so I know when it is time for me to take me meal period. I try to take my lunch around the four-hour mark so I do not even get close to having a violation for taking it late.

9.      Throughout my employment with Big Lots, I have never missed a meal break and am not aware of any associate doing so. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

10.     If an associate were to not take their meal break on time, they automatically receive one hour of premium pay.  Big Lots' payroll system automatically provides a premium payment (one hour of pay) to any associate any time the time records do not show that a required meal break was taken, if the required meal break was less than 30 minutes, or if the required meal break was taken late.

11.     If an associate were to not take a meal break, take one that is less than 30 minutes, or take a meal break late, the associate would get counseling. I am not aware of any associate who has had a meal violation while I was manager.

12.     At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires us to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in

3

the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

13.     I was trained on the rest break policy when I began working at Big Lots. I frequently remind associates of the rest break policy and stay familiar with it myself.

14.     Employees at my store generally know when to take their rest breaks on their own, and they will come up to me to tell me that they are going on break. If they did not approach me, I would find them to tell them that they need to take their break. I keep track of the schedule and know when it is time for my breaks and will tell the person working at the customer service station that I am going on break.

15.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of an associate being unable to take a full rest break.

16.     At my store, every employee who brings  a bag or makes purchase is required to have their bag checked. Associates are not required to bring bags, purses, or similar packages to work, and some do not bring any bags to work.

17.     Bag checks are extremely brief. They last only a few seconds. The bag checks take place at the front of the store, usually at the customer service station. The person having their bag checked simply opens their bag when they are leaving the store so that the person performing the bag check can see in. The person conducting the bag check does not touch the bag or anything inside of it.

18.     I often work the closing shift at the store. When it is almost time to go home, I will make an announcement and people will come to front of the store. Many people often know to come to front of the store on their own. When they get to the front of the store all the associates will clock out and, if I am done with my work, I will clock out too. I then do bag

4

checks as the associates are leaving the store. The entire process between when we clock out and we leave the store takes less than minute.

19.     When I am not finished with my work and it is time for associates to leave, I will not clock out with the associates.  I will remain on the clock, go to the office and do the deposits, set the alarm, and turn off the lights. I will then go to the back of the store and make sure the alarm is set. Then I will go up to the front of the store and clock out. After I clock out I will make sure the alarm is armed and leave. The entire process between when I clock out and when I leave is maybe ten seconds.

20.     Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment.

21.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock and have never asked an associate to work off-the-clock.

22.     If I saw someone working off the clock, I would ask that person to leave the store. Anyone who performed work of the clock would be disciplined.

23.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift. If another associate calls off late, I will ask another associate if he or she can cover and it is entirely voluntary. There is no penalty if the associate declines to work the split shift.

5

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

William Der

Executed this 24th day of February 2016.

6

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u>" case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Priscilla Diaz_        Date _1/18/16_

Signed: _____

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

VIOLA HUBBS, BRANDON COLEMAN,
TAMIKA WILLIAMS, individually, and on
behalf of other members of the general public
similarly situated,

        Plaintiffs,

v.

BIG LOTS STORES, INC., an Ohio
corporation; PNS STORES, INC., an Ohio
corporation; and DOES 1 through 10,
inclusive,

        Defendants.

Case No. 2:15-cv-01601JAK(ASx)
Judge: Hon. John A. Kronstadt

**DECLARATION OF
PRICSCILLA DIAZ**

I, Priscilla Diaz, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate. I work in Store # 4026 in Santa Ana, California. I have been employed by Big Lots in this store since September 2014.

2.      I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. They informed me that I was not required to speak with them and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions s/he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots

1

Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.    It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.    At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of work.

5.    In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are uninterrupted and free from work. I am able to leave the store if I choose to do so, or I can eat lunch in the back. I have never worked during the time I am supposed to be taking my meal break.

6.    I was trained on the meal period policy during the training I received when I began working at Big Lots. I am frequently reminded of the meal break policy by the managers at my store.

7.    Meal breaks are written into my store's daily schedule. A print out of the schedule is made available to associates they can see and determine when their meal period should be taken.

8.    I typically work four hour shifts, so I do not take a meal break. When I work a longer shift, I have always taken a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work

2

through or shorten a meal break. I am able to leave the store during my meal break, though I typically bring my lunch and eat in the break room.

9.      It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay. I have never failed to take a meal break on time and thus have not received thee premium pay or been counseled.

10.      At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.      I was trained on the rest break policy during the training I received when I began working at Big Lots. I am reminded of the rest break policy by the managers at my store.

12.      Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken.   Associates are usually proactive about taking rest breaks and know when their breaks should be taken. I will notify a manager when it is time for me to take my rest break.

13.      During my employment at Big Lots, I have never been denied a full rest break. I also have never seen or heard of another associate being unable to take a full rest break.

14.      At my store, those who bring bags are required to have them checked when they leave the store. Bag checks can be performed by whoever is at the front of the store. Most

3

associates at my store do not bring bags, and therefore have no bag to be checked. I often bring a lunch bag that needs to be checked when I leave.

15.     The bag checks are extremely brief. I simply walk by whoever is performing the bag check, pause while they look in, and continue walking. The person conducting the check does not physically touch the bag or anything in it, nor does anyone ever touch me.  If the bag check occurs at closing, I simply open the bag as I walk by the manger and out of the store.

16.     I occasionally work the closing shift at the store. At closing time, the manager and the associate clock out and the manager goes to set the alarm. The entire process takes only a minute from the time I clock out. Associates are expected to stay on the clock until closing work has been completed and it's time for us to leave.

17.     Big Lots' policy prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment.

18.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

19.     During my employment with Big Lots, I have never been scheduled for or worked a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Priscilla Diaz

.Executed this 18th day of January 2016

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.  We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.  We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.  The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.  As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.  You have no obligation to speak with us and may decline to be interviewed.

6.  Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.  You will not benefit by speaking with us.

8.  If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.  If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.  If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.  You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _____     Date   *1-21-16*

Signed: _____*Don Doolittle*_____

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF** **DON DOORNBOS** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Don Doornbos, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as Assistant Manager. I work in Store # 4316 in Redlands, California. I have been with Big Lots in this store since September 2015.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration.  The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours.  The meal period must be taken <u>before</u> I complete 5 hours of work. My shifts are normally 8 hours, and I always take my meal period.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. Additionally, my meal periods are uninterrupted and free from work. I do not do any work during my meal periods. I know I am able to leave the store during my meal break, but usually choose to stay in the break room. There is plenty of seating in the break room.

6.      I was trained on the meal period policy when I began working at Big Lots. Managers spoke to me about the meal policy during my training. Managers frequently remind associates of the meal period policy at my store.

7.      My meal break is written into my store's daily schedule that is at the front of the store and is available on Empower. Associates are able to see their meal break and typically remember to take them on their own, but managers will also remind associates to take their meal breaks.

8.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

2

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  I am usually scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

10.     I was trained on the rest break policy when I began working at Big Lots. At my store, managers frequently remind associates of the rest break policy.

11.     Like meal breaks, my rest breaks are written into the store's daily schedule that is made available so that I can see and determine when my rest break(s) should be taken. Associates generally remember to take rest breaks on their own, but managers also remind associates to take rest breaks.

12.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

13.     Employees who bring bags are required to have them check. I do not usually bring a bag, and most people at my store do not bring a bag. I perform bag checks on other employees. They typically take 10-15 seconds at most. They are performed at the register near the front door.

14.     Three nights a week I work the closing shift. Usually there are just two of us working the closing shift. During the closing shift, bag checks are performed before we clock out. After we clock out, I will set the alarm and the associate and I will leave the store. It only takes about 30 seconds between us clocking out and us actually leaving the store.

3

15.  ==Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment.==

16.  ==During my time at Big Lots, I have never worked off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so. I am aware of person who worked off the clock while I have been working at Big Lots. The person clocked out for lunch and then began working. This person was the terminated. That is the only person I am aware of who has worked off the clock.==

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Don Doornbos

Executed this 21st day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   Guadalupe Aley Duran          Date 1/15/16

Signed: _Guadalupe Aley Duran_

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br>**DECLARATION OF**<br>**LUPE DURAN** |

I, Lupe Duran, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.   I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a stocker and a cashier.  I work in Store # 4026 in Santa Ana, California. I have worked at Big Lots in this store for 28 years.

2.   I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  They informed me that I was not required to speak with them and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions they asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots</u>

1

Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

      3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

      4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work (generally after the 3rd hour of work, but before the 5th hour of work). I am typically not scheduled for works shifts longer than 10 hours.

      5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are uninterrupted and free from work. I typically do not leave the store for my meal break, but I have never been told that I am not allowed to leave the store. There are plenty of seats available in the break room for use during meal and rest breaks. Mangers through the years have made clear to me that I am not allowed to work on my meal breaks. I have never worked during the time I am supposed to be taking my meal break and my meal breaks are uninterrupted.

      6.      I am frequently reminded of the meal break policy by the managers at my store.

      7.      My meal break is written into my store's daily schedule. A print out of the schedule is made available so I can see and determine when my meal period should be taken. If the time for my meal break approaches and I have not taken a meal break, I will notify the manager and ask when I can take my meal break.

2

8.      Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      It is my understanding that associates who do not take their meal break on time automatically receive a penalty payment.  I have always taken my meal breaks so I have never received a penalty payment.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Usually I do not work longer enough shifts to get a second break.

11.     I am frequently reminded of the rest break policy by the managers at my store.

12.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken.

13.     During my employment at Big Lots, I have never been unable to take a full rest break.

14.     Associates, such as me, are not required to bring bags, purses, or similar packages to work, and there are many who do not bring any bags to work. I typically do not bring a bag to work. However, when I do, they will check the bag when I leave. On occasion, I will buy something at the store and the bag for the items I purchase is checked by the cashier. I have seen other employees with bags have their bags checked at the front of the store. The bag checks occur at the front of the store and are either performed by the manager or the cashier.

3

15.     The bag checks are extremely brief. Employees just open the bag for the person conducting the bag check. The person conducting the check does not touch the bag or anything in it. They simply glance in the bag as the employee walks by.

16.     I do not work during store closing very often, maybe a couple of times a month. Typically only one associate and the manager are staffed at closing. The associate and the manager count the money from the register and put in the safe. The associate  clocks out after all the work is finished and goes to the front of the store while the manger sets the alarm. Once the alarm is set, which is done very quickly, the manager and the associate leave together.

17.     Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment. I am frequently reminded by managers not to work off the clock.

18.     During my time at Big Lots, I have never worked off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

19.     During my employment with Big Lots, I have never been scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_Lupe Duran_

Lupe Duran

Executed this 18th day of January, 2016

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.    We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.    We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.    The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.    As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.    You have no obligation to speak with us and may decline to be interviewed.

6.    Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.    You will not benefit by speaking with us.

8.    If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.    If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.   If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.   You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _____     Date _____

Signed: _____

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,

        Plaintiffs,

v.

BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,

        Defendants.

Case No. 2:15-cv-01601JAK(ASx)
Judge: Hon. John A. Kronstadt

**DECLARATION OF MICHELLE FLECK**

I, Michelle Fleck, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an Assistant Team Lead Merch. I work in Store # 4322 in Rancho Cucamonga, California. I have worked for Big Lots for about 23 years. I worked in the Upland for about the first ten years, the other Rancho for approximately another ten years, and then transferred to my current store.

2.    I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

  3.  It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

  4.  Big Lots has and enforces a meal period policy. Big Lots' meal period policy requires associates to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of work. We are also required to take a second 30-minute meal period for shifts of more than 10 hours in a day. I typically work shifts long enough to get one meal break, but I have only worked a shift long enough to take a second meal break a few times.

  5.  In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are uninterrupted and free from work. I never perform work while I am supposed to be taking my meal break. I also know that I am able to leave the store during my meal break. Personally, I will leave the store on some of my meal breaks and choose to stay in the store for others.

  6.  As an assistant manager, I regularly remind associates of the meal period policy. I do that in huddle meetings every once in a while and will also remind people individually. It is also it is written in the book at the front of the store.

  7.  Everyone's meal break is written into the daily schedule that is available at the front of the store. Sometimes associates remember to take their breaks on their own, and sometimes I will remind them.

2

8.     Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.     It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay. Big Lots' payroll system automatically provides a premium payment (one hour of pay) to any associate any time the time records do not show that a required meal break was taken, if the required meal break was less than 30 minutes, or if the required meal break was taken late.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break. If I start a rest break and it is interrupted, I will restart my rest break so that I take a full uninterrupted 15 minute break.

11.     At my store managers also remind associates of the rest break policy and it written in the book at the front of the store.

12.     Rest breaks are also written into the store's daily schedule that is available at the front of the store. Associates often remember to take their rest breaks on their own, but if they do not a manager will remind them.

3

13.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break. I have never heard another associate complain about not being able to take a full rest break.

14.     Everyone who brings a bag at my store is required to have it checked before they leave the store. Less than half of the people at my store bring bags. I usually bring a purse that is checked. Bag checks usually take place the register at the front of the store. Either cashiers or managers can perform bag checks.

15.     Bag checks take only seconds. The person whose bag is being checked simply opens it for the manager or the cashier as they leave the store. If anything in the bag needs to be moved, the person whose bag is being checked will move it. The person checking the bag never touches the bag or anything in it.

16.     People usually clock out before their bag check, but I have never heard someone say that we have to clock out before the bag check.

17.     I work the closing shift about twice a week. During the closing shift, no one else usually has a bag, but I will have my bag checked before we clock out.

18.     When it is time to leave the store during a closing shift, we clock out and then I set the alarm before we leave. I would say it only takes about 30 seconds between when I clock out to when I leave the store.

19.     Big Lots' policy additionally prohibits associates from working off-the-clock. Everyone at Big Lots is trained on this policy and we remind associates not to work off-the-clock.

4

20.    During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Michelle Fleck

Executed this 21st day of January, 2016.

5

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*mg*    1.    We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*mg*    2.    We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*mg*    3.    The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*mg*    4.    As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*mg*    5.    You have no obligation to speak with us and may decline to be interviewed.

*mg*    6.    Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*mg*    7.    You will not benefit by speaking with us.

*mg*    8.    If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*mg*    9.    If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*mg*    10.    If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*mg*    11.    You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _____Marcela Garcia_____    Date _2 - 24 - 76_

Signed: _____Marcela Garcic_____

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF MARCELA GARCIA** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Marcela Garcia, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier, doing customer service, and stocking. I work in Store # 4594 in Dublin, California. I have been working here for 16 sixteen years.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.     It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.     At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work (generally after the 3rd hour of work, but before the 5th hour of work). When I work shifts long enough to get a meal break, I usually take my meal break after 3.5 or 4 hours.

5.     In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Every time I have tried to clock in early, the computer stopped me from doing so. Additionally, my meal periods are uninterrupted and free from work. I let the person at the front of the store know when I am going on my meal break, so they know I am at lunch do not call me. I am able to leave the store if I choose to do so, or I can eat lunch in the back. I usually eat in the break room but sometimes I leave the store on my meal break. There are plenty of seats available in the break room for use during meal and rest breaks. I have never worked during the time I am supposed to be taking my meal break.

6.     I was trained on the meal period policy when I began working at Big Lots. I am frequently reminded of the meal break policy by the managers at my store.

7.     My meal break is written into my store's daily schedule, but I generally don't need to look at it. I know that I take my lunch around 4 hours of working and remember to do so

2

on my own. I am careful to always take it before the fifth hour of working. Sometimes the person working at the front of the store will also announce that it is time for my lunch.

8.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      I cannot remember ever taking a late lunch, but maybe it happened a long time ago. It is my understanding that it is against Big Lots' policy for associates to take lunches after the 5 hours of working. I am also not aware of any other associate taking a late lunch. If associates were to take a late lunch, they would be written up by the manager.

10.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  I usually take my first rest break around two hours. When I work a long enough shift to get a second rest break, I usually do not take it. I know that I could take it if I wanted to, but I generally do not want to. It is my choice not to take the second rest break.

11.      During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

12.      I was trained on the rest break policy when I began working at Big Lots. I am frequently reminded of the rest break policy by the managers at my store. Rest breaks are also written down up front. Sometimes I check the written schedule to see when by rest breaks are, but I sometimes I don. I don't need to.

3

13.     Like meal breaks, my rest breaks are written into the store's daily schedule. I often know when to take my rest breaks without looking at the schedule but sometimes I look at the schedule.

14.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

15.     At my store, employees who bring bags are required to have them checked. The person at the customer service station at the front of the store usually does the bag check. I bring a bag and have it checked when I leave.

16.     I usually clock out before I have my bag checked, but associates are permitted to remain on the clock during the bag check and clock out afterwards. I have seen associates have their bag checked and then clock out.

17.     The bag checks are extremely brief, and last no more than a few seconds. Employees simply open their bag as I am leaving and the person doing the bag check looks inside. The person doing the bag check does not physically touch the bag or anything in it, nor does anyone ever touch me.  I have never had to wait to have my bag checked and I am unaware of any associates ever having to wait to have a bag checked. If the bag check occurs at closing, I simply open the bag as I walk by the manger and out of the store. I have never had to wait in a line to have my bag checked.

18.     I usually work the closing shift about 1 day a week, but some weeks I do not work the closing shift and other weeks I work it as many as 3 times. During the closing shift, when it is time to leave the manager will make an announcement and we will go to the front of the store. The manager is already up front when we get there, and we all clock out together. After we clock out the manager will check out bags as we walk out of the store. After we leave the store, the

4

manager will set the alarm and then we will leave. The entire process between when we check out and when we leave the store takes a minute at most. We do not do any work after we have clocked out before leaving.

19.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment. Managers tell people that they should not work when they are off-the-clock.

20.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

21.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_Marcela Garcia_
Marcela Garcia

Executed this 24th day of February 2016.

5

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u>" case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   Stephanie Garcia          Date   1/21/16

Signed:   Stephanie Garcia

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF**<br>**STEPHANIE GARCIA** |

I, Stephanie Garcia, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as cashier, floor associate, and in customer service. I work in Store # 4316 in Redlands, California. I have been with Big Lots for almost two years.

2.    I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of work. I usually work shifts between 6 and 8 hours and always take my meal break.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. I have tried to clock back I early and the computer has prevented me from doing so. Additionally, my meal periods are uninterrupted and free from work. I do not do any work during my meal periods. Even if I am called during my meal break by someone who does not know I am on break, I will remain on break and not go at that time. I know I am able to leave the store during my meal break. There is plenty of seating in the break room.

6.      I was trained on the meal period policy when I began working at Big Lots. Managers frequently remind associates of the meal period policy at my store.

7.      My meal break is written into my store's daily schedule that is at the front of the store. I typically remember to take my meal breaks on my own, but managers will also remind me to take my meal breaks.

8.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

2

9.    At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. I am usually scheduled to take breaks at around the 2 hour mark. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

10.    I was trained on the rest break policy when I began working at Big Lots. At my store, managers frequently remind associates of the rest break policy.

11.    Like meal breaks, my rest breaks are written into the store's daily schedule that is made available so that I can see and determine when my rest break(s) should be taken. I usually remember to take rest breaks on their own, but managers also remind me to take rest breaks.

12.    During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

13.    Employees who bring bags are required to have them check. I usually bring purse and have it checked. Not everyone at my store brings a bag, and so some people do not have to have anything checked. Bag checks only take a couple of seconds. The person performing the bag check looks in the bag and does not touch the bag or anything in it. They are performed at the register near the front door and can be performed by anyone at the front of the store.

14.    I have worked the closing shift before, but I have not worked one in a few months. When I worked the closing shift, the bag check was performed before we clocked out. After we clocked out, the manager would set the alarm and then we would leave together. It would take only a few minutes between when we clock out and left the store. At least one time, the manager let us out of the store before she set the alarm because our rides were waiting for us. The manager followed us shortly after.

3

15.    Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment.

16.    During my time at Big Lots, I have never worked off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

17.    I worked a split shift only once, but doing so was voluntary and there was no penalty if I declined.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Stephanie Garcia

Executed this 21st day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.     We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.     We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.     The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.     As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.     You have no obligation to speak with us and may decline to be interviewed.

6.     Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.     You will not benefit by speaking with us.

8.     If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.     If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: Yolanda Garcia                          Date 1/19/16

Signed: s/Yolanda Garcia

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF YOLANDA GARCIA** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Yolanda Garcia, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") primarily as a cashier. I work in Store # 4246 in Whittier, California. I have been in this store for16 years working both as a cashier and in recovery.

2.     I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. They informed me that I was not required to speak with him/her and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions they asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots

<u>Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District

Court for the Central District of California.

      3.      It is my decision to submit this Declaration and I am under no obligation to do so.

All statements below are provided upon careful reflection and consideration.  The statements

made in this Declaration are truthful, accurate and voluntary.

      4.      At all times during my employment, Big Lots has had and enforced a meal period

policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid

meal period for shifts over 5 hours.  The meal period must be taken <u>before</u>  I complete 5 hours of

work. I usually take my meal break after 4 hours. My shifts are usually 4 or 5 hours, so

sometimes I work long enough to get a meal break sometimes I do not.

      5.      In addition, we are required to clock out during meal periods and cannot clock in

early from meal periods.  The computer prevents us from clocking in early.  Additionally, my

meal periods are uninterrupted and free from work. I have never worked during the time I am

supposed to be taking my meal break.  I usually stay in the store during the break, but I know

that I can leave if I so choose. There are plenty of seats available in the break room for use

during meal and rest breaks.

      6.      Managers frequently remind us of the meal break policy and stress the importance

of us taking our breaks before the fifth hour of work.

      7.      My meal break is written into my store's daily schedule that is posted at the

Customer Service Desk. Managers will remind us when to take our meal break as well, but I

generally know when my meal break is scheduled.

      8.      Throughout my employment with Big Lots, I have never been denied a meal

break. It is my understanding that associates who do not take their meal break on time

2

automatically receive one hour of premium pay. I have never missed a meal break or taken a late meal break. I am aware that associates can be disciplined for failing to take their meal break on time.

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Managers will frequently remind us of the rest break policy. When I work long enough shifts to have second break, sometimes I take it and sometimes I choose not to.

10.      Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken.

11.      Associates who bring bags or purchase items are required to have their bags checked. I also perform the bag checks on occasion. Not every associate brings a bag to work. In fact, I never bring a bag to work. I therefore do not need to be checked unless I buy something. On occasions where I buy something, I the bag will be checked by someone at the front of the store. Whoever is up front can up perform a bag check. The bag checks take around ten seconds but it varies depending on the bag and how many things are in it.

12.      I do not worked closing shifts now and have not done so in the last three or four years.

13.      Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during

3

==my employment. In the last four or five years, I have not seen or heard of anyone work off the clock at the store.==

14.     During my employment with Big Lots, I have never been scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Yolanda Garcia

Executed this 19th day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

NG      1.      We wish to interview you for purposes of gathering evidence to support the
defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon
Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>,
pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

NG      2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

NG      3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting
claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work,
and split shifts.

NG      4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

NG      5.      You have no obligation to speak with us and may decline to be interviewed.

NG      6.      Your decision about whether or not to speak with us will not result in any form of
retaliation or adverse employment consequences against you.

NG      7.      You will not benefit by speaking with us.

NG      8.      If you agree to speak with us, we want you to tell the truth and answer our
questions as completely as possible based on your own personal knowledge.

NG      9.      If you agree to speak with us, your statements could negatively impact any claim
you might have as a member of the potential class in the <u>Hubbs</u> case.

NG      10.     If at any point during the interview you wish to stop the interview and leave, you
are free to do so and will not suffer any retaliation or adverse employment consequences as a result of
your decision.

NG      11.     You are free to consult with an attorney or anyone else of your choosing before
you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed
by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:        Noor Chonam          Date  7/24/15

Signed:

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF NOOR GHANEM** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Noor Ghanem, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a floor associate and doing stocking.   I work in Store # 4468 in Hayward, California. I have been working here for almost 6 months.

2.     I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of
California.

     3.     It is my decision to submit this Declaration and I am under no obligation to do so.
All statements below are provided upon careful reflection and consideration. The statements
made in this Declaration are truthful, accurate and voluntary.

     4.     When I started working at Big Lots, I was provided with a training handbook that
included the meal break policy. Managers also talk to us about the meal break policy to remind
us that we have to take our meal breaks. I take meal breaks every four hours. My meal break is
written into my store's daily schedule, but the managers or leads always tell us when to take
lunch.

     5.     I have never missed a meal break that I was supposed to take. I am not aware of
anyone who has missed a meal break that I have supposed to take. I have also not taken a meal
break late because managers or leads always tell me to take them.

     6.     In addition, we are required to clock out during meal periods and cannot clock in
early from meal periods. The computer prevents us from clocking in early. Every time I have
tried to clock in early, the computer has stopped me.

     7.     Additionally, my meal periods are uninterrupted and free from work. I have
never worked during the time I am supposed to be taking my meal break. I am able to leave the
store if I choose to do so, or I can eat lunch in the back. I usually eat lunch in the store but
sometimes I leave during my meal break. There are plenty of seats available in the break room
for use during meal and rest breaks.

8.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      I am aware that it is against Big Lots' policy to miss meal periods or take them late. If a person were to miss meal period or take one late, they would get a violation. The managers would write them up and talk to them about the incident. This has not happened to me.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.     During the night shift, the managers tell us when to take our break. During the day, the managers or leads will tell us to take your break if we are working at the front of the store. But we are working on the store floor, we take our breaks on our own. I know when to take my breaks because I was told about the rest break policy and managers remind us that it is important to take our breaks. In addition, the rest break policy was in the handbook I received when I started. Managers will also remind us of the rest break policy.

12.     During my employment at Big Lots, I have never been unable to take a full rest break.  I have never seen or heard of another associate being unable to take a full rest break.

13.     I do not know if we do bag checks at my store. I have not seen them happen. I do not bring a bag, and most people at my store do not bring bags.

3

14.     I do not work the closing shift. The latest I work is until 9:00 p.m.

15.     Big Lots' policy additionally prohibits associates from working off-the-clock. I am aware that off-the-clock work is not allowed and other associates at my store seem to know this too.

16.     I do not perform work off-the-clock, and I am unaware of other associates working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

17.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


_____
Noor Ghanem


Executed this 24th day of February, 2016.


4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: Brenda Harris                          Date 2-25-16

Signed: _____

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF**<br>**BRENDA HARRIS** |

I, Brenda Harris, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier and floor associate. I have worked for Big Lots for about 6 months. I work in Store # 4457 in Tracey, California.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of
California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so.
All statements below are provided upon careful reflection and consideration. The statements
made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period
policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid
meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of
work. I usually work 4-hour or 6-hour hour shifts, but sometimes I work 8-hour shifts.

5.      In addition, we are required to clock out during meal periods and cannot clock in
early from meal periods. The computer prevents us from clocking in early. Additionally, my
meal periods are uninterrupted and free from work. I have never worked during the time I am
supposed to be taking my meal break. I usually stay in the store during my meal breaks, but I am
able to leave if I want to and sometimes I do. When I stay in the break room, there are plenty of
seats available in the break room for use during meal and rest breaks.

6.      I was trained on the meal period policy when I began working at Big Lots. The
managers talked to us about the policy. Managers will also remind associates about the meal
period policy.

7.      My meal break is written into my store's daily schedule that is available for me to
look at. The manager on duty will also remind people when to take the break. Managers or a
cashier will announce the breaks over the intercom.

8.     Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.     I am aware that associates can be disciplined for failing to take their meal break on time.  Managers mentioned that associates can be written up for taking meal periods late.

10.    At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.    I was trained on the rest break policy when I began working at Big Lots. The managers spoke to us about the policy during training. Managers also remind associates about the rest break policy.

12.    Like meal breaks, my rest breaks are written into the store's daily schedule that is available for me to see. Managers will also remind associates when it is time to take their rest breaks and will announce rest breaks over the intercom.

13.    During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

14.    At my store, people who bring bags are required to have them checked when they leave. I received training on the bag check policy when I was initially hired. The cashier typically performs the bag check, but sometimes it is performed by a manager. I do not usually

3

bring a bag, but when I worked longer shifts around the holidays I brought a bag that I would have checked.. Most people at my store do not bring bags.

15.     If employees wait at all for bag check, it is very short amount of time. Even if there is a line of customers at the cash register, the cashier can perform the bag check while helping customers. For example, the cashier can perform the bag check while a customer is swiping their credit card. The bag checks themselves are very quick. The person whose bag is being checked just opens up the bag so that the cashier can see in. When I perform bag checks, I do not touch the bag or anything in it. All in all, the bag check takes only a few seconds. I am unaware of anyone complaining about how long a bag check takes.

16.     I work the closing shift once or twice a week. Usually it's just one associate and one manager working the closing shift, but sometimes there are more people. When it is time to leave, the manager will usually call me to the front of the store. When I get to the front of the store the manager is usually already up there. We will then clock out together and perform a bag check if one is necessary. The manager will then set the alarm and we will leave. The entire process between when we clock out to when we actually leave the store takes less than minute.

17.     Big Lots' policy additionally prohibits associates from working off-the-clock. Everyone at my store seems to know not to work off the clock. During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

4

18.    During my employment with Big Lots, I have never been scheduled for a split

shift. I am also unaware of any associates ever being scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United

States of America that the foregoing is true and correct.

Brenda Harris

Executed this 25th day of February 2016.

5

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u>" case).

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

        I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   Whitney Jackson                    Date 2/25/16

Signed: _____

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF**<br>**WHITNEY JACKSON** |

I, Whitney Jackson, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate in stocking. I work in Store # 4594 in Livermore, California. I have worked here for about five months.

2.     I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I normally work 4.5 to 7.5 hour shifts.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are generally uninterrupted and free from work. I am able to leave the store during my meal break if I choose to do so, or I can eat lunch in the back. When I eat lunch in the break room, there are plenty of seats available.

6.      I was trained on the meal period policy when I began working at Big Lots. Managers discussed the policy with me during my training. I am also reminded of the meal break policy by the managers at my store.

7.      My meal break is written into my store's daily schedule in Empower. I usually also talk to a manager to help me keep track of when my I need to take my meal breaks.

8.      Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay and can receive counseling.  On one occasion, I took a meal break late.  The managers talked to me about it and instructed me not to do that again. I received the extra hour of pay.

10.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.

11.      I was trained on the rest break policy when I began working at Big Lots. I am also reminded of the rest break policy by the managers at my store.

12.      During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

13.      At my store, we often do bag checks for employees who bring bags. I received training on the bag check policy when I was initially hired. They showed me a video.

14.      I do not usually bring bag, but sometimes I do. If I bring a bag, I will have it checked if I brought it out onto the store floor. However, if I did not bring it out onto the floor I often won't have it checked. If I buy something, I will also have that bag checked.

15.      Bag checks are done by anyone at the front of the store. I have never had to wait to have a bag checked. On the occasions that I have my bag checked they take maybe two seconds.  I simply open my bag as I am leaving so that the person doing the bag check can glance in. Bag checks only take about 2 seconds.

16.      I typically clock out before having my bag checked, but no one has ever told me that I have to clock out before my bag check.

3

17.     I do not work the closing shift at my store.

18.     Big Lots' policy additionally prohibits associates from working off-the-clock.
Some managers at my store remind people not to work off the clock. If I ever performed work
while I was not clocked in, I would tell a manager to have them correct my time. Some managers
to it right away, while other managers will do it later or I will ask a different manager to correct
the time. I am not aware of any manager asking an associate to work off-the-clock.


I declare under penalty of perjury under the laws of the State of California and the United
States of America that the foregoing is true and correct.


                                        _____
                                        Whitney Jackson


Executed this 25th day of February 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Kathleen J. Kennedy_        Date _1/21/2016_

Signed: _[signature]_

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF** **KATHLEEN KENNEDY** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Kathleen Kennedy, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1. I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a DTS Lead. I work in Store # 4322 in Rancho Cucamonga, California. I have been with Big Lots in this store for a little over a month.

2. I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of work. My shifts are normally between 6 and 8 hours, and I always take my meal period.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. Additionally, my meal periods are uninterrupted and free from work. I do not do any work during my meal periods. I am able to leave the store during my meal period and usually do so. When I do not leave, it is usually because I am shopping. Managers remind me not to do anything that I would not do as a customer when I am shopping during a break.

6.      I was trained on the meal period policy when I began working at Big Lots. Managers spoke to me about the meal policy during my training. Managers frequently remind associates of the meal period policy at my store.

7.      My meal break is written into my store's daily schedule that is at the front of the store. It is available for any employee to look at. Associates generally know when to take their meal breaks on their own, but Managers will also remind associates to take their meal breaks.

8.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break. I have never

2

heard an associate complain about missing a meal break. It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay.

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. I am usually scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

10.     I was trained on the rest break policy when I began working at Big Lots. Managers told my when I started and it is written on the book at the front of the store. I am frequently reminded of the rest break policy by the managers at my store.

11.     Like meal breaks, my rest breaks are written into the store's daily schedule that is made available so that I can see and determine when my rest break(s) should be taken. I generally remember to take my rest breaks on my own, but managers will also remind associates to take their rest breaks.

12.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break. I have never heard another associate complain about not being able to take a full rest break.

13.     I bring a bag but it is not always checked. Most of the people I work with do not bring bags. In particular, the younger people who work here don't bring bags and the women who work in the morning do not bring bags.

3

14.     When I do have my bag checked, it occurs at the front the store at the first register. If there is no manager at the front of the store, the cashier will check the bag so we are not required to wait for a manager. The bag checks are extremely brief. I have never had to wait for a bag check. We clock out at the register so the bag check can occur while we are clocking out.

15.     Once a week I work the closing shift. Usually there are just two of us working the closing shift. The last thing we do is count the money and put the money in the safe. We set the alarm by the safe. Then we go clock out, set the alarm by the door, and leave the store. The entire process from when we clock out to when we are out of the store takes at most two minutes, probably less.

16.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment. One time you had to bring keys because a manager had locked her keys in the office. An hour was added to my pay for that work.

17.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Kathleen Kennedy

Executed this 21st day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*EL*     1.     We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*EL*     2.     We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*EL*     3.     The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*EL*     4.     As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*EL*     5.     You have no obligation to speak with us and may decline to be interviewed.

*EL*     6.     Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*EL*     7.     You will not benefit by speaking with us.

*EL*     8.     If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*EL*     9.     If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*EL*     10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*EL*     11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the *Hubbs* case for purposes of gathering evidence to support Big Lots defense.

Name:     *Brika Lara*       Date *2/22/16*

Signed:     *[signature]*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br>**DECLARATION OF ERIKA LARA** |

I, Erika Lara, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate and have been working there for a little over one month. My primary responsibility is being a cashier. I also work in the furniture department and do stocking. I work in Store # 4271 in Campbell, California.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration.  The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours.  The meal period must be taken <u>before</u>  I complete 5 hours of work (generally after the 3rd hour of work, but before the 5th hour of work). I usually work four hour shifts, but once a week a work a shift long enough to have a meal break. When I work a shift long enough to have a meal break, I usually take it after working four hours.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods.  One time, I tried to clock in before the 30 minute break was finished, but the computer stopped me. Additionally, my meal periods are uninterrupted and I do not perform any work when I am on my meal break. I am able to leave the store if I choose to do so, or I can eat lunch in the back. Sometimes I leave the store for my break and sometimes I stay in the break room. When I stay in the break room, there are plenty of seats available.

6.      I was trained on the meal period policy when I began working at Big Lots.  A manager spoke to me about the policy during my training and showed me the book where the schedule is written every day. A print out of the schedule is made available to associates so I can see and determine when my meal period should be taken.  Additionally, the employee working at the customer service station will remind associates when it is time to take a meal break.

7.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

8.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break,

9.      I was trained on the rest break policy when I began working at Big Lots. Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken. The employee working at the customer service station will also remind associates when it is time for their rest breaks.

10.      During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

11.      At my store, all employees who bring bags are required to have the bag check. I , however, do not usually bring a bag and do not have anything checked. Associates, such as me, are not required to bring bags, purses, or similar packages to work, and there are many who do not bring any bags to work.  When I watch other people have their bags checked, it only takes a few seconds. Whoever is performing the bag check simply looks in the bag as the person is

leaving the store. Additionally, the person checking the bag does not touch the bag or anything inside of it. People do not have to wait to have their bags checked.

12.     I have worked the closing shift twice since I have been working at Big Lots. When it was time for everyone to leave the store, the manager made an announcement for us all to go to the front of the store. The manager was already at the front of the store when she called us and when we clocked out. There were no bag checks when I worked the closing shift.  The manager set the alarm and then we all walked out together. The entire process between when we clocked out and left the store was very short.

13.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

14.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____
Erika Lara

Executed this 22nd day of February 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx),</u> pending in the United States District Court for the Central District of California (the "<u>Hubbs</u>" case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   _America López_          Date _Feb 25 2016_

Signed: _America Lopz_

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:15-cv-01601JAK(ASx) <br> Judge: Hon. John A. Kronstadt <br><br><br> **DECLARATION OF AMERICA LOPEZ** |

I, America Lopez, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.  I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier and in customer service. I work in Store # 4594 in Livermore, California. I have been working here for three years.

2.  I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.     It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.     At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I usually work either 4-hour or 8-hour shifts. Right now I work more 4-hour shifts than 8-hour shifts. When I work a shift long enough to get a meal break, I typically take it after working for about 4 hours.

5.     In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are uninterrupted and free from work. I am able to leave the store if I choose to do so, or I can eat lunch in the back. I typically take my meal break in the break room, but sometimes I leave. Most associates at my store leave for their meal breaks. When I stay in the break room, there are plenty of seats available.

6.     I was trained on the meal period policy when I began working at Big Lots. I remember my managers telling me about the meal break policy several times.

7.     My meal break is written into my store's daily schedule in Empower. For the most, part people know when to take their meal breaks on their own, but managers will also remind people to take meal breaks if needed. When I work at the front of the store, I will also remind other cashiers to take their meal breaks.

2

8.      Throughout my employment with Big Lots, I have never missed a meal break. I am not aware of any associate missing a meal break and have never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      I have never taken a meal break late, and am not aware of any other associates who have taken a meal break late. I am aware that associates can be disciplined for failing to take their meal break on time.  If an associate were to take a meal break late, a manager would likely just give them a warning the first time, and then give them a write up if it ever happened again.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.     I do not specifically remember whether or not I was trained on the rest break policy when I started, but I have seen managers tell more recent hires about the rest break policy when they started working.

12.     Managers also inform new associates when they should take their breaks. Associates in general know when to take their breaks on their own and will tell either a manager or the person working at the customer service station when they are going on their break. I often work at the customer service station, so people will tell me when they are going on their break so we do not call for them while they are on break. As far as I know, everyone takes their breaks.

13.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

14.     At my store, employees who bring bags typically have them checked before they leave. I bring a bag that I have checked before I leave. Most women at the store have purses that they have checked, but most men do not have bags and therefore have nothing to be checked. The bag checks occur at the front register and are performed by one of the cashiers or a manager.

15.     A typical bag check is very quick, lasting maybe one second. The person whose bag is being checked will simply open the bag as the person doing the bag check glances in.

16.     People tend to do their bag checks after they have clocked out on their way out of the store, but no one has said that we have to clock out before having our bags checked. During the closing shift, bag checks are performed before we clock out.

17.     Sometimes I work the closing shift. How often I work the closing shift varies from week to week. Some weeks I work three closing shifts and some weeks I do not close at all. When I close there is typically only one associate and one manager working. When it is time to leave around 10:00 p.m., the manager will make an announcement to come to the front of the store. When I get to the front of the store, the manager is already up there. We will clock out together and I will go to the area by the front door while the manager sets the alarm. Then we will leave. The entire process between when I clock out to when I leave the store takes no more than three seconds.

18.     Big Lots' policy additionally prohibits associates from working off-the-clock. Managers remind people not to work off-the-clock. If they see someone in the store after they have clocked out, they will tell them to go home unless they are shopping.

4

19.    During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so..

20.    During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

America Lopez

Executed this 25th day of February, 2016.

5

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

VIOLA HUBBS, BRANDON COLEMAN,
TAMIKA WILLIAMS, individually, and on
behalf of other members of the general public
similarly situated,

        Plaintiffs,

v.

BIG LOTS STORES, INC., an Ohio
corporation; PNS STORES, INC., an Ohio
corporation; and DOES 1 through 10,
inclusive,

        Defendants.

Case No. 2:15-cv-01601JAK(ASx)
Judge: Hon. John A. Kronstadt

**DECLARATION OF**
**MARIO MERCADO**

---

I, Mario Mercado, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier and merchandizer. I work in Store # 1410 in Lakewood, California. Prior to this, I worked at the store in Sorretos for ten years and then took nine months away from the company. I have been at Lakewood for three months.

2.     I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. They informed me that I was not required to speak with them and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions s/he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots</u>

1

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.      If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.      You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:      _MARIO   MERCADO_      Date _1 - 19 - 16_

Signed:      _____

Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of work (generally after the 3rd hour of work, but before the 5th hour of work). I generally take my meal break after the 4th hour. I work about 25-28 hours a week. About half of my shifts are shorter than five hours and do not get meal period. When I work longer shifts, I always take my meal period.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are uninterrupted and free from work. I know that I am not permitted to be working when I am supposed to be taking my meal break. I never work during the time I am supposed to be taking my meal break. I am able to leave the store if I choose to do so. I typically either take my meal period in my car or in the break room. There are plenty of seats available in the break room for use during meal and rest breaks.

6.      I was trained on the meal period policy when I began working at Big Lots. Throughout my employment with Big Lots, managers have discussed the meal break policy with me and emphasize the importance of taking meal breaks.

2

7.      My meal break is written into my store's daily schedule that is online, and I am generally aware of when my schedule. Sometimes managers will remind me when me meal break is scheduled if I do not approach them to let them know I am taking my meal break.

8.      Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      One time, while I worked in Sorretos, I forgot to clock out on time for my meal break and got a penalty payment. It is my understanding that associates who do not take their meal break on time automatically receive one hour of penalty pay.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.     I was trained on the rest break policy when I began working at Big Lots. Throughout my time at Big Lots, managers have discussed the rest break policy with me and emphasized the importance of taking rest breaks.

12.     Our rest periods are not written down, but we are trained on when to take them and I know when I need to take my rest breaks. Sometimes I approach mangers to let them know that I am taking my break. Other times, managers will approach me to remind me to take my break.

3

13.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

14.     I received training on the bag check policy when I worked in Sorretos. Associates, such as me, are not required to bring bags, purses, or similar packages to work, and there are many who do not bring any bags to work. I typically do not bring a bag to work, and therefore have nothing to be checked.

15.     Anyone at the front of the store can perform a check. Sometimes I perform bag checks for other associates. The bag checks do not take much time at all, lasting less than a minute. I simply look in the bag as the person getting checked walks by and ask them to move any items in their bag if I need to see better. I do not touch the bag or the person whose bag is being checked.

16.     I work the closing shift once a week in the Lakewood store. In Sorretos, I worked the closing shift more frequently. During the closing shift, I complete all of my work before I clock out. I go to the front of the store while the manager sets the alarm and we leave together. It is no more than five minutes between when I clock out and when I set foot outside of the store.

17.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

18.     During my time at Big Lots, I have never worked off-the-clock. I am aware that associates can be disciplined for working off the clock.

19.     During my employment with Big Lots, I have never been scheduled for a split shift. In Sorretos, I worked a split shift on a few occasions when it was not scheduled. I was

4

asked to come back in to fill in for someone who had called off. I knew that working the split

shift was entirely voluntary and there was no penalty if I declined.

I declare under penalty of perjury under the laws of the State of California and the United

States of America that the foregoing is true and correct.

Mario Mercado

Executed this 19th day of January 2016.

5

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*DM*  1.  We wish to interview you for purposes of gathering evidence to support the
defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon
Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>,
pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*DM*  2.  We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*DM*  3.  The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting
claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work,
and split shifts.

*DM*  4.  As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*DM*  5.  You have no obligation to speak with us and may decline to be interviewed.

*DM*  6.  Your decision about whether or not to speak with us will not result in any form of
retaliation or adverse employment consequences against you.

*DM*  7.  You will not benefit by speaking with us.

*DM*  8.  If you agree to speak with us, we want you to tell the truth and answer our
questions as completely as possible based on your own personal knowledge.

*DM*  9.  If you agree to speak with us, your statements could negatively impact any claim
you might have as a member of the potential class in the <u>Hubbs</u> case.

*DM*  10.  If at any point during the interview you wish to stop the interview and leave, you
are free to do so and will not suffer any retaliation or adverse employment consequences as a result of
your decision.

*DM*  11.  You are free to consult with an attorney or anyone else of your choosing before
you make your decision about whether or not to speak with us.

   I have read and understand my rights as discussed above, and voluntarily agree to be interviewed
by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:  _Dennis Milner_    Date _2-25-16_

Signed:  _Den Miler_

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF**<br>**DENNIS MILNER** |

I, Dennis Milner, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

    1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an Assistant Team Leader – Services.   I have worked at Big Lots for almost 4 years. I currently work in Store # 4594 in Livermore, California. Prior to this, I worked in the Hercules store primarily as an Assistant Manager - Operations for about one year before transferring to the Livermore store.

    2.    I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case

1

of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.    It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration.  The statements made in this Declaration are truthful, accurate and voluntary.

4.    At all times during my employment, Big Lots has had and enforced a meal period policy.  Big Lots' meal period policy requires hourly employees, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours.  The meal period must be taken <u>before</u> I complete 5 hours of work.  We are also required to take a second 30-minute meal period for shifts of more than 10 hours in a day, though shifts are rarely, if ever, scheduled long enough that two meal periods are required.  I typically work 8-hour shifts and take my meal break after working 4 to 4.5 hours. At the Hercules store, I worked a shift longer than 10 hours and took a second meal break. Most associates at my store work 4-hour shifts.

5.    We are required to clock out during meal periods and cannot clock in early from meal periods.  The computer prevents us from clocking in early. I typically stay in the store during my meal breaks, but know that I am able to leave if there is another manager or customer service employee working. If there is not, I need to stay in the store.

6.    I was trained on the meal policy when I started working. There is a handbook that we went over and managers at the Hercules store discussed the policy with me. At the Livermore store, we train new associates on the meal period policy. The meal period policy is one of the areas we pay the mot attention to during training.  We thoroughly go over the policy with new

2

associates and go over the handbook with them.  For several weeks after new associates start, we remind of the meal period policy.

7.      Stores in my district are very watchful over meal violations. We try very hard to make sure they never occur. Meal breaks are written into the store's daily schedule. I keep an eye on associates and other managers to make sure that they are taking their meal breaks and that they are taken on time.

8.      Throughout my employment with Big Lots, I have never been unable to take a meal break. I am also not aware of any other manager being unable to take a meal break. I have never heard of or observed a manager deny any associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      Whenever someone does not take their meal break on time, they automatically receive one hour of premium pay.  Big Lots' payroll system automatically provides a premium payment any time the time records do not show that a required meal break was taken, if the required meal break was less than 30 minutes, or if the required meal break was taken late.

10.     I have taken a meal break late twice in my four years working here. This occurred when I was helping in the Tracey store and an OSHA officer showed up. I was showing the OSHA officer around and recording what was inspected. By the time the OSHA officer finished, I was half an hour late for my lunch. I was paid the meal violation of an extra hour of pay.

11.     I am aware of associates occasionally taking a meal break late, but in a typical month we would not have any meal violations. When this happens, the associate is typically not watching the clock and forgets to take it on time. Associates are trained to get a manager if they are working with a customer when their meal time approaches. If they ever take the violation

3

late, they are paid the violation. We would also talk to them about why it happened and be reprimanded. If it happened again, they would be written up.

12.     In general, assistant mangers almost never have violations. They are also trained to get another manager if they are working with a customer when their meal break is approaching.

13.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break. At my store, schedules are almost always either 4 or 8 hours. Anyone working an 8 hour shift would get two rest breaks.

14.     I was trained on the rest break policy when I began working at Big Lots and we train new associates on the policy. We discuss the policy with them and give them a handbook that has the policy in it.

15.     People are generally responsible for taking their own rest breaks, and they remember to take them on their own. However, I keep an eye out to make sure that everyone is taking their rest breaks and that they are the appropriate length. I also remind people that they need to take their rest breaks. If we are shorthanded, employees also let managers know when they are going on break.

4

16.     During my employment at Big Lots, I have never been unable to take a full rest break. There are some occasions when I did not take my break but I chose not to. I have never seen or heard of an associate or other manager being unable to take a full rest break, but on a few occasions associates have said that they did not taken a break. Our policy is that they have to take their rest breaks, so the associate received oral counseling on those occasions.  If they continued not to take a rest break, I would give the associate written counseling, but I have never had to do that.

17.     At my store, employees who bring bags have them checked. They occur at the front registers.  About 90% of the time, a manger or customer service employee performs the bag check at the front of the store. If a cashier is the only person at the front, they can also perform a bag check. I am not aware of anyone ever waiting to have a bag checked. No one is required to bring a bag as part of their job and not everyone brings a bag. Sometimes I bring a lunch bag that I have checked.

18.     Associates have their bag checked at the same time they clock out.  Even if they punched out afterwards, I would not stop them.

19.     The whole process of a bag check takes only a couple of seconds. The person having their bag check simply opens the bag as they are leaving the store so that the person doing the bag check can see in.

20.     I work the clocking shift about 3 times a week.  Most of time, it is me and one associate working the closing shift. If the associate is not at the front of the store when 10:00 pm approaches, I will make an announcement or let them know to go to the front as I do my walk through. During closing, I do the back check before we clock out. We then punch out together. Then I go set the alarm and we walk out.  I would be surprised if the entire process between

5

when we clock out when we leave takes more than 15 seconds, but I know it does not take more than 45 seconds because that is how long we have to get out before we trigger the alarm.

21.     Big Lots' policy additionally prohibits associates from working off-the-clock. I regularly remind associates not to work off-the-clock. In fact, I tell them that if it even looks like they are working off the clock it is a problem.

22.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock, nor am I aware of a manager asking another associate to do so.

23.     If I saw someone working off the clock, I would ask them why. Then I would adjust the clock-in or clock-out time so they got paid for the work, even if it meant paying them overtime. I would tell them that they never have permission to work off the clock. If it happened again, they would be receive discipline.

24.     During my employment with Big Lots, I have never been scheduled for a split shift. I am not aware of any associates ever being scheduled for a split shift. The only time I am aware of anyone working a shift was when someone called to fill in for someone who called off late. Working the split-shift was voluntary and there was no penalty for declining to come back to work.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dennis Milner

Executed this 25th day of February 2016.

6

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.  We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u>" case").

2.  We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.  The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.  As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.  You have no obligation to speak with us and may decline to be interviewed.

6.  Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.  You will not benefit by speaking with us.

8.  If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.  If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.  If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.  You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Debra Mitchell_          Date _2-22-16_

Signed: _Debra Mitchell_

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF DEBRA MITCHELL** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Debra Mitchell being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate for almost 5 years. I work in Store # 4340 in San Francisco, California and spent all my time with Big Lots in this store.

2.      I voluntarily spoke with Alex Bluebond counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.        It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.        At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I typically work 5 days a week and work long enough shifts to get a meal break on 3 of those days. I take my meal break after four or four-and-a-half hours of working.

5.        In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. On a few occasions, I have tried to clock in a few seconds early from my meal break and the computer prevented me from doing so. I am able to leave the store if I choose to do so, or I can eat lunch in the back. I either take my meal break in the break room or in my car.

6.        My meal break was only interrupted once. Another employee was ill and left my meal break to help. Other than that, my meal break has never been interrupted.

7.        I was trained on the meal period policy when I began working at Big Lots. There was a video that discussed the meal period and managers discussed it.

8.        My meal break is written into my store's daily schedule. A print out of the schedule is made available to associates so I can see and determine when my meal period should be taken. The customer service rep at the front of the store also reminds everyone when their meal break should be taken.

2

9.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

10.      It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay. Big Lots' payroll system automatically provides a premium payment (one hour of pay) to any associate any time the time records do not show that a required meal break was taken, if the required meal break was less than 30 minutes, or if the required meal break was taken late.

11.      I only remember taking a meal period late once during my entire time working at Big Lots. The person who wrote the schedule made a mistake and wrote my meal break time as being on the fifth hour of work. I clocked out at exactly or shortly after that time. When that happened I received a violation and the incident was discussed with me. I do not recall whether I was paid the premium, but I assume that I was because the incident was recorded and discussed with me.

12.      At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break. I sometimes work 7 hour shifts and take two rest breaks.

3

13.     I was trained on the rest break policy when I began working at Big Lots. I also knew the policy from other jobs that I had.

14.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken. The customer service representative at the front of the store also reminds associates when to take rest breaks.

15.     I have never been unable to take a rest break and am not aware of any associate being unable to take a rest break.

16.     We perform bag checks at my store. I received training on the bag check policy when I was initially hired Usually the customer service or manager performs the check at the front of the store as we leave. The bag checks are extremely brief, lasting less than a minute. I simply open my bag and the person performing the bag check glances in. They do not touch anything inside the bag. I have never waited to have my bag checked. I typically bring a bag but not everyone at the store does.

17.     I rarely work the closing shift anymore. About a year ago, there was a change in policy that meant people in my position rarely work after the store closes to customers at 9:00 p.m. We used to recovery at night and stay after the store closed to customers but now, if people in my position do recovery, we do it during the day.

18.     When I used to work closings, there would be three or four people working the closing shift. When it was time to close, we would finish our work and then clock out. The manager would then come to the front of the store to set the alarm, perform bag checks, and let us out. We never had to wait very long before leaving after clocking out.

4

19.     Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment.

20.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

21.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Debra Mitchell


Executed this 22nd day of February 2016.

5

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

_____ 1.   We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

_____ 2.   We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

_____ 3.   The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

_____ 4.   As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

_____ 5.   You have no obligation to speak with us and may decline to be interviewed.

_____ 6.   Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

_____ 7.   You will not benefit by speaking with us.

_____ 8.   If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

_____ 9.   If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

_____ 10.   If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

_____ 11.   You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   PHOEBE OLDEHAVER

Date   1|18|2016

Signed:   _Oldehaver_

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br>**DECLARATION OF**<br>**PHOEBE OLDERHAVER** |

I, Phoebe Olderhaver, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

    1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate. I work in Store # 4107 in Westminster, California. I am currently an associate primarily as a cashier. I have worked at Big Lots for 21 years.

    2.    I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  They informed me that I was not required to speak with him/her and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions they asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots</u>

1

Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.     It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.     At all times during my employment at Big Lots, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken before I complete 5 hours of work (generally after the 4th hour of work, but before the 5th hour of work). We are also required to take a second 30-minute meal period for shifts of more than 10 hours in a day, though shifts are rarely, if ever, scheduled long enough that two meal periods are required. I usually work 8 hour shifts.

5.     In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are uninterrupted and free from work. I am able to leave the store if I choose to do so, or I can eat lunch in the back. There are plenty of seats available in the break room for use during meal and rest breaks. In other words, when I am on a break, I am on a break – I am not permitted to be working. I have never worked during the time I am supposed to be taking my meal break. For my meal breaks, I usually eat in the break room.

6.     I was trained on the meal period policy when I began working at Big Lots. I am frequently reminded of the meal break policy by the managers at my store.

7.     My meal break is written into my store's daily schedule. A print out of the schedule is made available to associates so I can see and determine when my meal period should

2

be taken. Managers will remind us to take our breaks. I have never been denied a meal break and have never been disciplined for not timely taking a meal break.

       8.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

       9.     I was trained on the rest break policy when I began working at Big Lots. I am frequently reminded of the rest break policy by the managers at my store.

      10.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken. Managers will sometimes notify associates when it is time to take a rest break. Sometimes associates are proactive and will tell managers when it is time to take a rest break.

      11.     During my employment at Big Lots, I have never been unable to take a full rest break.

      12.     At my store, employees who bring a bag are required to have it checked before they leave. Associates are not required to bring bag, but I always bring a bag. It is checked at the register before I leave. It takes less than a minute to do the bag check. I am simply required to open the bag for another person at the store. The person conducting the check does not physically touch the bag or anything in it, nor does anyone ever touch me. I have never had to wait to have my bag checked and I am unaware of any associates ever having to wait to have a

3

bag checked. If the bag check occurs at closing, I simply open the bag as I walk by the manger
and out of the store. I have never had to wait in a line to have my bag checked.

13.     I often work at the store after closing.  The manager and the associate working
closing will clock out, look in each other's bags, and then set the alarm before leaving. The entire
process takes less than a minute.  Associates are expected to stay on the clock until closing work
has been completed and it's time for us to leave.

14.     Big Lots' policy additionally prohibits associates from working off-the-clock.  I
was trained on this policy when I began working and have been reminded of the policy during
my employment.

15.     During my time at Big Lots, I have never worked off-the-clock and I am unaware
of any associate working off-the-clock.  I have never been asked to work off-the-clock by a
manager, nor am I aware of a manager asking another associate to do so.

16.     During my employment with Big Lots, I have never been scheduled for a split
shift and I have never worked a split shift.

I declare under penalty of perjury under the laws of the State of California and the United
States of America that the foregoing is true and correct.

Phoebe Olderhaver

Executed this 18th day of January, 2015.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*FO*    1.    We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*FO*    2.    We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*FO*    3.    The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*FO*    4.    As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*FO*    5.    You have no obligation to speak with us and may decline to be interviewed.

*FO*    6.    Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*FO*    7.    You will not benefit by speaking with us.

*FO*    8.    If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*FO*    9.    If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*FO*    10.    If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*FO*    11.    You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:    Fernando Oliva                    Date 01/19/2016

Signed:    Fernando Oliva

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF FERNANDO OLIVA** |

I, Fernando Oliva, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a night stocker and in the furniture department. I work in Store # 1910 in Lakewood, California. I have worked in this store for a little over a year.  During that time, I have worked both night stock shifts and during the day/night in furniture.

2.      I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  They informed me that I was not required to speak with them and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions they asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots</u>

1

Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District
Court for the Central District of California.

      3.     It is my decision to submit this Declaration and I am under no obligation to do so.
All statements below are provided upon careful reflection and consideration. The statements
made in this Declaration are truthful, accurate and voluntary.

      4.     At all times during my employment, Big Lots has had and enforced a meal period
policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid
meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of
work (generally after the 3rd hour of work, but before the 5th hour of work). We are also
required to take a second 30-minute meal period for shifts of more than 10 hours in a day, though
shifts are rarely, if ever, scheduled long enough that two meal periods are required. I often work
shifts shorter than five hours and do not take meal breaks on those shifts. I once worked a twelve
hours shift and received a second meal break.

      5.     In addition, we are required to clock out during meal periods and cannot clock in
early from meal periods. I once unknowingly tried to clock in a little early and the computer
prevented me from doing so. Additionally, my meal periods are uninterrupted and free from
work. In other words, when I am on a break, I am on a break – I am not permitted to be working.
I know I can leave during the meal period, but I typically take it in the break room. There are
plenty of seats available in the break room for use during meal and rest breaks.

      6.     When I started working at Big Lots, there was a training period where they went
over the meal and rest periods. I am frequently reminded of the meal break policy by the
managers at my store.

7.     I usually keep track of when to take my meal breaks, but if I ever lose track a manager will approach me and remind to take a meal break. During the night stock shifts, everyone takes the meal break at the same time so it is easy to keep track of.

8.     Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break. During my first couple days working at Big Lots, I forgot to clock out when I took my meal break. A manager noticed and reminded me that I was supposed to clock out.

9.     At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

10.     I was trained on the rest break policy when I began working at Big Lots. I am frequently reminded of the rest break policy by the managers at my store.

11.     I keep track of the time and know when to take my rest breaks. I have never been unable to take full rest break. I typically take them around the two-hour mark of my four hour shifts. I am not aware of any associate who was unable to take their rest breaks.

12.     I almost always bring a backpack to work, but I have never had my bag checked when leaving the store at the end of my shift.  I am able to just grab my bad and leave.

13.     I occasionally work the closing shift. A little after nine, the last customer will leave. Associates are expected to stay on the clock until closing work has been completed and it

3

is time for us to leave. If I am the last associate in the store with the manager, I remain on the clock until I see the manager approaching the front of the store to set the alarm and leave.

14.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment. Occasionally, a customer will approach me when I am off the clock and I will point them towards what they are looking for. It takes only a few seconds. If they ever asked for something that would take more time, I would get someone else to assist the customer.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


_Fernando Oliva_
Fernando Oliva


Executed this 19th day of January 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

_CR_       1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

_cR_       2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

_cR_       3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

_cR_       4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

_cR_       5.      You have no obligation to speak with us and may decline to be interviewed.

_cR_       6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

_cR_       7.      You will not benefit by speaking with us.

_cR_       8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

_cR_       9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

_cR_       10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

_cR_       11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Concepcion Rael_        Date _2·22-16_

Signed: _Concepcion Rael_

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF CONNIE RAEL** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Connie Rael, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate. My responsibilities include being a cashier, stocking, and customer service. Seven years.  I work in Store # 4340 in San Francisco, California and have for seven years.

2.     I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.     It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.     At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I usually take mine after about 4 or 4.5 hours. Most of the year, I work shifts long enough to take a meal break once or twice a week. During the holidays, I work shifts longer enough to take a meal break more often. I usually work four to six days a week in total.

5.     In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. On a number of occasions, I have tried to clock in right before my meal period ended, and the computer stopped me. Additionally, my meal periods are uninterrupted and free from work. I am able to leave the store if I choose to do so, or I can eat lunch in the back. Usually, I eat lunch in the break room and stay in the store. Sometimes I will leave the store after I finish eating if I have time. There are plenty of seats available in the break room for use during meal and rest breaks. I have never worked during the time I am supposed to be taking my meal break and am not aware of any other employees working during their meal periods.

6.     I was trained on the meal period policy when I began working at Big Lots. The manager explained the meal break policy when I started working.

2

7.      My meal break is written into my store's daily schedule.  A print out of the schedule is made available to associates so I can see and determine when my meal period should be taken.  The person working the customer service desk will also remind everyone to take their meal breaks. Either the person at the customer service desk or I will cross off the time to mark that we have gone on break.

8.      Throughout my employment with Big Lots, I have never been unable to take a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      I am aware that it is a violation of company policy to take meal period after five hours. I have never taken a meal period late and am not aware of anyone who has.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark. I usually only work 4 or 6 hour shifts and do not take a second rest break. I rarely work a shift long enough to take a second rest break.

11.     I was trained on the rest break policy when I began working at Big Lots. The manager explained the rest break policy when I started working.

12.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken.

13.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

3

14.     At my store, we require people who bring bags to have them checked before they leave. I have my bag checked when I leave. The bag checks are performed by a manager or the person at the customer service desk. Sometimes there is a person stationed at the door who will perform bag checks. Not everyone brings a bag to work, but some people do.

15.     No one has ever told me that I have to clock out before having my bag checked.

16.     The head clerk or manger will usually do the bag check. Bag checks are very quick. We just open the bag for the person performing the bag check to see inside. How long it takes depends on the size of the bag, but the time is never very long. I come in with my own cart and it is checked. It takes a little longer than a bag, but it is still very quick.

17.     When I was full time I would work the closing, but it has been more than year since I have worked closings. When I worked closings, multiple associates and the manager would work until 10:00 p.m. The associates would go to the front of the store when it was time to leave and the manager would follow. We did not have to wait very long for the manager after clocking out. The manager would let us out and set the alarm after we left the store.

18.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

19.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

20.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.

4

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_Connie Rael_

Connie Rael

Executed this 22nd day of February 2016.

5

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

N.S.        1.        We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

N.S.        2.        We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

N.S        3.        The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

N.S.        4.        As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

N.S        5.        You have no obligation to speak with us and may decline to be interviewed.

N.S.        6.        Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

N.S        7.        You will not benefit by speaking with us.

N.S.        8.        If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

N.S        9.        If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

N.S.        10.        If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

N.S.        11.        You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   Norma Saldivar                                  Date   00-23 16

Signed:   _____

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br><br>**DECLARATION OF NORMA SALDIVAR** |

I, Norma Saldivar, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

    1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a DTS Lead. I have worked at Big Lots for about 7 years. I work in Store # 4261 in San Jose, California.

    2.    I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work (generally after the 3rd hour of work, but before the 5th hour of work). We are also required to take a second 30-minute meal period for shifts of more than 10 hours in a day, though shifts are rarely, if ever, scheduled long enough that two meal periods are required. I often work shifts longer than 5 hours and usually take my meal breaks after working about 4 hours. A few times I have worked shifts longer than 10 hours, and on those occasions I took a second meal break.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. I am often stopped from clocking in early by the computer. I usually go to the break room but I sometimes leave the store. Additionally, my meal periods are uninterrupted and free from work. I am able to leave the store if I choose to do so. I usually go to the break room, but sometimes I leave the store. There are plenty of seats available in the break room for use during meal and rest breaks. I have never worked during the time I am supposed to be taking my meal break.

2

6.      I was trained on the meal period policy when I began working at Big Lots.  The managers frequently remind associates of the meal break policy. They talk to associates about the meal break policy individually and at meetings.

7.      My meal break is written into my store's daily schedule.  A print out of the schedule is made available so I can see and determine when my meal period should be taken. The person working at the main cashier station will also remind people when it is time to take meal breaks by announcing it over the P.A. or telling them personally.

8.      Throughout my employment with Big Lots, I have never been unable to take a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

10.     Managers also talk about the rest break policy with associates, but most associates know the rest break policy already because they see it in practice and are reminded of when to take their breaks.

11.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken.

3

12.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

13.     At my store, we do not do bag checks. We used to do bag checks, but we don't do them anymore. I don't remember when we stopped.

14.     I work the closing shift around twice a week. When I am the manager who closes, everyone working the closing shift clocks out on the same time. After we clock out, I will check the receipts and bags of anyone who has purchased something and let the associates out of the store. I will then set the alarm and leave. No one does any work after we clock out.

15.     Big Lots' policy additionally prohibits associates from working off-the-clock. During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock, nor am I aware of a manager asking an associate to do so.

16.     During my employment with Big Lots, I have worked one or two split shifts. This happened when there was an emergency after I finished my regular shift. Working the split shift was voluntary and I was not originally scheduled to have worked a split shift that day. I am not aware of anyone else who has worked a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


_____
Norma Saldivar


Executed this 23rd day of February 2016.


4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.  We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.  We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.  The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.  As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.  You have no obligation to speak with us and may decline to be interviewed.

6.  Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.  You will not benefit by speaking with us.

8.  If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.  If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10. If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11. You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: Vivian Salmecon          Date 1·20·2016.

Signed: Vivian Salmecon

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF VIVIAN SALMERON** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Vivian Salmeron, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") at Store # 1466 in Culver City, California. I have worked for Big Lots for 16 years. This is my third location. I have been here for about 5 to 6 years. I work as a cashier and in recovery. I typically work around 26 hours a week. I generally work around 5 to 6 hours per shift.

2.      I voluntarily spoke with Adam Rocco, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      During my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I generally take mine at about 4.5 hours of work. I like to let to others go first.

5.      For meal periods, we are required to clock out and then back in at the end of the period. The computer prevents us from clocking in early, which has happened to me a few times. I generally take my breaks in the break room. I might also step outside for a few minutes. There are plenty of seats available in the break room for use during meal and rest breaks. I do not work during my breaks. I relax. I have never been required to or worked during one of my breaks.

6.      If someone is new, we explain the meal and rest break policy to them. The people in customer service also monitor breaks to make sure people are getting their breaks and remind us when to take them. We also have a booklet at Customer Service that has the breaks written on them.

7.      Throughout my employment with Big Lots, I have never missed or been denied a meal break.

8.      It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay, but this has never happened to me.

2

9.      The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2nd or 3rd hour mark.  During my rest breaks, I remain on the clock.  I generally go to the break room for these breaks.  During that time, I am not working.

10.     Like my meal breaks, my rest breaks are written in the booklet at Customer Service.  The people at Customer Service also do a very good job at monitoring and ensuring employees take their rest breaks.  They plan the breaks and remind us to take our breaks.

11.     During my employment at Big Lots, I have never been unable to take a full rest break.

12.     I bring a bag to work.  My bag is checked before I leave for the day.  Sometimes I also buy something and need to show the receipt when I leave.  Generally, the bag check takes a few seconds.  The person in Customer Service normally does the bag check.

13.     I do not work closing shifts.  I take the bus and need to leave by 7:00 p.m.

14.     Big Lots' policy prohibits associates from working off-the-clock.  I have been reminded of the policy during my employment.  I learned my lesson over 10 years ago.  I helped a woman after already having clocked out.  My manager found out about it and reminded me that I could not do work off-the-clock, even if you are just trying to be nice.  Since then, I have never worked off-the-clock.

15.     During my employment with Big Lots, I have never been scheduled for or worked a split shift.

3

I declare under penalty of perjury under the laws of the State of California and the United

States of America that the foregoing is true and correct.

Vivian Salmerón


Executed this 20th day of January, 2016.


4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

_CS_       1.     We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

_CS_       2.     We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

_CS_       3.     The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

_CS_       4.     As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

_CS_       5.     You have no obligation to speak with us and may decline to be interviewed.

_CS_       6.     Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

_CS_       7.     You will not benefit by speaking with us.

_CS_       8.     If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

_CS_       9.     If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

_CS_       10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

_CS_       11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

     I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Christina Straub_      Date _2-22-16_

Signed: _[signature]_

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br>**DECLARATION OF CHRISTINA STRAUB** |

I, Christina Straub, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a stocker. My primary duties are stocking and assisting customers. I work in Store # 4340 in San Francisco, California. I have been working at Big Lots for about 10 months in this store.

2.     I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I typically work day shifts Monday through Wednesday or Thursday. When I work day shifts, I usually do four-hour shifts and do not take a meal break. I typically work night shifts on Friday and Saturday. When I work night shifts, I usually work five or more hours and take a meal break after about an hour and half. I have never worked a shift longer than 8 hours.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. On a few occasions I have tried to clock in a few seconds early from my meal break and the computer stopped me. I then waited the few seconds before clocking in. Additionally, my meal periods are uninterrupted and free from work. I have never worked during my meal break. I am able to leave the store if I choose to do so, or I can eat lunch in the back. I typically just go outside during my meal break. I am aware of other associates who leave the store entirely.

6.      There are plenty of seats available in the break room for use during meal and rest breaks.

7.      I was trained on the meal period policy when I began working at Big Lots. There was a computer training class that covered the meal break policy.

2

8.      Meal breaks are written down on a book at the front of the store for the day shift. That book is available for everyone to see. Additionally, throughout the day, the person at the customer service desk will remind associates of when it is time to take their meal breaks. During night shifts, everyone goes at the same time and the freight manager announces when it is time for everyone to take their meal breaks.

9.      Throughout my employment with Big Lots, I have never been unable to take a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.     I was trained on the rest break policy when I began working at Big Lots. The computer training class covered the rest break policy and managers explained it.

12.     The rest breaks are also written in the book at the front of the store. In my case, I work before the store opens and always take my rest break at 9:00 when the store opens to customers. During the night shift, the freight manager announces when it is time for everyone to take the 15 minute rest break.

13.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

14.     I received training on the bag check policy when I was initially hired. When I first started working, there were bag checks at the front of the store. Now that the store has installed

3

sensors, no bag checks are performed at the front of the store. However, if we leave through the stock room, a bag check will be performed by a manager.

15.     I usually bring a bag, but not everyone at the store does. The men that work here typically do not bring bags.

16.     When bag checks occur, they are very short, lasting not more than a few seconds. I simply open the bag as I am leaving as a manager glances in. The person conducting the check does not physically touch the bag or anything in it, nor does anyone ever touch me. I have never had to wait to have my bag checked and I am unaware of any associates ever having to wait to have a bag checked.

17.     I never work the closing shift when the alarm is set.

18.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

19.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

20.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Christina Straub

Executed this 22nd day of February 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

*N.T*     1.     We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*N.T*     2.     We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*N.T*     3.     The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*N.T*     4.     As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*N.T*     5.     You have no obligation to speak with us and may decline to be interviewed.

*N.T*     6.     Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*N.T*     7.     You will not benefit by speaking with us.

*N.T*     8.     If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*N.T*     9.     If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*N.T*     10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*N.T*     11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:     *NATIVIDAD TORRES*     Date *2-24-16*

Signed:     *Natividad Torres*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF NATIVIDAD TORRES** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Natividad Torres, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a floor assistant and do stocking.   I work in Store # 4468 in Hayward, California. I have been working here for almost 6 years.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work. I usually work 7.5 hour shifts, and I usually take the break around 4 hours.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Every time I have tried to clock in before my 30-minute is over, the computer has stopped me. Additionally, my meal periods are uninterrupted and free from work. If managers or leads see us on the floor during our break, they will tell us to go outside or into the break room. I usually stay in the break room, but I am able to leave if I wanted to and sometimes I do. When I do stay, there are plenty of seats available in the break room for use during meal and rest breaks. I have never worked during the time I am supposed to be taking my meal break.

6.      I was trained on the meal period policy when I began working at Big Lots. I am frequently reminded of the meal break policy by the managers at my store. The policy was also in the handbook that I was given when I started working.

7.      I generally know when my meal break is scheduled and I take it on my own. If I am ever getting close to the fifth hour of work and have not taken my break, the store leads or the manager will remind me to take my meal break.

8.      Throughout my employment with Big Lots, I have never been denied a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break. I have never heard an associate complain about missing a meal break.

9.      It is my understanding that it is against company policy to take meal periods late, and that am aware that associates can be disciplined for failing to take their meal break on time. Managers would talk to the associate about what happened.

10.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.  Managers remind us to take our 15 min breaks, but I always make sure that I get my rest breaks on my own.

11.      During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break. I have never heard another associate complain about not being able to take a full rest break. It is my understanding that an associate who does not get a rest break(s) is required to notify a manager and will receive one hour of premium pay.

12.      At my store, everyone employee who brings a bag is required to have it checked. I usually bring a lunch bag and it is checked when I leave. The bag checks are performed my either a manager or the cashier at the front of the store. I have never had to wait for a bag check. The bag checks are very quick and take only about a minute. I simply open my bag as I am leaving the store so that the person doing the bag check can see in.

3

13. I do not work the closing shift. I used to work the lcosing shift but it has been at least three years since I have done so, maybe more.

14. Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment. Managers tell us not to work off-the-clock.

15. During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

16. During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Natividad Torres

Executed this 24th day of February 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California (the "Hubbs case").

2.      We are the attorneys who represent Big Lots in the Hubbs case.

3.      The Hubbs case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the Hubbs case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the Hubbs case.

10.      If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.      You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the Hubbs case for purposes of gathering evidence to support Big Lots defense.

Name: _Jessica Valdez_____      Date _2/2v/1u_____

Signed: _____

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br>**DECLARATION OF JESSICA VALDEZ** |

I, Jessica Valdez, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier and stocker .  I have worked for Big Lots for 2 years. I work in Store # 4311 in Concord, California.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No.

1

8.     At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

9.     Managers will remind associates to take rest breaks, if people do not take them on their own.

10.    During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

11.    At my store, people who bring bags have them checked when they leave. The cashier at the front of the store usually does the bag check. I typically bring bag, but not everyone does. About half of the people bring bad. I have never had to wait for a bag check. If there is a line of customers will still just go up to the cashier and they will still check the bag.

12.    I rarely work the closing shift. It's probably been five or six months. I used to do it more frequently.  It's usually a manger, a cashier and maybe another associate.  When it's time to leave, we will clock out when we get up front. Then we will do the bag checks. The manager will set the alarm and we will leave. It usually takes 2 or 3 minutes between when we clock out to when we step foot outside the store.

13.    Big Lots' policy additionally prohibits associates from working off-the-clock. During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

3

14.     I have worked split shifts during my time at Big Lots. When I work a split shift it is voluntary and there is no penalty if I say I cannot work the split shift.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Jessica Valdez

Executed this 26th day of February 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

A.√      1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx),</u> pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

A.√      2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

A.√      3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

A.√      4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

A.√      5.      You have no obligation to speak with us and may decline to be interviewed.

A√      6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

A√      7.      You will not benefit by speaking with us.

A.√      8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

A.√      9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

A.√      10.      If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

A.√      11.      You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   Alejandra   Valerio          Date  1|19|16

Signed:   Alejandra

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF ALEJANDRA VALERIO** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Alejandra Valerio being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a floor associate and cashier. I work in Store # 1910 in Lakewood, California. I started in this store in October 2015.

2.     I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. S\he informed me that I was not required to speak with them and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions they asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots</u>

1

<u>Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District
Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so.
All statements below are provided upon careful reflection and consideration.  The statements
made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period
policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid
meal period for shifts over 5 hours.  The meal period must be taken <u>before</u> I complete 5 hours of
work.  I usually work four hours shifts, so I do not qualify for meal breaks on those shifts. I have
never worked longer enough to get a second meal period.

5.      In addition, we are required to clock out during meal periods and cannot clock in
early from meal periods.  The computer prevents us from clocking in early. I know I can leave
the store during my period, but I typically choose to take it in the break room. Once I start my
meal period, it is uninterrupted and free from work. I know I am not permitted to be working
during the time I am supposed to be taking my meal break. There are plenty of seats available in
the break room for use during meal and rest breaks.

6.      I was trained on the meal period policy when I began working at Big Lots.  I am
frequently reminded of the meal break policy by the managers at my store.

7.      I usually tell the manager when my meal period is approaching. Another associate
in the store also keeps track of the meal periods and will remind everyone when to take them, but
most associates know when to take their own meal periods.

2

8.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.      It is my understanding that associates who do not take their meal break or do not take it on time automatically receive one hour of premium pay. I have never taken a late break and am not aware of any other associate taking a late break at my store.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.     I was trained on the rest break policy when I began working at Big Lots. I am frequently reminded of the rest break policy by the managers at my store. Managers emphasize the importance of taking our breaks.

12.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

13.     Associates who bring bags to the store have their bags checked when they leave. Associates, such as me, are not required to bring bags, purses, or similar packages to work, and there are many who do not bring any bags to work. I usually do bring a bag and have it checked when I leave. The bag checks are extremely brief and last no more than a few seconds. They are

3

performed at the front of the store when people are walking out. If we purchase something, we typically just show the receipt and our bag as we walk out.

14.    I have never worked a closing shift or had to close the store with a manager.

15.    Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment. I know that I am not supposed to perform any work off the clock.

16.    During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so. If a customer asked me for help when I was off the clock, I would typically call a manager to get another associate to help the customer. I

17.    During my employment with Big Lots, I have never been scheduled for or worked a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_Alejandra_
Alejandra Valerio


Executed this 19th day of January 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.      If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.      You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:   Pamela Vasquez                      Date   1/19/16

Signed:   Pamela Vasquez

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge: Hon. John A. Kronstadt<br><br>**DECLARATION OF PAMELA VASQUEZ** |

I, Pamela Vasquez, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.    I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier, stocker, and Customer Service Specialist ("CSS"). I work in Store # 1410 in Lakewood, California. I started working at the Lakewood as a Christmas seasonal employee in 2012 and then returned on a regular basis starting in August 2013.

2.    I voluntarily spoke with Adam Rocco and Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. They informed me that I was not required to speak with him/her and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions they asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots</u>

1

<u>Stores, Inc. et al.</u>, Case No. 2:15-cv-01601 JAK (ASx), pending in the United States District
Court for the Central District of California.

      3.      It is my decision to submit this Declaration and I am under no obligation to do so.
All statements below are provided upon careful reflection and consideration. The statements
made in this Declaration are truthful, accurate and voluntary.

      4.      At all times during my employment, Big Lots has had and enforced a meal period
policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid
meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of
work. I generally take mine around 4 hours into my shift. My shifts are typically six or seven
hours, so while I work shifts long enough to take meal breaks, I do not work long enough shifts
to take a second meal break.

      5.      In addition, we are required to clock out during meal periods and cannot clock in
early from meal periods. My meal periods are uninterrupted and free from work. I have never
worked when I am supposed to be on my meal break. I am able to leave the store if I choose to
do so, but I typically eat lunch in the break room. There are plenty of seats available in the break
room for use during meal and rest breaks.

      6.      I was trained on the meal period policy when I began working at Big Lots. During
my training, I was shown videos on these policies. I am also reminded of the meal break policy
by the managers at my store. One of my responsibilities when I was a CSS was keeping track of
other associates meal and rest breaks. When I had that responsibility, I always reminded the
associates when it was time for their meal or rest breaks. I no longer have that responsibility.
Now, managers will make sure all associates know when to take their meal breaks. There is also
another associate in our store who writes down when breaks are supposed to be taken.

2

7.      Throughout my employment with Big Lots, I have never been denied a meal break. I always take my meal break. I have also never taken a late break.  I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

8.      At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

9.      I was trained on the rest break policy when I began working at Big Lots.  During my training, I watched videos on the rest break policy. I am also reminded of the rest break policy by the managers at my store.

10.     Associates are generally aware of when to take their own rest breaks and are proactive about taking them.  Managers will also remind associates when it is time for rest breaks if they are not taken. At my store, there is also an associate who keeps track of other associates' rest breaks and makes sure they know when to take them.

11.     During my employment at Big Lots, I have never been unable to take a full rest break. I have also never seen or heard of another associate being unable to take a full rest break.

12.     Associates who bring bags or make purchases are required to have their bags checked. Not everyone brings a bag, but I usually do. Bag checks are performed by whoever is working at the customer service desk. I just walk to the customer service desk, open my bag, and whoever is performing the bag check looks in. The entire process takes about a minute.

13.     No one has ever told me that I have to clock out before I have my bag checked.

3

14.     I sometimes work the closing shift. When it is time to leave, the manager will notify us that it is time to leave and go get our things. I then go to the back, grab my bag, and then clock out. I will then walk to the front of the store while the manager sets the alarm and we will leave together.

15.     Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment.

16.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock.  I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

17.     During my employment with Big Lots, I have never been scheduled for a split shift, have never been asked to work a split shift, and have never worked a split shift.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Pamela Vasquez

Executed this 19th day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:  _____          Date _____

Signed: _____

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:15-cv-01601JAK(ASx)<br>Judge:  Hon. John A. Kronstadt<br><br><br>**DECLARATION OF**<br>**RUBY VILLANUEVA** |

I, Ruby Villanueva, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.      I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as a cashier. I have been working with Big Lots for two years. I work in Store # 4301 in Watsonville, California.

2.      I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> I complete 5 hours of work (generally after the 3rd hour of work, but before the 5th hour of work). We are also required to take a second 30-minute meal period for shifts of more than 10 hours in a day, though shifts are rarely, if ever, scheduled long enough that two meal periods are required. I typically work twice a week and work 7 or 8 hour shifts. I have never worked a shift longer than 10 hours.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. The computer prevents us from clocking in early. Additionally, my meal periods are uninterrupted and free from work. If I am ever called during my lunch, I do not go. I am able to leave the store during my meal break if I want. Sometimes I leave, and sometimes I stay in the break room. There are plenty of seats available in the break room for use during meal and rest breaks. I have never worked during the time I am supposed to be taking my meal break.

6.      I was trained on the meal period policy when I began working at Big Lots. I am frequently reminded of the meal break policy by the managers at my store.

7.      My meal break is written into my store's daily schedule so I can see and determine when my meal period should be taken. A manager or the person working the customer

2

service station will also let us know when it is time for us to go on our meal breaks. If we need to take our meal break before they call us, we just go up and let them know.

8.     Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break.

9.     It is my understanding that associates who do not take their meal break on time automatically receive one hour of premium pay. Big Lots' payroll system automatically provides a premium payment (one hour of pay) to any associate any time the time records do not show that a required meal break was taken, if the required meal break was less than 30 minutes, or if the required meal break was taken late. I have never taken a late meal break and am not aware of any associate who has taken a meal break late. Managers stress taking our meal breaks on time. One time, the five hour mark was approaching and there was long line of customers. I stayed to help the customers past when my break was originally scheduled but made sure to clock out before the five hours.

10.     At all times during my employment, Big Lots has also had and enforced a rest break policy. The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Generally, I am scheduled to take breaks at around the 2 hour mark. Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.     I was trained on the rest break policy when I began working at Big Lots. I am frequently reminded of the rest break policy by the managers at my store.

3

12.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken. Managers and the person working at the customer service station also announce when it is time for us to take our rest breaks.

13.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break.

14.     At my store, anyone who brings a bag needs to have it checked before they leave. I received training on the bag check policy when I was initially hired and periodically throughout my employment. I do not usually bring bag, and less than half of the people at my store bring bags. Usually the older ladies working in the mornings are the ones who bring bags. I would say that less than half of the people in the store bring bags.

15.     The bag check occurs at the front of the store near the exit, usually at the customer service station. If the manager is up front the manager will do the back check, if the manager is unavailable the person working the customer service station will do it. I have never waited to have my bag checked. I am not aware of anyone waiting to get their bag checked.

16.     Bag checks are quick. The person whose bag is being checked just opens the bag so the person performing the check can see in. They are done on the way out of the store and take about a minute or less.

17.     Occasionally, I work the closing shift. When it is time to leave, a manager will sometimes announces that there are ten minutes left to wrap up and then we go to the front. Other times the manager does not say anything, and we know to go to the front on our own. The manager is usually up front when I get there. Then everyone clock out at the same time. After we clock out, the manager is right by the door and we do bag checks on the way out. The manager

4

sets the alarm after we leave. All in all, it takes about a minute between when we clock out and when we are out of the store.

18.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment. If someone even tries to tidy up the counter after they have clocked out, the managers will tell people to stop what they are doing.

19.     During my time at Big Lots, I have never worked off-the-clock and I am unaware of any associate working off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so.

20.     During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Ruby Villanueva


Executed this 23rd day of February 2016.


5

## <u>INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM</u>

*MY*       1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

*MY*       2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

*MY*       3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

*MY*       4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

*MY*       5.      You have no obligation to speak with us and may decline to be interviewed.

*MY*       6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

*MY*       7.      You will not benefit by speaking with us.

*MY*       8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

*MY*       9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

*MY*       10.     If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

*MY*       11.     You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

       I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name:    Michelle N Yi        Date 01/20/16

Signed:    *[signature]*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF MICHELLE YI** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Michelle Yi, being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.     I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an Associate Manager. I work inStore # 4365 in La Verne, California. I have been working for Big Lots in this store for about 7 years and have been an Associate Manager for about six years.

2.     I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration.  He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked.  I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration. The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy. Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours. The meal period must be taken <u>before</u> Icomplete 5 hours of work.I typically work an eight hour shift and take my meal break after working four hours.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. Additionally, my meal periods are uninterrupted and free from work. I never do any work on my meal period. I am able to leave the store during my meal period if I want to. I often go get food from outside the store and come back and eat it in the break room. There are plenty of seats available in the break room for use during meal and rest breaks.

6.      I was trained on the meal period policy when I began working at Big Lots.The managers at my store often remind associates of the meal period policy.

7.      My meal break is written into my store's daily schedule at the front of the store that is available for everyone to see. Managers will remind associates to take their meal break before they have worked five hours.

8.      Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break. I have also not taken a late meal break and am not aware of any associate taking a late meal break.

2

9.      At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof. Additionally, if I work more than 6 hours, the policy requires a second break.

10.     I was trained on the rest break policy when I began working at Big Lots. At my store, managers often remind associates of the rest break policy.

11.     Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken.

12.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break. I have never heard another associate complain about not being able to take a full rest break. During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

13.     Employees who bring bags are required to have them checked. Not everyone at the store brings a bag. I usually bring a purse and have the bag checked. Bag checks last only a few seconds and the person performing the bag check does not touch the any or anything in it.

14.     I do not work the closing shift at the store.

15.     Big Lots' policy additionally prohibits associates from working off-the-clock.  I was trained on this policy when I began working and have been reminded of the policy during my employment.

3

16.    During my time at Big Lots, I have never worked off-the-clock and I am unaware
of any associate working off-the-clock.  I have never been asked to work off-the-clock by a
manager, nor am I aware of a manager asking another associate to do so.

17.    During my employment with Big Lots, I have never been scheduled for a split
shift. I am also unaware of any associates ever being scheduled for a split shift.

I declare under penalty of perjury under the laws of the State of California and the United
States of America that the foregoing is true and correct.

_____
Michelle Yi

Executed this 20th day of January, 2016.

4

## INTERVIEW DISCLOSURE AND ACKNOWLEDGMENT FORM

1.      We wish to interview you for purposes of gathering evidence to support the defense of Big Lots Stores, Inc. and PNS Stores, Inc. ("Big Lots") in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al., Case No. 2:15-cv-01601 JAK (ASx)</u>, pending in the United States District Court for the Central District of California (the "<u>Hubbs</u> case").

2.      We are the attorneys who represent Big Lots in the <u>Hubbs</u> case.

3.      The <u>Hubbs</u> case is a purported class action in which the plaintiffs are asserting claims against Big Lots under California laws concerning meal periods, rest breaks, off-the-clock work, and split shifts.

4.      As an employee of Big Lots you are a potential class member in the <u>Hubbs</u> case.

5.      You have no obligation to speak with us and may decline to be interviewed.

6.      Your decision about whether or not to speak with us will not result in any form of retaliation or adverse employment consequences against you.

7.      You will not benefit by speaking with us.

8.      If you agree to speak with us, we want you to tell the truth and answer our questions as completely as possible based on your own personal knowledge.

9.      If you agree to speak with us, your statements could negatively impact any claim you might have as a member of the potential class in the <u>Hubbs</u> case.

10.      If at any point during the interview you wish to stop the interview and leave, you are free to do so and will not suffer any retaliation or adverse employment consequences as a result of your decision.

11.      You are free to consult with an attorney or anyone else of your choosing before you make your decision about whether or not to speak with us.

I have read and understand my rights as discussed above, and voluntarily agree to be interviewed by defense counsel in the <u>Hubbs</u> case for purposes of gathering evidence to support Big Lots defense.

Name: _Rick Zavala_____      Date _2/23/14_____

Signed: _Rick Zavala_____

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:15-cv-01601JAK(ASx) Judge: Hon. John A. Kronstadt |
| Plaintiffs, | |
| v. | **DECLARATION OF ERICK ZAVALA** |
| BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |

I, Erick Zavala being first duly cautioned and being more than age eighteen and sworn and competent to testify about the matters contained herein, hereby declare and state as follows upon personal knowledge or information:

1.  I am currently employed by Big Lots Stores, Inc. ("Big Lots" or the "Company") as an associate. I usually work at the register and doing stocking. I work in Store # 4301 in Watsonville, California.

2.  I voluntarily spoke with Alex Bluebond, counsel for my employer with respect to the issues set forth in this Declaration. He informed me that I was not required to speak with him and that I could have ended our conversation at any time. We spoke in a quiet place and I focused on, and carefully considered, all of the questions he asked. I understand that this Declaration was obtained for purposes of defending Big Lots from the claims asserted in the case of <u>Viola Hubbs, Brandon Coleman, and Tamika Williams v. Big Lots Stores, Inc. et al.</u>, Case No.

1

2:15-cv-01601 JAK (ASx), pending in the United States District Court for the Central District of California.

3.      It is my decision to submit this Declaration and I am under no obligation to do so. All statements below are provided upon careful reflection and consideration.  The statements made in this Declaration are truthful, accurate and voluntary.

4.      At all times during my employment, Big Lots has had and enforced a meal period policy.  Big Lots' meal period policy requires associates, such as me, to take a 30-minute unpaid meal period for shifts over 5 hours.  The meal period must be taken <u>before</u>  I complete 5 hours of work. Usually, I take my meal break around the fourth hour of working.

5.      In addition, we are required to clock out during meal periods and cannot clock in early from meal periods. Additionally, my meal periods are uninterrupted and free from work.  I am able to leave the store if I choose to do so, or I can eat lunch in the back. I do not work during the time I am supposed to be taking my meal break.

6.      I was trained on the meal period policy when I began working at Big Lots. The meal break training was done on the computer, and the managers talked to us about the meal break policy when we started working when started. Managers also remind associates about the meal break policy regularly.

7.      My meal break is written into my store's daily schedule.  A print out of the schedule is made available to associates so I can see and determine when my meal period should be taken. Most of the time someone will announce on the P.A. when it is time to take the break. If they do not, I know to go to the front of the store to let someone know that I am going on my meal break.

2

8.     Throughout my employment with Big Lots, I have never missed a meal break. I have also never heard of or observed a manager deny any other associate a meal break or witnessed a manager pressure an associate to work through or shorten a meal break. I have also never taken a meal break late. I know of only one time when associate took a meal break late. It was a new employee and she forgot to go on her meal break until her sixth hour. I do not know whether she was disciplined or not. That's the only time I have heard of someone taking a meal period late.

9.     On one occasion, I was scheduled to work a shift shorter than five hours, but ended up staying longer five hours because the store needed me. The managers told me that I had to take a meal break so that I would not receive a lunch violation, and I took that meal break.

10.    At all times during my employment, Big Lots has also had and enforced a rest break policy.  The Big Lots rest break policy requires associates, such as me, to take a paid 15 minute uninterrupted rest break for every 4 hours worked or major fraction thereof.  Generally, I am scheduled to take breaks at around the 2 hour mark.  Further, if I work more than 6 hours in a day, I will take my first rest break in the middle of the first half of the shift, and I will take the second rest break in the middle of the second half of the shift.  During my rest breaks, I remain on the clock, am relieved of all work, and am permitted to enjoy an uninterrupted rest break.

11.    When I started working about Big Lots, the managers talked to me about the rest break policy and remind associates of the policy regularly.

12.    Like meal breaks, my rest breaks are written into the store's daily schedule, and a print out of the schedule is made available so that I can see and determine when my rest break(s) should be taken. The person working at the customer service station also usually announces when it is time for associates to take their break.

3

13.     During my employment at Big Lots, I have never been unable to take a full rest break. I have never seen or heard of another associate being unable to take a full rest break. I have never heard another associate complain about not being able to take a full rest break. It is my understanding that an associate who does not get a rest break(s) is required to notify a manager and will receive one hour of premium pay.

14.     At my store, everyone who brings a bag is required to have it checked before they leave. I sometimes bring a bag to work. Usually a manager performs the bag checks, but if the manager is too busy the person at the customer service station will perform the bad check so I do not have to wait for a manager. I also perform bag checks when I work at the customer service station and the manager is not available. I do not touch the bag or anything in it. A bag check takes 10 to 15 seconds. The person whose bag is being checked simply opens the bag as they are leaving the store so that the person checking the bag can see in.

15.     I work the closing shift once a week. Associates generally know when it is time to leave during the closing shift and go to the front of the store. The manager will then make an announcement that is time to clock out. We will then get our things and leave the store. The entire process between when we clock out and when we are out of the store takes about 1 to 3 minutes.

16.     Big Lots' policy additionally prohibits associates from working off-the-clock. I was trained on this policy when I began working and have been reminded of the policy during my employment.

17.     During my time at Big Lots, I have never worked off-the-clock. I have never been asked to work off-the-clock by a manager, nor am I aware of a manager asking another associate to do so. I have seen one employee work off the clock while I have been at Big Lots. She simply

4

==cleaned things up in the store before she clocked in. No one told her to work off the clock. I do not know if managers are aware that she worked off the clock.==

18.   During my employment with Big Lots, I have never been scheduled for a split shift. I am also unaware of any associates ever being scheduled for a split shift.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


_Erick Zavala_
Erick Zavala


Executed this 23rd day of February 2016.