Mark A. Knueve (admitted *pro hac vice*)
Daniel J. Clark (admitted *pro hac vice*)
Adam J. Rocco (admitted *pro hac vice*)
VORYS, SATER, SEYMOUR and PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: 614.464.6436
Fax:  614.464.8054
Email: maknueve@vorys.com
         djclark@vorys.com
         ajrocco@vorys.com

Yvette Davis, State Bar No. 165777
HAIGHT, BROWN & BONESTEEL LLP
2050 Main Street, Suite 600
Irvine, CA 92614
Phone:  714.426.4607
Fax:  714.754.0826
Email:  ydavis@hbblaw.com

*Attorneys for Defendants Big Lots Stores, Inc. and PNS Stores, Inc.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BIG LOTS STORES, INC., an Ohio corporation; PNS STORES, INC., an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>Defendants.<br>_____ | Case No.: 2:15-cv-01601-JAK-ASx<br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>**Honorable: John A. Kronstadt**<br><br>Date: September 24, 2018<br>Time: 8:30 A.M.<br>Ctrm: 10B<br><br>Pretrial Conference: October 29, 2018<br>Trial: November 13, 2018 |

## I. INTRODUCTION

Although the *Troester* Court held that California had not adopted the federal de minimis standard,[1] the Court acknowledged that a de minimis defense may nonetheless exist under California law. The Court declined to provide a standard for such a California de minimis defense, holding only that the defense was not available under the facts of the case before it. *Troester* thus does not require this Court to reconsider its summary judgment decisions in this case because the facts of this case are distinguishable from the *Troester* facts in every material respect. Since *Troester* was limited to its facts, it does not apply here.

Additionally, the Court should not reconsider its decision on Plaintiffs' derivative penalty claims, which require Plaintiffs to prove that Defendants acted willfully or intentionally. There is obviously no legitimate basis for Plaintiffs to argue willfulness or intentional conduct here.

## II. ARGUMENT

### A. The *Troester* Court limited its decision to the facts of that case.

Although the *Troester* Court held that "California's wage and hour statutes [and] regulations [had not] adopted the de minimis doctrine found in the federal Fair Labor Standards Act," the Court "decline[d] to decide whether a de minimis principle may ever apply to wage and hour claims given the wide range of scenarios in which this issue arises." *Troester v. Starbucks Corp.*, 2018 Cal. LEXIS 5312, at *3, 20 (July 26, 2018). Instead, the Court decided "only whether the de minimis rule is applicable to the facts of this case as described by the Ninth Circuit," and determined that the defense was not available under those facts. *Id.* at 21.

In short, *Troester* limited its holding to the facts before it. As set forth below, the facts here are materially distinguishable from the facts in *Troester*. As a result, the Court should not reconsider and reverse its prior decisions in this case.

---

[1] Under the federal standard, daily amounts of up to ten minutes can be de minimis.

## B. The facts here are distinguishable from the facts in *Troester.*

*Troester* involved a single management-level employee, Douglas Troester. The *Troester* Court analyzed the tasks performed by Troester "off the clock," the regularity of the work, the amount of "off the clock" time per shift, and the aggregate amount of "off the clock" time across Troester's employment. In every material respect, the *Troester* facts are distinguishable from the facts present here.

With regard to the tasks performed by Troester, the Court stated as follows:

> Troester submitted evidence that during the alleged class period, Starbucks' computer software required him to clock out on every closing shift before initiating the software's "close store procedure" on a separate computer terminal in the back office. The close store procedure transmitted daily sales, profit and loss, and store inventory to Starbuck's corporate headquarters. After Troester completed this task, he activated the alarm, exited the store, and locked the front door. Troester also submitted evidence that he walked his coworkers to their cars in compliance with Starbuck's policy. In addition, Troester submitted evidence that he occasionally reopened the store to allow employees to retrieve items they left behind, waited with employees for their rides to arrive, or brought in store patio furniture mistakenly left outside.

*Troester*, at *4-5. Significantly, Starbucks and Troester stipulated that all of these tasks were compensable. *Id* at *21.

Here, in contrast, after clock out, the manager on duty only had to set the alarm and lock the front door.[2] ECF 287 at pp. 5-6. Non-management employees had no tasks to perform and simply left after the alarm was set. *Id.* No employee was required to initiate a software procedure after clocking out. There is no evidence that any employee was required to walk coworkers to their cars, and no evidence that

---

[2] Coleman testified that he occasionally checked employees' bags after clocking out. Performing this task off the clock violated Company policy. (ECF 83 at 15)

2

any employee was required to reopen the store to retrieve items, wait for rides to arrive, or bring in store patio furniture. Moreover, as discussed in more detail below, the parties have not stipulated that this time is compensable.

With regard to regularity, the *Troester* Court noted that the district court had **acknowledged** that "Troester's store closing activities were regularly occurring" and performed "on a daily basis." *Troester*, at *6, 21. Here, in contrast, the Court found that the evidence was **not** sufficient to show regularity. ECF 287 at p. 11. Plaintiff Brandon Coleman "testified that most of the time he did not work the closing shift." ECF 287 at p. 2. The Court also noted that there were declarations from Class Members stating that they did not regularly work closing shifts, and that the parties' experts opined that Class Members worked a shift with a "gap" somewhere between one in every 5.6 shifts and one in every 20 shifts. *Id.* at 10-11. This is obviously materially distinguishable from the "daily" situation in *Troester*.

With regard to the amount of time per shift, Troester's "closing tasks required Troester to work four to 10 additional minutes each day." *Troester* at *5. Here, the Court noted that there was "evidence that Class Members left their stores less than two minutes after clocking out, and some Class Members declared that this process lasted only a few seconds."[3] ECF 287 at p. 8. Plaintiff's expert opined that the median "gap" was 2.33 minutes. *Id.* Defendant's expert opined that the median "gap" across the entire class period was 2.35 minutes, and only 1.4 minutes under the more accurate Empower time-keeping system. *Id.* at pp. 8-9. Again, the evidence here is materially distinguishable from the evidence in *Troester*.

Finally, with regard to the aggregate amount of time, the *Troester* Court stated: "Over the 17-month period of his employment, Troester's unpaid time

---

[3] Coleman testified that it "took about a minute" to set the alarm, and that depending on the number of people on the closing shift he would spend one to five minutes after clocking out. ECF 287 at p. 8.

3
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

totaled approximately 12 hours and 50 minutes." *Troester* at *6. Here, in contrast, the Court found that "over a 14-month period, [Coleman's] total "gap" time was 43 minutes" — less than one hour. ECF 287 at fn 2. With regard to Class Members, Plaintiff's expert found that the median aggregate amount of time was 26.4 minutes (less than an hour), and Defendant's expert found that the median aggregate amount was 6 minutes.[4] *Id.* at 8-9. This is materially distinguishable from the nearly 13 hours of unpaid time that Troester worked.

In summary, *Troester* was limited to its facts, which are distinguishable in every material respect from the facts in the present case. *Troester* does not require this Court to reconsider or reverse its prior decision.[5]

### C. **This case is distinguishable from *Troester* because the "gap" is not compensable time.**

As discussed above, Troester performed a number of tasks after clocking out, and the parties in that case stipulated that all of those tasks were compensable.

Here, in contrast, the parties have not stipulated that the "gap" is compensable. After clock out, non-management employees perform no tasks. They simply gather their belongings, walk to the front of the store, and exit. This time is

---

[4] Plaintiffs' expert opined that the mean aggregate "gap" for Class Members was 143.4 minutes. This is misleading because it excluded employees who did not experience a "gap," and included a few outliers who dramatically drove up the average. Nonetheless, even this inflated number is materially distinguishable from the nearly 13 hours at issue in *Troester*.

[5] Plaintiffs also ask the Court to reconsider its decision granting summary judgment on Plaintiffs' individual bag check claim. Those facts are even more distinguishable from *Troester*. As this Court found, Coleman almost never had a bag check, and spent "little or no time on bag checks … in most shifts." ECF 118, p. 9. Hubbs testified that the process took only "two, three seconds" and that she would sometimes not bring a bag to work, which meant she would not have a bag check. *Id.* Bag checks thus did not occur on a "regular" or "daily basis" and the amount of time was significantly less than the daily four to ten minutes spent in *Troester*.

not compensable. Meanwhile, the only tasks performed by the manager are setting the alarm (which takes a few seconds) and locking the door. ECF 287 at p. 6. The only arguably compensable tasks—setting the alarm and locking the door—are performed by one employee and take a few seconds.

A similar circumstance was addressed in *Chavez v. Converse, Inc.*, 2017 U.S. Dist. LEXIS 169167, *24 (N.D. Cal. Oct. 11, 2017), in which the court stated:

> It does not make sense to compensate employees for time spent packing up and walking to the exit because store employees pack up and then walk to the exit with or without an exit inspection. Indeed, there is no indication that an employee could not use the restroom, socialize, request a Lyft, or purchase merchandise before undergoing the exit inspection. As far as the Court knows, Converse does not control its employees or foreclose on their activities while they pack up and walk to the exit.

Similarly, here, it would not make sense to compensate employees for time gathering belongings or walking to the front door.[6]

This further distinguishes *Troester* and also underscores the truly de minimis nature of the time here. The only "tasks" performed are setting the alarm and locking the door, which are performed by the manager only, and which only take seconds. By any objective and rationale measure, this is de minimis.

### D. **The Court should not reconsider its decision on Plaintiffs' derivative penalty claims because Defendants were not willful.**

Plaintiffs cannot recover penalties under Code Sections 203, 204,[7] and 226,[8] or liquidated damages under Section 1194.2, because there can be no question that

---

[6] This is particularly true in those instances when an employee spent more than a minute or two between clocking out and setting the alarm. Since it only takes a few seconds to set the alarm, there is no reason to believe that any employee would be performing "work" during a longer period of time.

[7] Plaintiffs' claim under Cal. Lab. Code § 204 (Seventh Cause of Action) fails because no private right of action exists under Section 204. *See, e.g.*, *Unger v.*

5

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

Big Lots did not act willfully or intentionally. Where there is a "good faith dispute" in law, the conduct is not willful or intentional, regardless of whether or not there is an actual violation.[9] *See* ECF at 196 at 28-35. "A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or in fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008). Legal uncertainty as to the merits of a claim provides an employer with a presumption of a good faith dispute. *Id.* at 1202 (citing *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005)); *cf. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (penalties improper where there are multiple, reasonable interpretations of law); *Home Depot*, 2017 U.S. Dist. LEXIS 145120, *10 (summary judgment on section 203 and 226 claims where good faith dispute as to whether workday designation was improper).

---

*Fannie Mae*, No. SACV 15-00951-CJC(JCx), 2015 U.S. Dist. LEXIS 93491, at *6 (C.D. Cal. July 16, 2015); *see also* ECF 196 at 33.

[8] Plaintiffs' claims under Section 226 fail for the separate reason that Plaintiffs do not allege that their wage statements incorrectly reflected the amounts that were actually paid; they allege that the wage statements did not include the "gap" time. This claim is not actionable under California law. *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018).

[9] Section 203 provides for penalties only when an employer "willfully" fails to pay wages at the time an employee is terminated. Cal. Lab. Code § 203. Section 226 provides for penalties only when a plaintiff can establish a "knowing and intentional" failure to provide accurate wage statements. See Cal. Lab. Code § 226(e). A court may decline to impose liquidated damages under Section 1194.2, if an employer shows that (1) it had "reasonable grounds for believing the act or omission" giving rise to the penalties did not violate California law, and (2) the act or omission was in good faith..." Cal. Lab. Code § 1194.2(b).

Defendants reasonably believe that Big Lots' closing shift process is legally compliant because any "gap" between the time when an employee clocks out and the time the alarm is set is de minimis. This Court agreed with Defendants (ECF ECF 118 at 9-10; ECF 123 at 8-9; ECF 287), as did numerous other Courts and the DLSE. (ECF 196 at 20-21). Indeed, when certifying the question in *Troester*, the Ninth Circuit stated that two of its panels had previously applied the *de minimis* doctrine to California wage claims in the absence of a determination on the issue by the California Supreme Court. 680 Fed. App'x at 513 (citing *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1083 (9th Cir. 2016); *Gillings v. Time Warner Cable LLC*, 583 Fed. App'x 712 (9th Cir. 2014)). Defendants thus had a good faith belief that the "gap" was de minimis. *See Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 177 Cal. Rptr. 803, 804 (1981) (penalties not appropriate where employer setoff employee debt with wages upon employee's discharge because at time California courts were divided as to when employer had right to "set off" employee's debt). Accordingly, the Court should not reconsider its prior decision granting summary judgment on Plaintiffs' derivative penalty claims.

### E. To the extent the Court reconsiders its summary judgment decisions, it should also reconsider its decision granting class certification.

In the event the Court reconsiders its decisions granting summary judgment, the Court should also reconsider its decision granting class certification to the Closing Shift class.[10] Determining whether an undefined California de minimis standard applies to each and every class member would involve thousands of individualized inquiries. This is particularly true because the compensability of the "gap" (or a portion of the "gap") would depend on what the class member was doing

---

[10] "[A] district court may decertify a class at any time." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (internal citations omitted).

Vorys, Sater, Seymour and Pease LLP
52 E. Gay St.
Columbus, OH 43215

during the time. In *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 628 (S.D. Cal. 2014), the court refused to certify a similar class and stated:

> [D]etermining whether the Alleged Policy existed, was enforced on a companywide basis, and operated in a way that resulted in employees being under Costco's control, will only answer the question of whether employees were <u>sometimes</u> detained without pay as a result of the Alleged Policy. ... Costco has offered convincing evidence that not all employees experienced unpaid delay as a result of the Alleged Policy.... And, if it can only be determined on a classwide basis whether the Alleged Policy sometimes resulted in unpaid [off the clock] time, individualized determinations will be required to determine the question of <u>liability.</u> This is because liability hinges on whether employees actually performed [off the clock] work.

*Id.* at 624-25 (emphasis original). *See also Koike v. Starbucks Corp.*, 378 Fed. App'x 659, 661-62 (9th Cir. 2010) (affirming denial of class certification based on finding that "individualized factual determinations were required to determine whether class members did in fact engage in OTC work and whether [the employer] had actual or constructive knowledge of the OTC work performed."); *Heffelfinger v. Elec. Data Sys. Corp.*, 2013 U.S. Dist. LEXIS 201979 (C.D. Cal. Feb. 26, 2013) (decertifying class after summary judgment was partially reversed).

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion for Reconsideration.

Dated: August 27, 2018      Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP
Mark A. Knueve
Daniel J. Clark
Adam J. Rocco

HAIGHT, BROWN & BONESTEEL LLP
Yvette Davis

By: */s/ Mark A. Knueve*_____
Mark A. Knueve
Big Lots Stores, Inc. and PNS Stores, Inc.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 27, 2018, the foregoing was filed with the Clerk of the Court for the United States District Court for the Central District of California via the Court's CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

*/s/ Mark A. Knueve*
Mark A. Knueve