LAW OFFICES OF MARK YABLONOVICH
Mark Yablonovich, Esq., Cal. State Bar No. 186670
mark@yablonovichlaw.com
1875 Century Park East, Suite 700
Los Angeles, California 90067-2508
Telephone: (310) 286-0246 • Fax: (310) 407-5391

Attorneys for Plaintiffs Viola Hubbs,
Brandon Coleman, Tamika Williams, and the Class

(*Additional Counsel on Next Page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA HUBBS, BRANDON COLEMAN, TAMIKA WILLIAMS, | Case No.: 2:15-cv-01601 JAK (ASx) |
| Plaintiffs, | [Transfer pending: United States District Court for the Northern District of California, Case No. 17-cv-06030-RS] |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| BIG LOTS STORES, INC., et al., | |
| Defendants. | |
| ROXANNE SLUSHER, | [Filed concurrently with Declarations of Mark Yablonovich; Shaun Setareh; Raul Perez; Matthew Helland; Declarations of Plaintiffs Hubbs, Coleman, Williams, and Slusher; [Proposed] Order Granting Motion for Preliminary Approval] |
| Plaintiff, | |
| vs. | |
| BIG LOTS STORES, INC., et al., | [ORAL ARGUMENT WAIVED] |
| Defendants. | |

Matthew C. Helland, Cal. State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone:    (415) 277-7235
Facsimile:    (415) 277-7238

Paul J. Lukas (admitted *pro hac vice*)
lukas@nka.com
Matthew H. Morgan (admitted *pro hac vice*)
morgan@nka.com
NICHOLS KASTER, PLLP
IDS Center
80 South 8th Street Suite 4600
Minneapolis, MN 55402
Telephone:    (612) 256-3200
Facsimile:    (612) 338-4878

In association with counsel for Plaintiffs

Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
SETAREH LAW GROUP
9454 Wilshire Boulevard, Suite 907
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff Roxanne Slusher

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TO THE HONORABLE COURT, TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs Viola Hubbs, Brandon Coleman, Tamika Williams and Roxanne Slusher ("Plaintiffs")[1] individually, and on behalf of those similarly situated, will and hereby do move this Court to:

1.      Preliminarily approve the settlement described in the Joint Stipulation of Class Action Settlement and Release, attached as Exhibit 1 to the Declaration of Mark Yablonovich;

2.      Conditionally certify the Settlement Class;

3.      Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

4.      Appoint Simpluris, Inc. as the Settlement Administrator; and

5.      Set a hearing date for final approval of the settlement.

This Motion is based on: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declarations of Mark Yablonovich, Matthew Helland, Shaun Setareh, and Raul Perez; (4) the Declarations of Viola Hubbs, Brandon Coleman, Tamika Williams, and Roxanne Slusher; (5) the Joint Stipulation of Class Action Settlement and Release; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Motion for Preliminary Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) such other documentary evidence or argument as may be requested by the Court.

---

[1] The Parties in *Slusher v. Big Lots Stores, Inc., et al.*, United States District Court for the Northern District of California, Case No. 4:17-cv-06030 RS (the "*Slusher* Action") are in the process of entering into a stipulation that would transfer that action to this Court for settlement purposes only.

1

**CENTRAL DISTRICT OF CALIFORNIA LOCAL CIVIL RULE 7-3**

2      This Motion is unopposed by Defendants. Nevertheless, a conference of

3  counsel pursuant to Local Rule 7-3 took place on October 22, 2019, to address

4  issues that may arise relating to the approval of the Settlement. (Declaration of

5  Mark Yablonovich, ¶ 2.) The Parties also stipulated to relief from the Court's page

6  limit, which the Court signed. (*Id.*; ECF No. 338.) The Parties have agreed to

7  waive oral argument. (*Id.* ¶ 2.)

8

9  Dated: December 4, 2019              Respectfully submitted,

10                                      Law Offices of Mark Yablonovich

11

12                           By: */S/ Mark Yablonovich*

13                               Mark Yablonovich
                                 Attorneys for Plaintiffs Viola Hubbs,
14                               Brandon Coleman, Tamika Williams, and
                                 the Class
15

16  Dated: December 4, 2019              Respectfully submitted,

                                        Setareh Law Group
17

18

19                           By:  */S/ Shaun Setareh*
                                 Shaun Setareh
20                               Attorneys for Plaintiff Roxanne Slusher

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   FACTS AND PROCEDURE ................................................................... 3

      A.   Overview of the Litigation ........................................................... 3

      B.   Plaintiffs' Counsel Conducted a Thorough Investigation ............... 4

      C.   The Parties Negotiated the Settlement at Arm's-Length
           After Mediation .......................................................................... 5

      D.   The Proposed Settlement Fully Resolves Plaintiffs'
           Claims ......................................................................................... 5

           1.   Composition of the Settlement Class .................................. 5

           2.   Settlement Consideration ................................................... 6

           3.   Release by the Settlement Class ......................................... 6

           4.   Non-Monetary Relief Conferred on Employees .................. 7

III.  ARGUMENT ......................................................................................... 7

      A.   Conditional Class Certification Is Appropriate for
           Settlement Purposes .................................................................... 7

           1.   All Rule 23(a) Requisites For Certification Are
                Present ............................................................................... 8

                a)   Rule 23(a)(1) —Numerosity Is Satisfied ................. 9

                b)   Rule 23(a)(2) —Commonality Is Satisfied ............... 9

                c)   Rule 23(a)(3) —Typicality Is Satisfied .................... 9

                d)   Rule 23(a)(4) —Adequacy of
                     Representation Is Satisfied ...................................... 9

           2.   Plaintiffs' Claims Present Predominant Questions
                of Law and Fact ............................................................... 10

3.    The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement .................................................................. 11

B.    The Court Should Grant the Motion for Preliminary Approval of the Class Action Settlement ...................................... 12

    1.    Courts Review Class Action Settlements to Ensure That The Terms Are Fair, Adequate and Reasonable .................................................................. 12

    2.    The Settlement Is The Product of Arms'-Length Negotiations And Is Therefore Entitled to a Presumption of Fairness ...................................... 13

    3.    The Relief Provided by the Settlement is Fair and Reasonable .................................................................. 14

        a)    The Class Settlement is Within the Range of Reasonableness ...................................... 15

        b)    The Penalties Secured by the PAGA Settlement Are "Genuine" and "Meaningful" and Fulfill PAGA's Purpose .............. 20

    4.    The Settlement Provides for an Equitable Method of Allocating Relief to Class Members ................................ 23

C.    There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members ...................... 25

D.    The Court Should Preliminarily Approve the Negotiated Class Representative Enhancement Payments ................................ 26

E.    The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs .............................................................. 27

IV.    CONCLUSION ........................................................................ 30

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013
U.S. Dist. LEXIS 189820 (C.D. Cal. Dec. 30, 2013) ..........................................23

*Alonzo v. Maximus, Inc*., 275 F.R.D. 513 (C.D. Cal. 2011)....................................8

*Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit
Services, Inc.*, No. 05cv1199–IEG–CAB, 2009 U.S. Dist. LEXIS
69842 (S.D. Cal. Aug. 10, 2009) ......................................................................21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................9

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431
(E.D. Cal. July 2, 2013)......................................................................................29

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ..................................................8

*Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 U.S.
Dist. LEXIS 162880 (C.D. Cal. Nov. 18, 2014)................................................29

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ....................13

*Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030 (N.D. Cal. 2016) .................................22

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)........................................14

*Dalton v. Lee Publ'ns, Inc.*, No. 08-cv-1072 BTM, 2011 U.S. Dist.
LEXIS 29835 (S.D. Cal. Mar. 22, 2011) ...........................................................17

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140,
40 L. Ed. 2d 732 (1974) .....................................................................................11

*Elliott v. Rolling Frito-Lay Sales, LP*, No. 11-01730 DOC, 2014 U.S.
Dist. LEXIS 83796 (C.D. Cal. June 12, 2014) ..................................................29

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX),
2011 U.S. Dist. LEXIS 154590 (C.D. Cal. Aug. 12, 2011)..........................22, 23

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ..............................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).................................9, 10

*Henderson v. J.M. Smucker Company*, 2013 U.S. Dist. LEXIS 87030

(C.D. Cal. 2013) ...................................................................................29

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF

(HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ....................13

*In re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ........................................10

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935

(9th Cir. 2011) ...................................................................................25

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436

(S.D.N.Y. 2004) ...................................................................................16

*In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166

(E.D. Pa. 2000) ...................................................................................16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ...........................27

*In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078

(N.D. Cal. 2007) ...................................................................................15

*In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S.

Dist. LEXIS 168219 (E.D. Cal. Nov. 27, 2012 *adopted in full*, 2013

U.S. Dist. LEXIS 380 (E.D. Cal. Jan. 2, 2013)) ...................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods.*

*Liab. Litig,*. 2016 U.S. Dist. LEXIS 99071 (N.D. Cal. July 26,

2016)...................................................................................13, 14, 25

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) ...........................8

*La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP,

2014 U.S. Dist. LEXIS 90367 (C.D. Cal. June 25, 2014) ...................................26

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th. Cir. 2013) ...........................8

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012

U.S. Dist. LEXIS 83677 (N.D. Cal. June 15, 2012) ...........................................23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)...........................15

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470
    (9th Cir. 1995) .................................................................................27

*Matter of Continental Illinois Securities Litig.*, 962 F.2d 566
    (7th Cir. 1992) .................................................................................27

*McAtee v. Capital One, F.S.B.*, 479 F.3d 1143 (9th Cir. 2007) ............................27

*Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 U.S.
    Dist. LEXIS 103052 ((S.D. Cal. Aug. 4, 2016) ...............................14

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
    (C.D. Cal. 2004) ..............................................................................16

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ....................................................16

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110
    (N.D. Cal. Aug. 18, 2016) ...............................................................20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615
    (9th Cir. 1982) .................................................................................15

*Pedroza v. PetSmart, Inc.*, No. 11-298 GHK, 2012 U.S. Dist. LEXIS
    189530 (C.D. Cal. June 14, 2012) ...................................................17

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................15, 26

*Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist.
    LEXIS 107857 (N.D. Cal. Sept. 29, 2010) ......................................26

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015).................20

*Salazar v. Sysco Central Cal.*, No. 15-01758-DAD, 2017 U.S. Dist.
    LEXIS 14971 (E.D. Cal. Feb. 2, 2017) ............................................21

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010
    U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) ...........................30

*Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119
    (C.D. Cal. Feb. 25, 2008) ................................................................26

*Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 U.S. Dist.
    LEXIS 92067 (N.D. Cal. Aug. 9, 2010) ...........................................30

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Trang v. Turbine Engine Components Technologies Corp.*,
   No. CV 12–07658 DDP (RZx), 2012 U.S. Dist. LEXIS 179170
   (C.D. Cal. Dec. 19, 2012)....................................................................21
*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482
   (E.D. Cal. Mar. 9, 2010)....................................................................30
*Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595
   (S.D.N.Y. 1989) ..................................................................................9
*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................27
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011)...................8
*Woods v. Vector Marketing Corp.*, No. C-14-0264 EMC, 2015 U.S.
   Dist. LEXIS 67303 (N.D. Cal. May 22, 2015) .................................17
*Zinser v. Accufix Research Inst.*, 253 F.3d 1180 (9th Cir. 2001) ...........7

STATE CASES

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ...............22
*Cates v. Chiang*, 213 Cal. App. 4th 791 (2013) ....................................29
*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)............................28
*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004)..................29
*Hogar v. Community Development Commission of the City of
   Escondido*, 157 Cal. App. 4th 1358 (2007)....................................29
*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) ....20
*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016)...............................28
*Lawson v. ZB, N.A.*, 8 Cal. 5th 175 (Sept. 12, 2019)............................21
*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000)...................27
*New Cingular Wireless PCS, LLC v. Pub. Utilities Comm'n*, 246 Cal.
   App. 4th 784 (2016) .........................................................................21
*Serrano v. Priest*, 20 Cal. 3d 25 (1977)................................................27
*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012) .................23

*Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604 (2004) ....................29

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a) ........................................................................................7

Fed. R. Civ. P. 23(a)(2)...................................................................................10

Fed. R. Civ. P. 23(c)(2)....................................................................................12

Fed. R. Civ. P. 23(e) ........................................................................................12

Fed. R. Civ. P. 23(e)(1)(A) .............................................................................12

**STATE STATUTES**

8 Cal. Code Reg. § 11070, subdivisions 4(C) and 14.......................................4

Cal. Bus. & Prof. Code §§ 17200 *et seq* ........................................................4

Cal. Lab. Code § 201 .........................................................................................3

Cal. Lab. Code § 202 .........................................................................................3

Cal. Lab. Code § 204 .........................................................................................3

Cal. Lab. Code § 226(a).....................................................................................3

Cal. Lab. Code § 226.7......................................................................................3

Cal. Lab. Code § 510 .........................................................................................3

Cal. Lab. Code § 512(a).....................................................................................3

Cal. Lab. Code § 1194 .......................................................................................3

Cal. Lab. Code § 1197 ....................................................................................3, 4

Cal. Lab. Code § 1197.1 ....................................................................................3

Cal. Lab. Code § 1198 .......................................................................................3

Cal. Lab. Code §§ 2698 *et seq.* (Priv. Attys. Gen. Act (PAGA))............4, 20, 22

**SECONDARY AUTHORITIES**

Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An*

   *Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-

78, March 2004, at 35................................................................29

Manual for Complex Litigation § 21.632 (4th ed. 2004) ......................12

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995)

   (Manual) § 30.211 ........................................................11, 12

*Newberg on Class Actions* § 11:38 (4th ed. 2008) ..............................26

Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil

   Procedure Before Trial, California 9th Cir. Editions (The Rutter

   Group, 2015) ¶ 10:497.5 .................................................27

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs Viola Hubbs, Brandon Coleman, Tamika Williams, and Roxanne Slusher ("Plaintiffs") seek preliminary approval of the Joint Stipulation of Class Action Settlement and Release,[2] which provides substantial monetary relief for approximately 31,500 current and former employees of Defendants Big Lots Stores, Inc., PNS Stores, Inc., and Big Lots F&S, Inc.[3] ("Big Lots" or "Defendants") (Plaintiffs and Defendants together the "Parties") as well as non-monetary relief to current (and future) employees.

The material terms of the Settlement provide for:

    (1)    Conditional certification of two classes comprised of:

        (a)    All persons employed by Defendants in California as non-exempt employees who worked at any of Defendants' California retail stores at any time during the Class Period. The Class Period is February 7, 2010 to February 3, 2020 ("Class Members").

        (b)    All persons employed by Defendants in California as non-exempt employees who worked at least one Closing Shift at any of Defendants' California retail stores at any time during the period from February 7, 2010 to May 23, 2017 ("Closing Shift Class Members").

    (2)    A **non-reversionary** Class Settlement Amount of $7,000,000:

        (a)    "Net Settlement Amount" (i.e., the Class Settlement Amount minus the Class Representative Enhancement Payments, Settlement Administration Costs, LWDA Payment, Attorneys' Fees and Costs, and Employer portion of payroll taxes), which will be allocated to Participating Class Members on a pro-rata

---

[2] Referred to as "Settlement Agreement" or "Settlement." Unless indicated otherwise, capitalized terms have the same meaning as defined by the Settlement Agreement.

[3] Defendant Big Lots F&S, Inc. was not named in the *Hubbs* action but is a defendant in the *Slusher* case.

basis according to the number of pay periods worked. **The entire Net Settlement Amount will be paid to all Class Members who do not opt out, and without the need to submit claim forms.**

    (b)    Attorneys' fees in the amount of one-third of the Class Settlement Amount (or $2,333,333.33) and litigation costs and expenses not to exceed $500,000.

    (c)    Settlement Administration Costs, not to exceed $150,000, to be paid to the settlement administrator, Simpluris, Inc.

    (d)    Class Representative Enhancement Payments of up to $15,000 each to Plaintiffs Viola Hubbs, Brandon Coleman and Tamika Williams and up to $10,000 to Roxanne Slusher for their service on behalf of the Settlement Class.

(3)    Non-monetary relief conferred on current Class Members: Defendants implemented a seating policy change for the provision of stools throughout their California stores starting in March of 2017; and commencing in March of 2019, Defendants began to add paid time to all closing shift employees and all opening shift employees (Settlement Agreement, ¶ 37.a.), to account for "gap time."[4]

The Settlement was negotiated at arm's length with guidance from David A. Rotman, a well-respected class action mediator, and confers substantial benefits to Class Members. By settling now rather than proceeding to trial, Class Members will not have to wait years for relief, nor bear the risk of decertification or Defendants prevailing at trial.

As discussed below, the proposed Settlement satisfies all criteria for preliminary approval under federal law, falls within the range of reasonableness and is appropriate for provisional certification. Accordingly, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement.

---

[4] "Gap time" is defined as the difference between an employee's clock in/clock out time and the alarm activation/deactivation timestamp.

## II.     FACTS AND PROCEDURE

### A.     Overview of the Litigation

Defendants operate approximately 160 discount retail stores in California and have employed approximately 31,500 non-exempt employees during the Class Period. (Yablonovich Decl. ¶ 14.)

Plaintiff Viola Hubbs worked as an hourly paid cashier in Los Angeles from July 2010 to August 2013. (Hubbs Decl. ¶ 2.) Defendants employed Plaintiff Brandon Coleman from 2005 to 2015 and Tamika Williams from 2010 to 2015 as hourly paid associates in Big Lots' San Bernardino store. (Coleman Decl. ¶ 2; Williams Decl. ¶ 2.) Plaintiff Roxanne Slusher was employed by Defendants as an hourly paid associate during the Class Period. (Slusher Decl. ¶ 4.)

On February 7, 2014, Ms. Hubbs filed her Complaint in Los Angeles County Superior Court against Defendants alleging violations of California wage and hour laws.[5] (Yablonovich Decl. ¶ 3.)

On October 26, 2015, Plaintiffs filed a Second Amended Complaint that added Mr. Coleman and Ms. Williams as plaintiffs. (ECF No. 56.)

Plaintiffs' operative Third Amended Complaint (ECF No. 151) alleges claims for violations of California Labor Code:[6] (1) sections 510 and 1198 (unpaid overtime); (2) sections 1194, 1197, and 1197.1 (unpaid minimum wages); (3) sections 226.7, and 512(a) (meal period violations); (4) section 226.7 (rest period violations); (5) section 226(a) (non-compliant wage statements); (6) sections 201-202 (wages not timely paid on termination); (7) section 204 (wages not timely

---

[5] Capstone Law APC represented Ms. Hubbs at the time the Complaint was filed. On January 15, 2015, the Law Offices of Mark Yablonovich ("LOMY") substituted in as Plaintiff's counsel. (*See* ECF No. 9.) Capstone and LOMY continued to work cooperatively as that was in the best interest of the class members. (Yablonovich Decl. fn 1; Perez Decl. ¶ 2.)

[6] Unless indicated otherwise, further statutory references are to the California Labor Code.

paid during employment); (8) section 1197 and California Code of Regulations Title 8, Section 11070, subdivisions 4(C) and 14 (split shift violations and failure to provide suitable seating); (9) sections 2698, *et seq*. (Private Attorneys General Act ("PAGA")) and (10) California Business & Professions Code sections 17200, *et seq*. In addition to all the above claims, the *Slusher* Action also asserts Section 223 violations.

On February 8, 2017, Plaintiffs filed a Motion for Class Certification (ECF No. 87). Plaintiffs sought to certify multiple subclasses, including the Closing Shift Class. On May 23, 2017, the Court granted in part and denied in part the Motion for Class Certification. (ECF No. 123.) The Court certified the "Closing Shift Class" only, which sought unpaid wages resulting from Defendants' closing procedures. (*Id.*, Page ID # 4222.)

## B.     Plaintiffs' Counsel Conducted a Thorough Investigation

The Settlement is the product of informed negotiations following extensive investigation by Plaintiffs' Counsel into the claims in controversy, their defenses, and the developing body of law. The investigation entailed formal discovery methods, including interrogatories, document requests, requests for admission, and numerous depositions. In response to Plaintiffs' discovery requests, Plaintiffs received and analyzed millions of data points, thousands of pages of documents, including Defendants' written policies, employee time and payroll records, store alarm records, register transaction data, wage statements, floor plans, Daily Trackers, bag check logs, seating policies, emails regarding the provision of seating accommodations, and numerous other documents. (Yablonovich Decl. ¶¶ 12, 13, 15.) Plaintiffs also interviewed hundreds of employees, visited numerous stores, and conducted extensive expert discovery. (*Id.*)

By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel can opine that the Settlement is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts

and circumstances, including the risk of significant delay and uncertainty associated with litigation, and various defenses asserted by Defendants. (Yablonovich Decl. ¶ 17; Setareh Decl. ¶ 11.)

## C.     The Parties Negotiated the Settlement at Arm's-Length After Mediation

The Parties participated in a mediation on August 13, 2019, with David A. Rotman, an experienced mediator of wage and hour representative actions.[7] (Yablonovich Decl. ¶ 16.) After extensive discussions, both before and after the mediation with Mr. Rotman, the Parties agreed to resolve the matter. (*Id.*) The complete terms of the Parties' Settlement are set forth in the Joint Stipulation of Class Action Settlement and Release. (*Id.*, Ex. 1.)

## D.     The Proposed Settlement Fully Resolves Plaintiffs' Claims

### 1.     Composition of the Settlement Class

The proposed Settlement Class consists of all persons employed by Defendants in California as non-exempt employees who worked at any of Defendants' California retail stores at any time from February 7, 2010 to February 3, 2020. (Ex. 1 to Yablonovich Decl., Settlement Agreement ¶¶ 5-6.) There are approximately 31,500 Settlement Class Members. (Yablonovich Decl. ¶ 14.)

The proposed Closing Shift Class, which is a subset of the Settlement Class, consists of all Settlement Class Members who worked at least one Closing Shift at any of Defendants' California retail stores at any time during the Closing Shift Class Period, which is from February 7, 2010 to May 23, 2017. (Ex. 1 to Yablonovich Decl., Settlement Agreement ¶¶ 10-11.)

---

[7] The Parties mediated the *Hubbs* matter on March 23, 2016, with Mark Rudy and continued mediated discussions through Mr. Rudy until early 2019. (Yablonovich Decl. fn 3.)

### 2.    Settlement Consideration

Plaintiffs and Defendants have agreed to settle the claims in exchange for the Settlement Amount of $7,000,000, which includes: (1) settlement payments to Class Members; (2) $2,333,333 in requested attorneys' fees and up to $500,000, in requested litigation costs to Plaintiffs' Counsel; (3) Settlement Administration Costs of approximately $150,000; (4) Class Representative Enhancement Payments of up to $15,000 each to Plaintiffs Hubbs, Coleman and Williams and up to $10,000 to Plaintiff Slusher; (5) employer and employee payroll taxes; and (6) a PAGA settlement of $150,000, 75% of which is to be paid to the Labor and Workforce Development Agency ("LWDA") and 25% to the employees. (Ex. 1, ¶¶ 2, 7, 8, 20.)

Subject to the Court's approval of Attorneys' Fees and Costs, Settlement Administration Costs, the LWDA Payment, the Class Representative Enhancement Payments, and employer payroll taxes, the Net Settlement Amount will be distributed to all Class Members who do not opt out.

Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount will be paid to Class Members, and without the need to submit claim forms. (Ex. 1, ¶ 35.c.i.)

### 3.    Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiffs and Class Members who do not opt out agree to release the Released Claims. (Settlement Agreement ¶ 28.) The Class Members' release is as follows:

> **Release by Class Members Who Do Not Opt Out:** Upon the Effective Date, all Class Members who do not timely opt out hereby jointly and severally fully and finally release the Released Parties, to the fullest extent permitted by law, of and from any and all Released Claims. Each Class Member will be deemed to have made the foregoing release as if by manually signing it. In light of the method of notice set forth by this Settlement Agreement, and subject to final Court approval, all Class Members who do not opt out shall be bound by the Settlement, and shall release the Released Parties from the

Released Claims, even if they never received mailed notice of the Action or this Settlement.

(*Id.* ¶ 47.)

### 4. Non-Monetary Relief Conferred on Employees

As a direct result of this litigation, Defendants made two policy changes. Defendants implemented a seating policy for the provision of stools throughout their California stores starting in March of 2017; and commencing in March of 2019, Defendants add three minutes[8] of paid time for all closing shift and opening shift employees (Ex. 1, Settlement Agreement, ¶ 37.a.) to account for gap time.

## III. ARGUMENT

### A. Conditional Class Certification Is Appropriate for Settlement Purposes

The parties seek conditional certification of the Settlement Class. A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a),[9] and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3).[10] *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Where, as here, workplace violations are at

---

[8] During discovery, the Parties exchanged expert reports in which both experts opined that, within a statistical certainty, the average amount of time between clocking out and setting the alarm was approximately 2.5 minutes. Commencing in March 2019, Defendants began adding three minutes of time to the opening shifts and closing shifts of Class Members. Based on the expert reports and all of the investigation and discovery in the case, Plaintiffs' Counsel believe that amount to be appropriate. (Yablonovich Decl. ¶ 18.)

[9] Rule 23(a) provides that, to certify a class, the moving party must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

[10] Rule 23(b)(3) states: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

issue, "the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).

Class certification is proper when the plaintiff provides substantial evidence of a company-wide policy on which the theory of liability is based, even if in practice that policy's implementation varied. *See In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S. Dist. LEXIS 168219, at *19 (E.D. Cal. Nov. 27, 2012) (certifying meal period class where uniform policy was undisputed but defendant argued "as a matter of practice, the policy is carried out in a variety of ways") (*adopted in full*, 2013 U.S. Dist. LEXIS 380 (E.D. Cal. Jan. 2, 2013)). Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011) (citations omitted). Rule 23's commonality analysis depends on whether a "basic theory of the [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 356, 131 S. Ct. 2541 (2011). However, the fact that class members may have been affected by a defendant's uniform policies/practices to varying degrees or have suffered varying damages *is not a bar* to certification. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th. Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

### 1. All Rule 23(a) Requisites For Certification Are Present

The Court has the authority to certify a provisional settlement class at preliminary approval. In determining whether to certify, the court takes the substantive allegations of the complaint as true. *See Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). A proposed settlement class is subject to Federal Rule of Civil Procedure 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *See Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997). However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Id.*

### a) Rule 23(a)(1) —Numerosity Is Satisfied

There are an estimated 31,500 putative Class Members. (Yablonovich Decl. ¶ 14.) This meets all standards for numerosity.

### b) Rule 23(a)(2) —Commonality Is Satisfied

The commonality preconditions of Rule 23(a)(2) are "construed permissively." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, Plaintiffs allege Defendants applied uniform policies to all Class Members. (*See also infra*, Section III.A.2., *infra*.)

### c) Rule 23(a)(3) —Typicality Is Satisfied

Under this Rule's "permissive standards," the representative Plaintiffs' claims are "typical" if they are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Plaintiffs' claims arise from a common source – Big Lots' uniform employment practices, including not providing all required meal periods or paying premiums for meal period violations; requiring exiting employees to undergo security checks; not paying for "gap time" (prior to their policy change); not providing seats to employees (before their policy change); not providing or paying rest break premiums; and non-compliant wage statements. The employment practices are based on identical legal theories aligned with those of the putative Class. *See Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989).

### d) Rule 23(a)(4) —Adequacy of Representation Is Satisfied

Adequacy requirements are established when proposed Class Representatives have no conflict of interest with other Class Members and are

1 represented by qualified counsel. Plaintiffs have served the Class tirelessly, and
2 have been dedicated to the case for years. (Yablonovich Decl. ¶ 26; *see also*
3 Hubbs Decl. ¶¶ 4-13; Coleman Decl. ¶¶ 4-12; Williams Decl. ¶¶ 4-12; Slusher
4 Decl. ¶¶ 5-7.)

5      Plaintiffs' Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel
6 requirement. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1020 ("will the named
7 plaintiffs and their counsel prosecute the action vigorously on behalf of the
8 class?"). Plaintiffs' Counsel are experienced employment and class action
9 litigators, fully qualified to pursue the interests of the Class, including successfully
10 certifying numerous class actions by way of contested motion in state and federal
11 court, and settling million of dollars on behalf of thousands of Class Members.
12 (Yablonovich Decl. ¶¶ 29-31; Setareh Decl. ¶ 9; Perez Decl. ¶ 4.)

13      **2.    Plaintiffs' Claims Present Predominant Questions of Law**
14            **and Fact**

15      For a class to be certified, there must be questions of law or fact common to
16 the class. Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3) requires that the common
17 questions of law or fact predominate over any individual questions. Thus, the Rule
18 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry
19 overlap. *See In re AutoZone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012).
20 Here, each of Plaintiffs' theories of liability presents common legal and factual
21 questions that predominate over any individual issues.

22      With respect to Plaintiffs' already certified Closing Shift Class, this Court
23 found that predominant questions of law and fact exist. (ECF No. 123, Page ID #
24 4220-4222.) With respect to the other claims, including meal breaks, rest breaks,
25 minimum wages, overtime pay, split shift and seating claims, all those California
26 statutes apply equally to all the Settlement Class Members, and Plaintiffs' claims
27 arise from the same factual bases and are based on the same legal theories. A class
28 action is therefore the best method for handling the claims of the Settlement Class.

### 3. The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement

The proposed class notice and settlement administration procedure satisfy due process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974). Under Rule 23(c)(2), where the names and addresses of Class Members are easily ascertainable, individual notice through regular mail constitutes the "best notice practicable." *Id.* at 175. The Notice of Class Action Settlement ("Class Notice"), which will be mailed, was jointly drafted and approved by the Parties and provides Settlement Class Members with all required information to make an informed decision regarding their participation in the Settlement. The Class Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definitions; the deadlines by which Class Members must submit Requests for Exclusion or objections; the date for the final approval hearing; the formula used to calculate settlement payments; a statement that the Court has preliminarily approved the settlement; a statement that Class Members will release the settled claims unless they opt out; and notice of the pending lawsuit with overlapping claims. (See Ex. A to Settlement Agreement, Ex. 1.) Accordingly, the Class Notice satisfies the requirements of Rule 23(c)(2).

The Class Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211. The Class Notice states that the Settlement does not constitute an admission of liability by

Defendants, and that Final Approval has not yet been granted. The Class Notice thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Fed. R. Civ. P. 23(c)(2) and (e); Manual §§ 8.21, 8.39; Manual §§ 30.211, 30.212.

The Settlement Administrator will mail the Class Notice to all Class Members via first class United States mail. (Ex. 1, ¶ 38.c.) In the event Notice is returned as undeliverable, the Settlement Administrator will attempt to locate a current address using, among other resources, a computer/SSN and "skip trace" search to obtain an updated address. (*Id.*) This method was negotiated by the Parties to maximize the Class Member notification rate while ensuring cost effective administration of the Settlement.

**B.      The Court Should Grant the Motion for Preliminary Approval of the Class Action Settlement**

**1.      Courts Review Class Action Settlements to Ensure That The Terms Are Fair, Adequate and Reasonable**

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps: (a) preliminary approval of the proposed settlement; (b) notice to the class providing them an opportunity to exclude themselves; and (c) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual § 21.632 (4th ed. 2004).

Federal Rule of Civil Procedure 23(e) provides that if the proposal would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is

1  adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii)

2  the effectiveness of any proposed method of distributing relief to the class,

3  including the method of processing class-member claims; (iii) the terms of any

4  proposed award of attorney's fees, including timing of payment; and (iv) any

5  agreement required to be identified under Rule 23(e)(3); and (d) the proposal

6  treats class members equitably relative to each other.

7       The judicial policy favoring settlement of class action suits should guide the

8  Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v.*

9  *Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). As the Ninth Circuit has observed,

10  "settlements offer parties and their counsel relief from the burdens and

11  uncertainties inherent in trial. . . ." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th

12  Cir. 1989).

13             **2.**     **The Settlement Is The Product of Arms'-Length**

14                    **Negotiations And Is Therefore Entitled to a Presumption of**

15                    **Fairness**

16       In evaluating the Settlement for preliminary approval, the Court "first

17  considers 'the means by which the parties arrived at settlement.'" *In re*

18  *Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL

19  No. 2672 CRB, 2016 U.S. Dist. LEXIS 99071, *639 (N.D. Cal. July 26, 2016)

20  ("*Volkswagen*"). "Preliminary approval is appropriate if the proposed settlement is

21  the product of serious, informed, non-collusive negotiations." *Id.*

22       Here, the Parties participated in mediation with David A. Rotman, a

23  respected mediator of wage and hour class actions. The mediator helped to

24  manage the Parties' expectations and provided a useful, neutral analysis of the

25  issues and risks to both sides. A mediator's participation weighs considerably

26  against any inference of a collusive settlement. *See In re Apple Computer, Inc.*

27  *Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195, *11-

28  *12 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d

1    Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations
2    helps to ensure that the proceedings were free of collusion and undue pressure.")
3    At all times, the Parties' negotiations were adversarial and non-collusive. The
4    Parties were represented by experienced class action counsel throughout the
5    negotiations resulting in this Settlement. Plaintiffs are represented by the Law
6    Offices of Mark Yablonovich, Nichols Kaster and Setareh Law Group (together
7    Plaintiffs' Counsel). Plaintiffs' Counsel employ seasoned class action attorneys
8    who regularly litigate wage and hour claims through certification and on the
9    merits, and have considerable experience settling wage and hour class actions.
10   (*See* Yablonovich Decl. ¶¶ 29-31; Helland Decl. ¶¶ 2, 3, 5, 7, 9; Setareh Decl. ¶¶
11   3-9.) Defendants are represented by Voys, Sater, Seymour and Pease, which
12   operates a defense practice.

13        As this Settlement is the "result of arm's-length negotiations by experienced
14   [c]lass [c]ounsel, [it is] entitled to 'an initial presumption of fairness.'"
15   *Volkswagen*, 2016 U.S. Dist. LEXIS 99071, at *639 (internal citation omitted).

**3.     The Relief Provided by the Settlement is Fair and
Reasonable**

18        At the preliminary approval stage, the Court evaluates whether the
19   settlement is within the "range of reasonableness," and whether notice to the class
20   and the scheduling of a final approval hearing should be ordered. *See generally* 3
21   Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002). For
22   preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football*
23   *League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa.
24   2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable
25   and adequate' standard is lowered."); *see also, Montoya v. Intelicare Direct, Inc.*,
26   No. 15CV1269-LAB, 2016 U.S. Dist. LEXIS 103052 (S.D. Cal. Aug. 4, 2016).

27        The Court need only review the parties' proposed settlement to determine
28   whether it is within the permissible "range of possible judicial approval" and thus,

whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc*., No. 14-cv-05352-MEJ, 2016 U.S. Dist. LEXIS 39629, at *22 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

a)  **The Class Settlement is Within the Range of Reasonableness**

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf—a $7,000,000 non-reversionary total Class Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Mr. Rotman, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Federal district courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[11]

Plaintiffs calculated Defendants' maximum potential exposure for the class and derivative claims, and the appropriate settlement value of those claims, as follows:

**Certified Closing Shift Claims:** Although the Court certified the Closing Shift Class, the total damages for this claim are not substantial. Plaintiffs also risked decertification.[12] The Court already found that liquidated damages pursuant to Labor Code section 1194.2 and derivative waiting time penalties pursuant to Section 203 were not available based on a good faith defense, i.e., the potential for Defendants to prevail on the de minimis doctrine and the alleged absence of "willfulness," respectively. (ECF No. 320, Page ID # 15861-15864.)

While the Court did not summarily adjudicate Section 226 statutory penalties in favor of Defendants, Plaintiffs still faced a risk in light of a number of

---

[11] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460-461 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 183-184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

[12] The Court stated in its Order re Reconsideration: "Defendants' request for reconsideration of class certification, ***as presented*** in Defendants' Opposition to the Motion, is DENIED. (ECF No. 320, Page ID # 15868-15869, emphasis added.)

1    district court cases finding a good faith defense applies to Section 226 statutory

2    penalties.[13] Because the Court summarily adjudicated in favor of Plaintiffs the

3    issue of control during most of the "gap time," Plaintiffs did not significantly

4    discount this claim.

5        Plaintiffs therefore determined an appropriate settlement range of recovery

6    for the Closing Shift Class claims by offsetting Defendants' maximum theoretical

7    exposure for the underpaid wages claim, which is calculated at approximately

8    $500,000,[14] by the (i) the strength of Defendants' affirmative defenses; (ii) the risk

9    of losing on any motions that could have eliminated all or some of Plaintiffs'

10    claims (e.g., a motion for decertification or motion for summary judgment) or

11    barred evidence (e.g., motions in limine); (iii) the risk of losing at trial or

12    prevailing on only some of the claims; (iv) the chances of a favorable verdict

13    being reversed on appeal; and (v) the difficulties attendant to collecting on a

14    judgment (collectively, the "Discount Factors"). The result was approximately

15    $475,000, reflecting 95% of the full verdict value.

16        Plaintiffs determined an appropriate settlement range of recovery for the

17    derivative wage statement claim for the Closing Shift Class by offsetting

18    Defendants' maximum theoretical exposure, which is calculated at approximately

---

[13] *Dalton v. Lee Publ'ns, Inc.*, No. 08-cv-1072 BTM, 2011 U.S. Dist. LEXIS 29835, at *16 (S.D. Cal. Mar. 22, 2011) (describing "knowing and intentional" as the "requisite scienter" requirements for a violation of § 226); *Pedroza v. PetSmart, Inc.*, No. 11-298 GHK, 2012 U.S. Dist. LEXIS 189530, at *14-15  n.6 (C.D. Cal. June 14, 2012) (holding that section 203's "'good faith dispute' defense also applies to Labor Code section 226(e)"); *Woods v. Vector Marketing Corp.*, No. C-14-0264 EMC, 2015 U.S. Dist. LEXIS 67303, at *11 (N.D. Cal. May 22, 2015) ("The similarity between 'knowingly and intentionally' under Section 226 and 'willfully' under Section 203 with respect to their incorporation of a good faith dispute defense is consistent with the Labor Code generally . . . . The California Supreme Court has linked the two standards").

[14] This figure is derived from Plaintiffs' expert's calculation and subtracting the liquidated damages the Court summarily adjudicated against Plaintiffs (*see* ECF No. 320) and reducing pre-judgment interest based on the liquidated damages.

$11,500,000, by the Discount Factors. The result was approximately $2,587,500, reflecting 22.5% of the full verdict value.

**Remaining Off-the-Clock Claims:** Although Plaintiffs attempted to certify an off-the-clock claim for security inspections, the Court denied class certification. (ECF No. 123.) Plaintiffs' uncertified overtime and minimum wage claims rested on Plaintiffs' security check and opening shift theories of liability. The risks to obtaining certification of Plaintiffs' claims bore out in favor of Defendants. Additionally, even if these claims had been certified, there were significant risks that Plaintiffs' unpaid wages claim would lose entirely on the merits.

Plaintiffs determined an appropriate settlement range of recovery for the underpaid wages claim by offsetting Defendants' maximum theoretical exposure, which is calculated at approximately $1,500,000,[15] by the applicable Discount Factors. The result was approximately $165,000, reflecting 11% of the full verdict value.

**Meal and Rest Break Claims:** Plaintiffs also unsuccessfully attempted to certify meal and rest break classes. Plaintiffs' meal break claim rested on Plaintiffs' contention that overnight shift employees were not relieved of all duties during meal breaks because they were not permitted to leave the premises. Plaintiffs' rest break claim rested on Plaintiffs' contention that Defendants' Daily Trackers showed a failure to provide second rest breaks to employees who worked longer than six hours. The risks to obtaining certification of Plaintiffs' meal and rest break claims bore out in favor of Defendants and would require the Ninth Circuit's reversal on appeal for Plaintiffs to proceed with those claims. Additionally, even if those claims had been certified, significant risks existed that Plaintiffs' meal and rest break claims would lose entirely on the merits.

---

[15] This figure is calculated by assuming an equivalent amount of damages as for Closing Shift Class for the opening shift (i.e., $500,000) and the security checks ($1 million), totalling $1.5 million.

Plaintiffs determined an appropriate settlement range of recovery for the meal break claim by offsetting Defendants' maximum theoretical exposure, which was calculated at approximately $10,000,000, by the Discount Factors. The result was approximately $1,400,000, reflecting 14% of the full verdict value.

Plaintiffs determined an appropriate settlement range of recovery for the rest break claim by offsetting Defendants' maximum theoretical exposure, which was calculated at approximately $3,000,000, by the Discount Factors. The result was approximately $300,000, reflecting 10% of the full verdict value.

**Waiting Time Penalty Claim:** Although the Court certified Plaintiffs' Closing Shift Class, the Court found no waiting time penalties were available because it determined Defendants had a good faith defense. (ECF No. 320, Page ID # 15861-15863.) Additionally, for the reasons stated above, additional waiting time penalties predicated on the uncertified unpaid wage claims and the meal and rest break claims were subject to the same significant risks.

Plaintiffs determined an appropriate settlement range of recovery for the final pay claim by offsetting Defendants' maximum theoretical exposure, which was calculated at approximately $15,000,000, by the Discount Factors. The result was approximately $1,650,000, reflecting 11% of the full verdict value.

**Wage Statement Claim:** Similar to the derivative waiting time penalties in the preceding subsection, Plaintiffs' derivative wage statement claim ran the same risks.

Plaintiffs determined an appropriate settlement range of recovery for the derivative wage statement claim by offsetting Defendants' maximum theoretical exposure, which was calculated at approximately $2,100,000, by the Discount Factors. The result was approximately $231,000, reflecting 11% of the full verdict value.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

b) **The Penalties Secured by the PAGA Settlement Are "Genuine" and "Meaningful" and Fulfill PAGA's Purpose**

The California legislature enacted PAGA to "augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the Agency." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 383 (2014). This statute authorizes an employee to bring an action for "civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees . . . ." *Id*. at 360. The goal of a PAGA enforcement action is to impose civil penalties for Labor Code violations "significant enough to deter violations." *Id.* at 379.

Fundamentally, "a PAGA action is a statutory action in which the penalties available are measured by the number of Labor Code violations committed by the employer." *Sakkab v. Luxottica Retail N. Am., Inc*., 803 F.3d 425, 435 (9th Cir. 2015). Under the general provisions of the PAGA statute, 75% of the civil penalties recovered goes to the state while the remaining amount is given to the aggrieved employees. Cal. Lab. Code § 2699(i). Although PAGA penalties are mandatory and must be awarded by a court if a violation is found, the court "may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2).

The LWDA has advised that courts should evaluate settlements of PAGA claims based on whether "the relief provided for under the PAGA [is] genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. Aug. 18, 2016); *Salazar v. Sysco Central Cal.*, No. 15-01758-DAD, 2017 U.S.

Dist. LEXIS 14971, at *6 (E.D. Cal. Feb. 2, 2017) (quoting the above passage). As courts defer to the agency's interpretation of a statute where authority has been delegated to that agency (*see New Cingular Wireless PCS, LLC v. Pub. Utilities Comm'n*, 246 Cal. App. 4th 784, 807 (2016)), the Court should analyze the PAGA settlement by focusing on whether the amount of civil penalties obtained is "genuine and meaningful" in light of PAGA's statutory purpose.

Based on information and evidence produced by Defendants during discovery, Plaintiffs' expert calculated PAGA penalties in the amount of $265,000,000.[16] Maximum penalties were calculated according to the formula set forth in Section 2699(f)(2): $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.

However, a number of courts have interpreted Labor Code section 2699(f)(2) to impose the enhanced "subsequent violation penalty" or "heightened penalty" only after an employer has been notified that its conduct violates the Labor Code. *See Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 U.S. Dist. LEXIS 179170, at *14 (C.D. Cal. Dec. 19, 2012) ("courts have held that employers are not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer that it is in violation of the Labor Code"); *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.*, No. 05cv1199–IEG–CAB, 2009 U.S. Dist. LEXIS 69842 at *25-*26 (S.D. Cal. Aug. 10, 2009) (finding that California law imposes the "subsequent violation penalty" only after an employer has been notified its conduct violates the Labor Code). Thus, if Plaintiffs

---

[16] This figure applies the heightened subsequent penalty of $250. The calculation is based on the maximum exposure calculated by Plaintiffs' expert and excluding penalties based on Section 558 violations which were recently found by the Supreme Court to not be recoverable under PAGA. *Lawson v. ZB, N.A.*, 8 Cal. 5th 175 (Sept. 12, 2019).

were not awarded "subsequent" penalties and only "initial" penalties for all violations, Defendants' exposure would be essentially half, approximately $135,000,000. The agreed-upon $150,000 PAGA portion thus reflects 0.11% of the full value.[17]

Taking into account the above, Plaintiffs determined that a settlement for approximately $150,000 in PAGA penalties was warranted by the circumstances of the case. It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil penalties. Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011 U.S. Dist. LEXIS 154590, at *9 (C.D. Cal. Aug. 12, 2011).

For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—or 0.21% of the maximum—and stated that this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced award of a $150,000 penalty under PAGA. *Id.* at 529.

Likewise, in *Covidien*, the court reduced the potential penalties by over

---

[17] In *Shiferaw v. Sunrise Senior Living, Inc.*, Case No. 2:13-cv-02171 JAK (xPLA), the Court approved a $20,000 PAGA payment (of which 75% went to the LWDA) based on a maximum exposure of $35 million, representing a value of 0.05% of the entire settlement. Here, the $150,000 PAGA payment represents 2.14% of the entire settlement.

82%, awarding $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 U.S. Dist. LEXIS 154590, at *9; *see also Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations seriously); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 U.S. Dist. LEXIS 83677, at *53 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of Labor Code section 226 as redundant with recovery on a class basis pursuant to section 226, directly); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 U.S. Dist. LEXIS 189820, at *5-*7 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000, after rejecting numerous other PAGA claims).

Considering the issues, defenses, and the risks, a $150,000 settlement for PAGA penalties is a fair and just result and furthers PAGA's objectives, and is not "unjust, arbitrary, and oppressive."

### 4. The Settlement Provides for an Equitable Method of Allocating Relief to Class Members

The Settlement provides for an equitable method of allocating relief to Class Members in proportion to pay periods. The Settlement Administrator will calculate Individual Settlement Payments to the Settlement Class as follows: The Net Settlement Amount will be allocated to Closing Shift Class Members and Class Members as follows: Forty-Five Percent (45%) of the Net Settlement Amount will be allocated to the settlement of the certified off-the-clock claim and all claims for derivative penalties under the Labor Code to Closing Shift Class Members ("Closing Shift Fund"); and (2) Fifty-Five Percent (55%) of the Net Settlement Amount will be allocated to the settlement of all other claims alleged in the Action and derivative penalties under the Labor Code to Class Members ("General Class Fund"). (Ex. 1, Settlement Agreement ¶ 35.b.)

Each Class Member's respective shares of the Closing Shift Fund and

General Class Fund will be allocated on a pro-rata basis according to the number of pay periods worked by each qualifying Class Member during the Closing Shift Class Period and Class Period.

To determine each Closing Shift Class Member's share of the Closing Shift Fund, the Settlement Administrator will use the following formula: Share of Closing Shift Fund = Closing Shift Pay Periods Worked by Individual Closing Shift Class Member ÷ Closing Shift Pay Periods Worked by All Closing Shift Class Members × Closing Shift Fund.

To determine each Class Member's share of the General Class Fund, the Settlement Administrator will use the following formula: Share of General Class Fund = Pay Periods Worked by Individual Class Member ÷ Pay Periods Worked by All Class Members × General Class Fund.

The entire Net Settlement Amount will be disbursed to all of the Class Members who do not submit timely and valid Requests for Exclusion.[18] If there are any Requests for Exclusion, the Settlement Administrator shall proportionately increase the Individual Settlement Payment for each Participating Class Member **so that the amount distributed to the Settlement Class equals 100% of the Net Settlement Amount**.

The Class Members' average gross recovery is approximately $222 and the average net recovery is $126. The amounts are comparable to many wage and hour class action settlements approved by California state and federal courts. *See*, *e.g.*, *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v.*

---

[18] The Settlement allows Defendants to exercise the right to void the agreement if 5% or more Class Members opt out. (Settlement Agreement ¶ 51.)

1  *Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.)

2  (average net recovery of approximately $90); *Harmon v. The Gap, Inc.*, No.

3  RIC1206120 (Riverside County Super. Ct.) (average net recovery of

4  approximately $90); *Palencia v. 99 Cents Only Stores*, No. 34-2010-00079619

5  (Sacramento County Super. Ct.) (average net recovery of approximately $80);

6  *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal.

7  May 14, 2007) (average net recovery of approximately $65); *Sorenson v.

8  PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. Dec. 12, 2008)

9  (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*,

10  Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of

11  approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297

12  (L.A. County Super. Ct.) (average net recovery of approximately $20).

13  **C.  There Are No Obvious Deficiencies with the Settlement or**

14  **Preferential Treatment to Certain Class Members**

15  The Court must also ask whether "the Settlement contains any obvious

16  deficiencies" and "whether the Settlement provides preferential treatment to any

17  Class Member." *Volkswagen*, 2016 U.S. Dist. LEXIS 99071, at *640, *647. This

18  Settlement contains no "glaring deficiencies" *Id.* at *640. The Settlement does not

19  provide for a reversion of unpaid settlement funds to Defendants or distribute a

20  disproportionate share of the settlement to the attorneys that requires closer

21  scrutiny in the Ninth Circuit. *See id.* at *640-*641 (applying the factors set forth in

22  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

23  Moreover, no segment of the Class is given preferential treatment. Plaintiffs

24  will also seek, at a later time (when the Motion for Attorneys' Fees is filed),

25  incentive awards amounts that are well within the range of such awards in the

26  Ninth Circuit for their work on the behalf of the Class, the reputational risk

27  undertaken, and for the execution of a general release. *See infra*, Section III.D.

28  *See*, *e.g.*, *La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014

U.S. Dist. LEXIS 90367, at *22-*23 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and general release). Accordingly, the Settlement is procedurally fair, adequate and reasonable.

### D.     The Court Should Preliminarily Approve the Negotiated Class Representative Enhancement Payments

The Settlement provides for Class Representative Enhancement Payments of $15,000 each to Viola Hubbs, Tamika Williams, and Brandon Coleman and $10,000[19] to Roxanne Slusher for their service on behalf of the Settlement Class and for agreeing to a broader release than those required of other Class Members. (Yablonovich Decl. ¶¶ 26-28, Ex. 4-8.) "Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an incentive to participate in the suit and as compensation for time spent in litigation activities. *See In re Mego Fin. Corp. Sec.*

---

[19] The amounts of the requested incentive awards are also reasonable by reference to the amounts that district courts in this Circuit have repeatedly found to be reasonable for wage and hour class action settlements. *See, e.g.*, *Bernal v. Davita, Inc.*, No. 5:12-cv-03255-PSG, ECF No. 105, at *2 (N.D. Cal, Jan. 14, 2014) ($10,000 incentive payment in $3.4 million wage-and-hour class settlement); *York v. Starbucks Corp.*, No. 08-07919 GAF, ECF No. 239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3 million wage-and-hour class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857, at *4, *9-*10 (N.D. Cal. Sept. 29, 2010) (approving enhancement awards of $20,000 each to four class representatives in a $3.5 million settlement of an employment class action); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119, at *34-*37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 awards); *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH, ECF No. 195 (N.D. Cal. Aug. 13, 2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of factors that included fear of workplace retaliation).

*Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (describing the service award as an incentive to the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in an amount "as may be necessary to induce [the class representative] to participate in the suit").

Plaintiffs will file a formal motion for the negotiated Class Representative Enhancement Payments after preliminary approval of the Settlement is granted.

### E.   The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs

Under California law,[20] the common fund method for awarding attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members. *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach."

---

[20] In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Because CAFA operates to modify the diversity requirement, "the *Erie* doctrine still applies so that state substantive law governs such claims in federal court." *See* Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California 9th Cir. Editions (The Rutter Group, 2015) ¶ 10:497.5. As the Ninth Circuit observed, "even after CAFA's enactment, *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from state to federal court produces a change of courtrooms and procedure rather than a change of substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

[citation omitted]). Although California has no benchmark, California courts routinely award attorneys' fees equaling approximately one-third of the common fund's total potential value or higher.[21] *See*, *e.g.*, *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) (affirming a fee award representing one-third of the common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to

---

[21] *See also, Albrecht v. Rite Aid Corp.*, No. 729219 (San Diego Super. Ct.) (35% award); *Weber v. Einstein Noah Restaurant Group, Inc.*, No. 37-2008-00077680 (San Diego Super. Ct.) (40% award); *Kenemixay v. Nordstroms, Inc.*, No. BC318850 (L.A. Super. Ct.) (50% award); *Leal v. Wyndham Worldwide Corp.*, No. 37-2009-00084708 (San Diego Super. Ct.) (38% award); *Gomez and LaGaisse v. 20 20 Communications*, No. RIC 528973 (Riverside Super. Ct.) (33% award); *Acheson v. Express LLC*, No. 109CV135335 (Santa Clara Super. Ct.) (33% award); *Chin v. Countrywide Home Loans, Inc.*, No.: 39-2010-00252741-CU-OE-STK (San Joaquin Super. Ct.) (30% award); *Ethridge v. Universal Health Servs.*, No. BC391958 (L.A. Super. Ct.) (33% award); *Magee v. Am. Residential Servs. LLC*, No. BC423798 (L.A. Super. Ct.) (33% award); *Blue v. Coldwell Banker Residential Brokerage Co.*, No. BC417335 (L.A. Super. Ct.) (33% award); *Silva v. Catholic Mortuary Servs., Inc.*, No. BC408054 (L.A. Super. Ct.) (33% award); *Mares v. BFS Retail & Comm. Operations LLC*, No. BC375967 (L.A. Super. Ct.) (33% award); *Blair et al. v. Jo-Ann Stores, Inc.*, No. BC394795 (L.A. Super. Ct.) (33% award); *Perez and Comeaux v. Standard Concrete*, No. 30-2008-00211820 (Orange County Super. Ct.) (33% award); *Ward v. Doyon Sec. Servs., LLC*, No. BS 9000517 (San Bernardino Super. Ct.) (33% award); *Barrett v. The St. John Companies*, No. BC354278 (L.A. Super. Ct.) (33% award); *Clymer and Benton v. Candle Acquisition Co.*, No. BC328765 (L.A. Super. Ct.) (33% award); *Dunlap v. Bank of America, N.A.*, No. BC328934 (L.A. Super Ct.) (33% award); *Taylor v. Ross Stores, Inc.*, No. RCV 065453, JCCP 4331 (San Bernardino Super. Ct.) (33% award); *Case et al. v. Toyohara America Inc.*, No. BC328111 (L.A. Super. Ct.) (33% award); *Sunio v. Marsh USA, Inc.*, No. BC328782 (L.A. Super Ct.) (33% award); *Chalmers v. Elecs. Boutique*, No. BC306571 (L.A. Super. Ct.) (33% award); *Boncore v. Four Points Hotel ITT Sheraton*, No. GIC807456 (San Diego Super. Ct.) (33% award); *Vivens v. Wackenhut Corp.*, No. BC290071 (L.A. Super. Ct.) (31% award); *Crandall v. U-Haul Int'l., Inc.*, No. BC178775 (L.A. Super. Ct.) (40% award).

1   a similar conclusion that a one-third fee is consistent with market rates).[22]

2   District courts within this Circuit also routinely award attorneys' fees of

3   one-third or more of the common fund, particularly for wage and hour class action

4   settlements. *See*, *e.g.*, *Elliott v. Rolling Frito-Lay Sales, LP*, No. 11-01730 DOC,

5   2014 U.S. Dist. LEXIS 83796, at *25 (C.D. Cal. June 12, 2014) (awarding 30% of

6   $1.6 million fund in attorneys' fees in a California Labor Code action and

7   observing that 30% of the fund is "not uncommon for courts in this jurisdiction");

8   *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 U.S. Dist. LEXIS

9   162880, at *25 (C.D. Cal. Nov. 18, 2014) (awarding one-third in fees in a wage

10  and hour class action); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431,

11  450-51 (E.D. Cal. July 2, 2013) (awarding one-third of the settlement fund in a

12  wage and hour class action because there were "sufficient reasons to exceed [the

13  benchmark] considering the risk of the litigation, the contingent nature of the

14  work, the favorable reaction of the class, and the fee awards in other wage-and-

15  hour cases"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D.

16  Cal. Mar. 9, 2010) (awarding one-third percent in wage and hour class action);

---

[22] To the extent the Court is inclined to award less than one-third, an additional premium for attorneys' fees is warranted here under the catalyst theory. Courts in the Ninth Circuit have endorsed the California Supreme Court's determination that a party may be entitled to Code of Civil Procedure section 1021.5 attorneys' fees under a "catalyst theory." *See Henderson v. J.M. Smucker Company*, No. CV 10-4524-GHK, 2013 U.S. Dist. LEXIS 87030 at *6 (C.D. Cal. 2013) citing *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) and *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604, 608 (2004) ("California law continues to recognize the catalyst theory and does not require a 'judicially recognized change in the legal relationship between the parties' [such as a judgment on the merits, a consent decree or a judicially ordered settlement] as a prerequisite for obtaining attorneys' fees under Code of Civil Procedure section 1021.5."). *See also Cates v. Chiang*, 213 Cal. App. 4th 791 (2013); *Hogar v. Community Development Commission of the City of Escondido*, 157 Cal. App. 4th 1358 (2007). Here, the Parties agree that Defendants' significant policy changes – the provision of seating to all its associates and the payment of additional wages for gap time – are a direct consequence of the Action. (*See* Settlement Agreement, ¶ 37.) Accordingly, Plaintiffs' Counsel are entitled to substantial credit for the significant policy changes.

*Gallegos v. Atria Management Company, LLC*, No. 5:16-cv-00888-JGB-SP, ECF No. 145 (C.D. Cal. Jan. 28, 2019) (awarding one-third of common fund in fees in wage and hour class action).[23]

Plaintiffs will file a formal motion for the negotiated attorneys' fees and costs after preliminary approval of the Settlement is granted.

## IV.   CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for preliminarily approval, the Parties request that the Court preliminarily approve the settlement.

Dated: December 4, 2019                          Respectfully submitted,

Law Offices of Mark Yablonovich

By: */S/ Mark Yablonovich*

Mark Yablonovich
Attorneys for Plaintiffs Viola Hubbs, Brandon Coleman, Tamika Williams, and the Class

---

[23] *See also Jones v. Bath & Body Works, Inc.*, No. 2:13-cv-05206-FMO-AJW, ECF No. 84 (C.D. Cal. July 11, 2016) (awarding one-third of common fund in fees in wage and hour class action); *Quintana v. Claire's Boutiques, Inc.*, No. 5:13-cv-00368-PSG, ECF No. 88 (N.D. Cal. Dec. 1, 2015) (awarding attorneys' fees representing 33% of the fund); *Hightower v. JPMorgan Chase Bank, N.A.*, Case No. 2:11-cv-01802-PSG-PLA, ECF No. 225 (C.D. Cal. Oct. 5, 2015) (awarding attorneys' fees representing 30% of the fund); *Bernal v. DaVita, Inc.*, No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) (same); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-*23 (S.D. Cal. June 1, 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards); *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 U.S. Dist. LEXIS 92067, at *18 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits").

1   Dated: December 4, 2019                    Respectfully submitted,

2                                              Setareh Law Group

3

4                                        By: */S/ Shaun Setareh*
                                             Shaun Setareh
5                                            Attorneys for Plaintiff Roxanne Slusher

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## <u>Statement Pursuant to L.R. 5-4.3.4(a)(2)(i)</u>

2

All other signatories listed, and on whose behalf this filing is submitted,

3

concur in the filing's content and have authorized the filing.

4

Dated: December 4, 2019

5
                                        _/S/Mark Yablonovich_____

6
                                        Mark Yablonovich
                                        Law Offices of Mark Yablonovich
7                                       Attorney for Plaintiffs Viola Hubbs,
                                        Brandon Coleman, Tamika Williams, and
8                                       the Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT